**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GABRIEL CHALEPLIS** and **ONE WORLD LLC,**<br><br>         Plaintiffs,<br><br>v.<br><br>**MICHAEL KARLOUTSOS,**<br>**JAMES M. RODGERS ESQ.,**<br>**MAK CONSULTING LLC,**<br>**RODGERS INVESTMENTS LLC**<br>and **JAMES M. RODGERS P.C,**<br><br>         Defendants. | Civil Action #<br><br>         **COMPLAINT** |

Plaintiffs Gabriel Chaleplis ("Chaleplis") and One World, LLC ("One World") (collectively "Plaintiffs") hereby state as follows by way of Complaint against defendants: (i) Michael Karloutsos ("Karloutsos"); (ii) James M. Rodgers, Esq. ("Rodgers"); (iii) MAK Consulting, LLC ("MAK"); (iv) Rodgers Investments, LLC ("Rodgers Investments"); and (v) James M. Rodgers, P.C. ("JMR PC").

## JURISDICTION & VENUE

1.      This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000, since it involves at least $9,000,0000 in damages that One World and Chaleplis have sustained due to Karloutsos', Rodgers', MAK's, Rodgers Investments' and JMR PC's wrongful actions and conduct.

2.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a), (b) and (c) because: (i) Rodgers, Rodgers Investments and JMR PC all operate out of

Philadelphia, Pennsylvania and have their primary places of business and headquarters in Philadelphia, Pennsylvania,; (ii) Rodgers is a Pennsylvania licensed attorney who lives in Philadelphia and actively practices law in the Philadelphia, Pennsylvania area, and is also actively employed and involved in the Pennsylvania court system; (iii) Rodgers is a citizen of the State of Pennsylvania residing in Philadelphia; (iv) JMR PC is a Pennsylvania professional corporation that Rodgers conducts business through for his Pennsylvania law practice that was used to defraud Plaintiffs; (v) a significant portion of the operative facts and wrongful conduct described in this Complaint occurred in the Eastern District of Pennsylvania through Rodgers', Rodgers Investments', JMR PC's, Karloutsos' and MAK's use of their businesses and various Philadelphia, Pennsylvania branch Citizens Bank accounts to divert, convert and misappropriated Plaintiffs' funds, and to defraud Plaintiffs; (vi) MAK is a Pennsylvania limited liability company that is 100% owned and managed by Karloutsos; (vii) MAK conducts business in the State of Pennsylvania and has its registered business address located at 712 Pemberton Street, Philadelphia, PA; (viii) Karloutsos is the owner of the property MAK is registered at located at 712 Pemberton Street, Philadelphia, PA; and (ix) Karloutsos has routinely and systematically conducted business in Pennsylvania, including but not limited to through MAK, his involvement in the redevelopment and ownership of the Waterworks Restaurant in Philadelphia involved in scandals, his involvement in Philadelphia and Pennsylvania politics and his ownership of real estate in Pennsylvania.

3.     In addition, Rodgers, Rodgers Investments, JMR PC, MAK and Karloutsos currently conduct and/or conducted their business operations directly in the Eastern District of Pennsylvania, and did so during the relevant time period in controversy.  In addition, venue is proper since Rodgers and Karloutsos formerly served as officers of One World out of Rodgers

offices located at 3536 Shelmier Avenue, Philadelphia, PA and 1735 Market Street, Suite A481, Philadelphia, PA during the relevant time period, and Rodgers also operates and operated JMR PC and Rodgers Investments out of that same office location. Venue is also proper since Karloutsos was a resident and/or citizen of Pennsylvania during portions of the relevant time period, and specific facts and events giving rise to this controversy substantially occurred in the Eastern District of Pennsylvania through Rodgers Philadelphia office(s) and Rodgers 50/50 oral "side deal" with Karloutsos regarding their management and operation of One World, including their wrongful actions and conduct specifically occurring in the Eastern District of Pennsylvania to misappropriate and divert Plaintiffs' funds to themselves and their colleagues and their co-conspirators.

## **THE PARTIES**

4.      One World is a Delaware limited liability company having its current registered business address at 3422 Old Capitol Trail, Suite 700, Wilmington, Delaware 19808-6192.

5.      Chaleplis is a foreign citizen of the United Kingdom having his principal residence located at 153 Worple Road, SW20 8RQ, London, United Kingdom.  Chaleplis is currently the one hundred percent (100%) member of One World.

6.      Rodgers is a Pennsylvania citizen having his current principal residence located at 4726 Grant Avenue, Apt. D, Philadelphia, PA 19114.

7.      Karloutsos is a Virginia citizen having his current principal residence located at 6966 Kyleakin Court, McLean, Virginia 22101.

8.      Rodgers Investments is a Wyoming limited liability company having its current business address located 1735 Market Street, Suite A481, Philadelphia,  PA 19103.  Rodgers is the 100% member and Manager of Rodgers Investments.

3

9.      MAK is a Pennsylvania limited liability company having its current business address located at 6966 Kyleakin Court, McLean, Virginia 22101, and registered business address at 712 Pemberton Street, Philadelphia, Pennsylvania.  Karloutsos is the 100% member and Manager of MAK.

10.      JMR PC is a Pennsylvania professional corporation having its current business address located at 1735 Market Street, Suite A481, Philadelphia,  PA 19103.  Rodgers is the 100% shareholder of JMR PC and its sole officer, director and shareholder.  Rodgers uses/used JMR PC for conducting portions of his legal practice.

## FACTS

11.      Before May 2017, Chaleplis endeavored to create an investment company in the United States to invest in American business opportunities and traditional investments.

12.      To form, establish and advance the creation and operation of Chaleplis' investment company, Chaleplis consulted with a friend in Greece.  Upon Onoufriadis learning from Chaleplis' friend in Greece that Chaleplis was seeking to create such an American investment company, Onoufriadis approached Chaleplis about assisting Chaleplis in the United States to establish an American investment company, and to assist such company in developing, researching, identifying, consummating and managing American investments.

13.      Thereafter, Chaleplis spoke with Onoufriadis regarding Chaleplis' intention and plan to establish the American investment company.  During those discussions, Onoufriadis intentionally and falsely held himself out to Chaleplis as having business and investment experience in various American industry and business sectors that Chaleplis was interested in investing in, such as real estate, energy and petrochemicals, online gaming and lottery, traditional and conventional investments, telecommunications and startup company opportunities.

BE:11690424.1/CHA379-277986

14.    Since Onoufriadis was a phony without any relevant and/or actual business or investment experience, and since he was completely incapable of managing and/or operating any aspect of an investment vehicle company possessing sizeable assets, Onoufriadis deceptively recommended to Chaleplis that they partner and work with Onoufriadis' very good friend and best man Karloutsos to manage, operate and advance Chaleplis' American investment vehicle.

15.    Aside from the fact that Onoufriadis had no business or investment experience, Onoufriadis sought Karloutsos' consultation and assistance regarding Chaleplis' American investment endeavor based upon Karloutsos' purported: (i) presence in the United States; (ii) experience in both American and Greek politics in the area of public relations, government relations and lobbying as a consultant between United States citizens/companies and the Greek government, partially through Karloutsos' "consulting" company MAK; and (iii) political and social connections in the United States stemming from Karloutsos' political involvement, his father's position within the Greek Orthodox Church here in the United States, his lobbying activities between U.S. citizens/companies and the Greek government/Greek companies, his public relations work and his purported consulting experience.

16.    Onoufriadis represented to Chaleplis that Karloutsos was one of Onoufriadis' very best friends and "best man." In addition, Onoufriadis represented to Chaleplis that Karloutsos was highly trustworthy, competent and experienced in identifying and developing business opportunities, and that Karloutsos and Onoufriadis were extremely close. Later, Onoufriadis also highlighted his close relationship with Karloutsos by citing the fact that Karloutsos and Karloutsos' son baptized Onoufriadis' daughter.

17.    Subsequently, Onoufriadis then made arrangements with Karloutsos to meet Chaleplis in Greece for purposes of introducing themselves to Chaleplis in person, and to discuss

5

the possibility of Onoufriadis and Karloutsos assisting Chaleplis with Chaleplis' planned American investment company. The three (3) of them then met in Greece and did in fact commence discussing various topics about the possibility of doing so.

18.     Following numerous very general discussions thereafter between Chaleplis, Onoufriadis and Karloutsos regarding the possible formation, management and operation of Chaleplis' American investment company, Karloutsos highly recommended that Chaleplis involve Karloutsos' other very good friend, Rodgers, to assist in managing Chaleplis' American investment vehicle, to handle the company's legal work since Rodgers is an attorney, and to assist in researching, developing, pursuing and consummating American business opportunities and investments for Chaleplis' American investment company.

19.     During their discussions, Karloutsos further advised Chaleplis to use Onoufriadis and Rodgers as formal officers of One World rather than Karloutsos. Karloutsos made this suggestion based on the fact that Karloutsos could not "formally" or "publicly" participate in the membership and/or management of One World since Karloutsos (based on his lobbying history and family connections) was taking a position with the U.S. State Department in Washington D.C. in its Protocol Office as of July 23, 2017.

20.     Consequently, Karloutsos could not openly, actually and/or formally participate in private sector consulting, and could not openly, actually and/or formally own or participate in the management of private enterprises, or pursue business opportunities on behalf of private citizens or companies while engaging in lobbying/consulting activity, while working for the U.S. State Department.

21.     On July 23, 2017, Karloutsos commenced his position in the Trump State Department as Deputy Chief of Protocol.

BE:11690424.1/CHA379-277986

22.    In doing so, Karloutsos completed an Office of Government Ethics ("OGE") Federal Executive Branch Personnel Public Financial Disclosure Report (OGE Form 278e).  The OGE Form 278e requires all new federal Executive branch employees to disclose their finances and business interests to the OGE under penalty of perjury (the "OGE Report").

23.    In his sworn March 23, 2017 OGE Report, Karloutsos disclosed under oath that: (i) Karloutsos' business was his consulting/lobbying company MAK; (ii) that his annual income from MAK for "consulting" was between $100,000 and $125,000 annually; (iii) that he only had $15,000 to $50,000 in his Wells Fargo personal bank account; and (iv) that he has personal business ties to Greece and Cyprus.  He consequently was in no financial position to purchase and finance an approximately $1,270,000 home at the time he commenced his State Department position, which he ultimately purchased approximately one year later using funds he misappropriated from Plaintiffs as detailed below.

24.    Karloutsos also commenced his State Department position financially reeling from a scandalous business endeavor and significant related debt loads.  Notably, Karloutsos sold his former residence at 1462 Hagys Ford Road, Penn Valley, Pennsylvania outside of Philadelphia for $847,500 on or about September 8, 2017 after commencing his State Department.  The original face amount of the mortgage on that home at the time of sale was $678,000.  Notably, when Karloutsos and his wife purchased that home, they used a $608,000 purchase money mortgage.  Their mortgage debt thus increased while they lived there between 2011 and 2017, and while owning/operating the city-owned Waterworks Restaurant in Philadelphia where they became embroiled in major scandals and corrupt business dealings. Those scandalous issues included: (i) not installing separate electrical meters on the property, resulting in Philadelphia taxpayers picking up the tab for the restaurants' utility expenses; (ii)

7

Karloutsos' brother-in-law embezzling money from the restaurant by artificially inflating vendor invoices that the restaurant paid, and being criminally prosecuted and imprisoned; and (iii) an ownership dispute between Karloutsos and a third-party that was Karloutsos' good friend over a ten (10%) interest in the failed restaurant venture.

25.     Karloutsos also took out a huge loan of $2,112,500 in 2006 from the Philadelphia Local Development Authority to finance the Waterworks operation.  Karloutsos' Public Property Search records demonstrate that $2,112,500 loan was secured by the Philadelphia residence he owns on Pemberton Street, and also cross-collateralized against his Penn Valley residence purchased in 2011, with the Waterworks assets appearing to have been part of that cross-collateralization.  Public records also indicate Karloutsos has a $36,179 default judgment outstanding against him from February 2008, and has still not fully paid another judgment Philadelphia has against him for the Waterworks Restaurant scandal.

26.     The Waterworks failure further indicates Karloutsos had serious debts following the failed Waterworks debacle, and was not a likely able buyer for a $1,270,000 home immediately after commencing his U.S. State Department position on July 23, 2017.  Since the mortgage debt on the Penn Valley home was near $678,000, Karloutsos would have only cleared about $170,000 on the sale minus about $40,000 sale commission to the real estate broker, moving expenses, legal fees, etc. That too would not be insufficient to allow him to purchase or finance a $1,270,000 home one year later, along with the lifestyle and expenses that come with it.  This was especially true give the aforementioned debt stemming from the Waterworks Restaurant failures.

27.     Rodgers too was in poor financial shape at the time Onoufriaudis and Karloutsos presented Rodgers with the opportunity to work with Chalpelis.

28.     Both Onoufriadis and Karloutsos advised Chaleplis to utilize Rodgers' legal services for the American investment vehicle since Rodgers was an attorney and also one of Karloutsos' very best friends.  In reality, they recommend Rodgers involvement to Chaleplis in order to use and coordinate with Rodgers to misappropriate, divert and convert Plaintiffs' funds.

29.     Furthermore, based on their discussions, Karloutsos and Onoufriadis recommended that Chaleplis allow Onoufriadis to manage the day-to-day operations of Chaleplis' American investment company, while Karloutsos "silently" worked with Onoufriadis and Rodgers on Chaleplis' and One World's behalf to research, identify, pursue, develop and consummate American business opportunities and investments for Chaleplis' investment company that was ultimately One World.

**Formation of One World to Pursue American Business & Investment  Opportunities**

30.     On or about May 24, 2017, Chaleplis formed One World by filing a Certificate of Formation for One World with the Delaware Secretary of State to pursue American business opportunities and investments.  Rodgers filed the Certificate of Formation.

31.     Very shortly thereafter on June 15, 2017, Rodgers clandestinely formed Rodgers Investments in Wyoming to serve as a conduit company and bank account for Rodgers, Karloutsos, MAK, Rodgers Investments and JMR PC to misappropriate, divert and convert Plaintiffs' funds for themselves at Plaintiffs' financial detriment.

32.     Subsequently, based upon all of Chaleplis' previous discussions with Onoufriadis and Karloutsos, the two of them coordinated and arranged for Chaleplis to meet with Karloutsos, Onoufriadis and Rodgers in person on or about September 28, 2017 (the "September 28, 2017 Meeting").

33.     The purpose of the September 28, 2017 Meeting was for Chaleplis, Karloutsos, Onoufriadis and Rodgers to: (i) all meet one another in person at the same time to discuss

Chaleplis' American investment vehicle goals and endeavors; (ii) for Chaleplis to learn from these individuals about Onoufriadis', Rodgers' and Karloutsos' alleged experience, capabilities, knowledge and ideas in identifying, making, developing and managing American investments and business opportunities; (iii) for Chaleplis to learn about investment ideas Karloutsos, Rodgers and Onoufriadis had for Chaleplis in line with Chaleplis' interests; and (iv) to negotiate and discuss the contractual terms, conditions, business understandings and details for defendants' potential  management of One World's investments, business operations, capitalization and business/investment objectives.  The purpose of the meeting was to also discuss Onoufriadis, Rodgers and Karloutsos managing, operating, developing and advancing One World's investment opportunities and operations on Chaleplis' behalf.

34.    During the September 28, 2017 Meeting, Onoufriadis, Karloutsos and Rodgers solicited and requested Chaleplis allow them to manage, supervise, research, identify, pursue, develop and consummate all of One World's business and investment opportunities, and for Chaleplis to allow them to cooperatively work and coordinate with one another to develop, research, pursue, develop and consummate American business and investment opportunities for Chaleplis' investment vehicle in the form of One World.

35.    Specifically during the September 28, 2017 Meeting in Manhattan, Karloutsos, Onoufriadis and Rodgers solicited and intentionally made materially false statements to Chaleplis that they had the necessary experience to, and were capable of, successfully identifying, finding, developing, pursuing and consummating American investment and business opportunities that Chaleplis was interested in as outlined above.  These intentionally false and material representations reasonably induced Chaleplis into agreeing to partner with Onoufriadis, Karloutsos and Rodgers in assisting and managing Chaleplis' American investment vehicle.

36.     These intentionally false and material representations also reasonably induced Chaleplis into appointing Onoufriadis as the Manager of One World and as a Member, since Onoufriadis intentionally and falsely represented to Chaleplis that Onoufriadis would assist Chaleplis and One World to profit from that non-existent purported relationship in the areas of online gaming and lottery, and since Onoufriadis was an alleged American employee of that international company.

37.     During the September 28, 2017 Meeting, Onoufriadis and Karloutsos solicited Chaleplis to manage and operate One World, while holding Onoufriadis out as highly experienced, knowledgeable and capable of managing One World in identifying, developing, pursuing and consummating business opportunities and investments in the United States, and capable of serving as a "front man" for Karloutsos as well.  This despite the fact Onoufriadis had no such experience or knowledge. Chaleplis reasonably relied upon those materials misrepresentations in agreeing to make Onoufriadis the Manager of One World and a member of the company.

38.     During the September 28, 2017 Meeting, Rodgers solicited Chaleplis to serve as One World's Chief Legal Officer and Secretary, while Rodgers and Karloutsos held Rodgers out as a highly experienced and capable of handling One World's legal needs relating to identifying, developing, pursuing and consummating business opportunities and investments in the United States in accordance with all related legal issues.  This despite Rodgers having no such experience or knowledge in such areas of the law or businesses.

39.     At the time of the foregoing meetings, Karloutsos and Rodgers intentionally concealed and failed to disclose to Chaleplis and One World that Karloutsos and Rodgers

improperly practiced the diversion and transfer of funds through Rodgers IOLTA account to themselves and MAK for purposes of concealing such transactions from the public.

40.    Following the foregoing meetings in Manhattan and the intentionally false misrepresentations and concealments that Onoufriadis, Karloutsos and Rodgers made, Chaleplis was reasonably induced into agreeing to hire: (i) Onoufriadis as One World's Manager in exchange for compensation; and (ii) Rodgers as One World's Secretary and Chief Legal Officer ("CLO") and Secretary in exchange for compensation based upon terms and conditions they all discussed during the September 28, 2017 Meeting in New York City.

41.    Rodgers then prepared a written Operating Agreement for One World that Rodgers and/or Onoufriadis forwarded to Chaleplis for signature, despite Rodgers having multiple ethical conflicts while doing so in the form of: (i) representing himself in the transactions as future CLO and Secretary of One World; (ii) having an unwritten oral "side deal" to split Rodgers' profit sharing interest in One World 50/50 with Karloutsos and contained in the Operating Agreement; (iii) representing Karloutsos in the transaction; (iv) representing One World in the transaction; and (v) representing Chaleplis in the transaction, who was never represented by counsel regarding the drafting, negotiation and writing of the Operating Agreement while English not even his primary language.

42.    That written Operating Agreement was supposed to memorialize the contractual terms of the agreement that Chaleplis had discussed and negotiated with Rodgers, Onoufriadis and Karloutsos during their in-person meeting and negotiations in Manhattan at the September 27, 2017 Meeting.

43.    The Operating Agreement intentionally omitted any reference to Karloutsos having involvement and/or a profit interest in the company, despite the fact that Karloutsos

would, because Karloutsos was serving in his position with the Department of State at the time. The Operating Agreement also made that omission despite the fact Karloutsos was also going to be involved in managing the business operations of One World in seeking out and developing American business opportunities, and in assisting Onoufriadis and Rodgers in managing One World on that front.

44.    On or about September 30, 2017, Chaleplis and Onoufriadis executed the written Operating Agreement for One World (the "Operating Agreement").

45.    Pursuant to Paragraph 3.1/4.1 of the Operating Agreement, Chaleplis was the eighty percent (80%) member in One World.

46.    Pursuant to Paragraph 3.1/4.1 of the Operating Agreement, Chaleplis was also the 100% profit member of One World since Chaleplis contributed all of the capital into One World, and since One World was specifically formed to serve as an American investment vehicle for Chaleplis.

47.    Since One World was Chaleplis' personal investment vehicle to make American investments and pursue American business opportunities, all capital contributions made into One World were made by Chaleplis between August 2017 and July 2019.

48.    Pursuant to Paragraph 3.1/4.1 of the Operating Agreement, Onoufriadis was the twenty percent (20%) member in One World.

49.    Pursuant to the Operating Agreement, and in accordance with Chaleplis' purpose for forming One World, Chaleplis made repeated and numerous capital contributions to One World between August 2017 and July 2019 for the sole and exclusive purpose of "pursu[ing] investment and business opportunities in the United States," and any other investments the

13

"majority" of the members (i.e. Mr. Chaleplis as the eighty percent (80%) member and 100% profit member) voted to approve.

50.    Onoufriadis was a twenty percent (20%) member of One World from September 30, 2017 until he executed an Assignment of Membership Interest in favor of Chaleplis on April 2, 2020 assigning all of Onoufriadis' One World membership interest to Chaleplis.  As a result of that assignment, Chaleplis became the 100% member of One World.

51.    Pursuant to Paragraph 2.1 of the Operating Agreement and Paragraph 3.3(a) of the Operating Agreement's general provisions, Onoufriadis was appointed and designated as the sole Manager of One World.

52.    Pursuant to Paragraph 3.3(c) of the Operating Agreement, Rodgers was appointed the Chief Legal Officer and Secretary for One World.

53.    Pursuant to Paragraph 15.13(a) of the Operating Agreement, Onoufriadis' compensation for serving as Manager was $50,000 annually.

54.    Consequently, both Onoufriadis and Rodgers were specifically charged with both contractual obligations and fiduciary duties of care and loyalty to both One World and Chaleplis in Onoufriadis' and Rodgers' fiduciary capacities as: (i) One World's Manager, Secretary and Legal Officer; and (ii) regarding Nick as a member of One World.

55.    Pursuant to Paragraph 15.13(b), Rodgers was not paid any annual salary for serving as the Chief Legal Officer or Secretary of One World, but was entitled to specific compensation as outlined below.

56.    Rodgers drafted the Operating Agreement for One World as attorney for One World while contemporaneously having multiple ethical conflicts as an attorney in doing so due to: (i) Rodgers' personal financial interest in One World transactions pursuant to Paragraph

14

15.13(c) of the Operating Agreement; (ii) due to his personal friendship and oral "side-deal" agreement with Karloutsos outlined in this Complaint; (iii) due to the fact he was to serve contractually and in a fiduciary capacity per the Operating Agreement as the Chief Legal Officer and Secretary of One World; and (iv) due to his failure to disclose to Chaleplis before, during and after drafting and execution of the Operating Agreement that Rodgers was representing One World, Chaleplis and himself all at the same time, and not solely Chaleplis individually, in the drafting, negotiating and execution of the Operating Agreement.

57.     Pursuant to Paragraph 15.13(c), both Onoufriadis and Rodgers were allegedly entitled to participate in profit sharing regarding One World's profits by "receiv[ing] three percent (3%) of all monies transferred into the company accounts and an additional three percent (3%) of all funds transferred out of the company accounts," thereby granting them a "cumulative six percent (6%) interest in all [business transactions]" ultimately yielding a profit to One World.

58.     In reality, Karloutsos utilized his good friends Onoufriadis and Rodgers as "front men" for Karloutsos to participate in the management, operations and profitability of One World due to Karloutsos' inability to consult, work and/or lobby in the private sector as a result of working in the U.S. State Department.

59.     To circumvent Karloutsos' dilemma and conflict as a U.S. State Department employee, Karloutsos entered into an oral "side agreement" with his good friend Rodgers whereby the two (2) of them contractually agreed to share fifty percent (50%) of Rodgers' three percent (3%) profit sharing opportunity in One World per the Operating Agreement with one another, thereby giving Karloutsos a silent 1.5% profit sharing interest in One World's ultimate profits from successful business investments.

BE:11690424.1/CHA379-277986

60.     This "side deal" allowed Karloutsos to secretly work on behalf of One World to develop and pursue American business and investment opportunities in exchange for receiving profit-sharing from those business opportunities, despite concurrently working for the U.S. State Department, and while allowing his good friend Rodgers to financially benefit from their involvement in One World.

61.     On December 17, 2017, Karloutsos left his position at the U.S. State Department after less than half a year due to becoming involved in another private scandal stemming from his improper involvement in the attempted purchase of the Greek national insurance company, but continued "working" on One World's behalf to identify and create alleged "investment and business opportunities" for One World and Chaleplis.

62.     Upon Karloutsos leaving the State Department, he continued co-managing One World in accordance with his 50/50 "side deal" with Rodgers outlined above.

**One World Commences Business Operations**

63.     Subsequent to the above events, Chaleplis made capital contributions to One World at various intervals between August 2017 and July 2019.

64.     Following the execution of the Operating Agreement, Onoufriadis, Karloutsos and Rodgers had One World open: (i) three (3) separate Citizens Bank accounts; (ii) an Alex Brown/Raymond James investment account; and (iii) a Hancock Whitney account.

65.

66.     Moreover, virtually all of Chaleplis' capital contributions were made into Rodgers' Citizens Bank IOLTA attorney trust account for ultimate intended capital contribution transfer to One World's bank accounts referenced above at various intervals.

67.     Due to both Onoufriadis', Karloutsos' and/or Rodgers' existing relationship with Citizens Bank, Onoufriadis unnecessarily opened three (3) separate One World bank accounts

BE:11690424.1/CHA379-277986

with Citizens Bank (rather than only one) with the specific intent of Onoufriadis, Rodgers and Karloutsos misappropriating Chaleplis' and One World's funds through the unnecessary diversion via electronic wiring, intra-Citizens Bank account transfers and diversions of Chaleplis' One World capital contributions as outlined below.

**The Greek Medicinal Cannabis Scam Used to Misappropriate Plaintiffs' Funds**

68.     On or about March 17, 2018, Chaleplis travelled to Las Vegas, Nevada from New York City with Karloutsos. He did so after first again meeting in New York City with Karloutsos and Rodgers to discuss in person the details of proposed One World business opportunities that Onoufriadis, Karloutsos and Rodgers allegedly had researched and developed for One World (the "March 17, 2018 Meeting").

69.     During the March 17, 2018 Meeting and leading up to it, Karloutsos, Onoufriadis and Rodgers intentionally and falsely presented a phony purported "business opportunity" to Chaleplis that was actually a fraudulent scheme and artifice designed to misappropriate and convert Chaleplis' investment proceeds designated for One World, and centering upon One World entering and pursuing the Greek medicinal cannabis market that did not yet exist ("the Medicinal Cannabis Scam").

70.     Onoufriadis', Karloutsos' and Rodgers' presentation of this phony "business opportunity" coincided with the March 7, 2018 publication of the licensing process for Greek pharmaceutical cannabis companies in the Official Government Gazette of Greece.

71.     During and leading up to the March 17, 2018 Meeting, Karloutsos, Onoufriadis and Rodgers intentionally and falsely described to Chaleplis that the Medicinal Cannabis Scam would involve One World advancing the necessary funds to capitalize, create and/or enter the Greek medicinal cannabis market for the following: (i) applying for all licenses and permits needed to form a vertically integrated medicinal cannabis business (cultivation, agriculture,

17

harvesting, processing, distribution, storage, manufacturing, product production, etc.); (ii) paying for all purported lobbying, governmental relations and other service fees allegedly needed to obtain such licenses; (iii) developing, purchasing and/or leasing the land, tooling, facilities, equipment, human capital, etc. necessary to conduct and carry out such a business; and (iv) all other infrastructure and services needed to develop and establish a vertically integrated medical cannabis business licensed to operate under Greek law.

72.    In making their material misrepresentations as to the intended use of Chaleplis'/One World's funds for the Medicinal Cannabis Scam, Onoufriadis, Karloutsos and Rodgers referenced the published licensing process to establish a medical cannabis operation in Greece. That licensing process required applicants to submit compliant applications detailing and identifying: (i) land plots to be utilized for the operation (either directly owned or leased); and (ii) an investment budget estimate.

73.    Additionally, the licensing process required the applicant company to be a new company established in Greece, and further required the new company shareholders to be residents within the European Union/European Economic Area.

74.    Moreover, Onoufriadis, Karloutsos and Rodgers intentionally and materially misrepresented to Chaleplis that Chaleplis himself should not and/or could not be an actual shareholder in any new company formed in Greece for purpose of establishing a licensed Greek medicinal cannabis operation due to Chaleplis' highly successful interests in award-winning gaming businesses and services. This was based upon their intentional misrepresentations to him that the Greek medicinal/pharmaceutical cannabis market was publicly perceived with distrust, which coupled with Chaleplis' interests in gaming would harm his ability to secure any medicinal cannabis licenses.

BE:11690424.1/CHA379-277986

75.     Based upon the foregoing, Onoufriadis, Karloutsos and Rodgers deceptively and intentionally advised Chaleplis that any newly formed Greek companies for the Medicinal Cannabis Scam must be owned and controlled by individuals under their own influence for purposes of control and accountability.

76.     Moreover,  Onoufriadis, Karloutsos and Rodgers also deceptively and intentionally advised Chaleplis that to accomplish the foregoing, One World's investment in the Greek Medicinal Cannabis Scam should be structured as convertible loans to the new Greek companies to be established.  This would address all of the foregoing concerns regarding the ownership and public relations issues, while allowing One World and Chaleplis to preserve their ultimate ownership interest in any new Greek company that bid and was successfully awarded the necessary medicinal cannabis licensing to fully establish and operate a medicinal cannabis business enterprise.

77.     Onoufriadis, Karloutsos and Rodgers also deceptively and intentionally advised Chaleplis that to accomplish the foregoing, One World and Chaleplis would need to establish three (3) new companies in Greece to bid for the licenses, and to acquire, install and construct the necessary real estate, tooling, infrastructure, equipment, greenhouses, irrigation, etc. to establish a legally valid and functional medical cannabis business in accordance with Greek law.

78.     During Chaleplis' foreogoing meetings and discussions with Onoufriadis, Karloutsos and Rodgers, they all intentionally and materially misrepresented to Chaleplis that Onoufriadis' brother residing in Greece, Theophylos Onoufriadis ("Theo"), would oversee the Medicinal Cannabis Scam investments and operations on the ground in Greece, in order to secure the necessary licensing, real estate and infrastructure to establish and operate such a business operation.

BE:11690424.1/CHA379-277986

79.    During and leading up to the March 17, 2018 Meeting, Karloutsos, Onoufriadis and Rodgers further discussed the Medicinal Cannabis Scam in detail with Chaleplis, which specifically included discussions and details concerning: (i) the alleged required funding and budgeting for the Medicinal Cannabis Scam in the millions of dollars; (ii) the number of companies needed to be formed and managed to hold the necessary licenses and conduct the various components of the vertically integrated nature of the Medicinal Cannabis Scam; (iii) the capital and corporate structure for the Medicinal Cannabis Scam using One World funds exclusively; (iv) the targeting and acquisition of the necessary assets and human capital to establish the Medicinal Cannabis Scam; and (v) the time lines associated with establishing the business.

80.    The purpose of the Las Vegas trip following the March 17, 2018 Meeting in Manhattan was to purportedly research, investigate and conduct due diligence on potential alleged new business opportunities for One World in the online gaming and casino markets.

81.    Notably, while presenting the Medicinal Cannabis Scam to Chaleplis and One World before and during the March 17, 2018 Meeting telephonically, Onoufriadis did not partake in that Las Vegas business trip or the meeting between Chaleplis, Rodgers and Karloutsos in New York City to discuss One World business details.  This despite Onoufriadis being the One World Manager.  This evidences that Karloutsos and Rodgers were also involved in managing the operations and business affairs of One World, despite Karloutsos not being a named a "formal" member, officer, manager and/or director of One World.

82.    For the March 17, 2020 Meeting and other meetings the parties had with one another in New York City, Onoufriadis, Karloutsos and Rodgers presented the phony written

20

budget to Chaleplis claiming it accurately itemized and estimated the actual costs to capitalize and launch a vertically integrated medicinal cannabis company in Greece.

83.    The intentionally false and materially misleading phony budget was designed to misappropriate Chaleplis and One World's funds, and was based upon a phony estimate of €15,000,000 per Greek company to establish a fully vertically integrated and licensed medical cannabis company in accordance with Greek law.

84.    The phony budget they presented to Chaleplis included itemized expenses to form and establish three (3) separate Greek companies that would acquire property interests at the following Greek locations: (i) Korinthos, Greece (48 acres); (ii) Thiva, Greece (120 acres); and (iii) Thiva, Greece (50 acres) respectively.

85.    During the March 17, 2018 Meeting conducted in New York City though, and during the subsequent Las Vegas trip back and forth from New York City, neither Onoufriadis, Karloutsos nor Rodgers ever disclosed to Chaleplis that Onoufriadis, Karloutsos and Rodgers were actually intending and planning on diverting and misappropriating One World's funds to themselves for their own personal use, under the phony guise and scheme of the Medicinal Cannabis Scam, through various American companies, Greek phony company conduits and accounts.

86.    Between May 2017, during the March 17, 2018 Meeting conducted in New York City and all calls and meetings thereafter though, and during the subsequent Las Vegas trip back and forth from New York City, neither Onoufriadis, Karloutsos nor Rodgers ever disclosed to Chaleplis that Onoufriadis, Karloutsos and Rodgers were actually intending and planning on diverting and misappropriating One World's funds to themselves for their own personal use by directly misappropriating those funds directly from One World's account to themselves via their

21

own personal bank accounts and/or through: (i) Rodgers IOLTA account with Citizens Bank; (ii) Rodgers Investments account also with Citizens Bank; (iii) Rodgers Working account with Citizens Bank used for his legal practice and JMR PC; (iv) Onoufriadis' personal Citizens Bank account(s); (iv) Onoufriadis' alter-ego company Power 2u Consulting, LLC's Citizens Bank account (another Wyoming company Rodgers formed for Onoufriadis on March 29, 2018 as more detailed below); (v) Karloutsos' personal Wells Fargo account; and/or (vi) MAK's Wells Fargo account through the nefarious transfers more detailed below.

87.    Shortly before leading up to and shortly after the March 17, 2018 Meeting, and following all the discussions Chaleplis had with Onoufriadis, Rodgers and Karloutsos regarding the purported Medicinal Cannabis Scam, Chaleplis made the following capital contributions into One World (through Rodgers' IOLTA attorney trust account) in reasonable reliance upon their intentional and phony material misrepresentations presented to Chaleplis concerning that Medicinal Cannabis Scam, so as to provide the necessary capital for that investment: (i) €500,000 on March 12, 2018; (ii) €1,000,000 on March 15, 2018; (iii) €2,700,000 on March 19, 2018; (iv) €10,400,000 on March 30, 2018; and (v) €2,180,000 on December 21, 2018.

88.    As a result, less than a week before the March 17, 2018 Meeting and also on or about the next few days and weeks, Chaleplis made the foregoing capital contributions into One World while intentionally kept unaware that the Medicinal Cannabis Scam was in fact a fraudulent scheme and artifice designed and conceived for Karloutsos, Onoufriadis and Rodgers to convert, divert and misappropriate Chaleplis'/One World's funds to themselves and their colleagues for their own personal use.

89.    Chaleplis made those wire transfers as One World capital contributions unaware and misled of Onoufriadis', Rodgers' and Karloutsos' intentional concealment of the material

facts that the Medicinal Cannabis Scam was a scheme and artifice designed and conceived for Onoufriadis, Rodgers and Karloutsos to misappropriate Chaleplis'/One World's funds for their own personal use. He also made those capital contributions unaware and misled that Rodgers, Karloutsos and Onoufriadis were premeditating and planning to misappropriate Plaintiffs' funds as detailed above and below to themselves, Rodgers Investments, JMR PC and MAK.

90.     Had Chaleplis been made aware of the true facts behind the Medicinal Cannabis Scam, he would never have made any of the foregoing capital contributions into One World, and could have recouped and/or preserved his funds. Due to Onoufriadis', Rodgers' and Karloutsos' affirmative and intentional misrepresentations and concealments outlined above, Chaleplis made those additional capital contributions into One World.

91.     On or about March 19, 2018 and March 20, 2018, Chaleplis once again met with Karloutsos, Rodgers and Onoufriadis in Manhattan at restaurants on both dates to discuss One World's business operations, business and investment prospects, company details and actual investments made thus far, which included all purported investment opportunities that Karloutsos, Rodgers and Onoufriadis had researched, developed and targeted (the "March 2018 Meetings").

92.     During the March 2018 Meetings, Onoufriadis, Rodgers and Karloutsos further discussed the Medicinal Cannabis Scam in detail with Chaleplis, which specifically included discussions and details concerning: (i) the alleged required funding for the Medicinal Cannabis Scam; (ii) the number of companies needed to be formed and managed to hold the necessary licenses and conduct the various components of the vertically integrated nature of the Medicinal Cannabis Scam; (iii) the capital and corporate structure for the Medicinal Cannabis Scam using One World funds exclusively; (iv) the targeting and acquisition of the necessary assets and

human capital to establish the Medicinal Cannabis Scam; and (v) the time lines associated with establishing the business.

93.     For the March 2018 Meetings, Onoufriadis, Karloutsos and Rodgers again presented the phony written budget to Chaleplis claiming it itemized the actual costs to capitalize and launch a vertically integrated medicinal cannabis company in Greece.

94.     During the March 2018 Meetings, Onoufriadis, Rodgers and Karloutsos also discussed potential and actual future investment opportunities for One World that they had allegedly been developing and/or engaging in for One World.

95.     During the March 2018 Meetings, neither Onoufriadis, Rodgers nor Karloutsos ever disclosed to Chaleplis the truth about the Medicinal Cannabis Scam, which is that it was a fraudulent scheme and artifice designed to misappropriate Chaleplis'/One World's funds for themselves and their colleagues. They also failed to disclose their anticipated scheme to misappropriate Plaintiffs directly from One World and Rodgers' IOLTA account to themselves to Plaintiffs' detriment.

96.     Had Chaleplis been made aware of the truth regarding the Medicinal Cannabis Scheme and Defendants' other intentions to misappropriate Plaintiffs' during the March 2018 Meetings, he would never have made any further capital contributions into One World, and/or could have recouped or preserved those funds.  Due to Onoufriadis', Karloutsos' and Rodgers' intentional concealment of those material facts and related material misrepresentations, Chaleplis made the following additional capital contributions into One World for capitalizing the Medicinal Cannabis Scam  (iii) €2,700,000 on March 19, 2018; (iv) €10,400,000 on March 30, 2018; and (v) €2,180,000 on December 21, 2018.

BE:11690424.1/CHA379-277986

97.     On March 21, 2018, Onoufriadis alone again met Chaleplis in New York City to review, discuss and develop One World's business operations, investments and potential business opportunities, including to discuss in detail the Medicinal Cannabis Scam (the "March 21, 2020 Meeting").  This meeting also included One World's business opportunities that Onoufriadis had allegedly been researching and developing for One World Since 2017, none of which actually existed except for the phony Medicinal Cannabis Scam.

98.     For the March 21, 2020 Meeting, Onoufriadis, Karloutsos and Rodgers again presented the phony written budget to Chaleplis claiming it itemized the actual costs to capitalize and launch a vertically integrated medicinal cannabis company in Greece.

99.     The March 21, 2018 Meeting included additional conversations, intentional affirmative misrepresentations and intentional concealments from Onoufriadis regarding the Medicinal Cannabis Scheme, including but not limited to: (i) the required funding for the Medicinal Cannabis Scam; (ii) the number of companies needed to be formed and managed to hold the necessary licenses and conduct the various components of the vertically integrated nature of the Greek Medicinal Cannabis Scam; (iii) the capital and corporate structure for the Medicinal Cannabis Scam using One World funds exclusively; (iv) the targeting and acquisition of the necessary assets and human capital to establish the Greek Medicinal Cannabis Scam; and (v) the time lines associated with establishing the business.

100.    Once again on March 21, 2018, Onoufriadis intentionally never disclosed the material facts to Chaleplis that the Medicinal Cannabis Scam was in actuality a fraudulent scheme and artifice designed to convert and misappropriate Chaleplis'/One World's  funds. Rather, Onoufriadis advised the business plan for the Medicinal Cannabis Scam was proceeding accordingly.   Due to the intentional concealment of those material facts, Chaleplis made the

25

following additional capital contributions into One World: (i) €10,400,000 on March 30, 2018; and (ii) €2,180,000 on December 21, 2018.  They again failed to disclose their planned direct theft and misappropriation of Plaintiffs' funds through anticipated transfers to Defendants' and Onoufriadias' accounts.

101.   In anticipation of Chaleplis making his capital contributions and/or upon and after making them, Rodgers finally opened a bank account for Rodgers Investments on March 28, 2018 with Citizens Bank ("Rodgers Investments Account") for anticipated use to misappropriate and divert Plaintiffs' funds to himself, JMR PC, Rodgers Investments, Karloutsos, MAK, Onoufriadis and Onoufriadis' alter-ego Power 2u Consulting, LLC (Power 2u").  Rodgers opened and initially funded the Rodgers Investments Account using $100,000 of Plaintiffs' own funds in Rodgers' IOLTA Account that Rodgers transferred to the Rodgers Investments Account.

102.   Additionally, the very next day on March 29, 2018, Rodgers and Onoufriadis formed Power 2u in Wyoming and by Onoufriadis for anticipated use to misappropriate and divert Plaintiffs' funds to Onoufriadis, Rodgers Investments, Karloutsos, MAK, Power 2u and other co-conspirators they were involved with in the theft of Plaintiffs' funds.

103.   Soon thereafter on April 27, 2018, Onoufriadis himself opened a new Citizens Bank account for Power 2u.

104.   Notably, Onoufriadis already had an existing Massachusetts limited liability company that he owned since at least 2016 similarly called Power 2 U, LLC ("Power 2 U DE"). Power 2 U DE through never had an account or business operation until Onoufriadis also opened a Citizens Bank account for Power 2 U DE on January 18, 2018 in anticipation of misappropriating Plaintiffs' funds, that Onoufriadis never used but to portray the public

existence of a separate "Power 2 U" entity and account from the ones he actually planned on employing to deceive and defraud Plaintiffs, and to place Plaintiffs' funds beyond the reach of Plaintiffs.

105.    Based upon the foregoing multiple meetings in New York City between Chaleplis and Onoufriadis, Rodgers and Karloutsos, and the latter three's intentional affirmative misrepresentations and/or omissions about the fact the Medicinal Cannabis Scam was a fraudulent scheme and artifice they designed to misappropriate and convert Chaleplis'/One World's funds for their own use, Chaleplis made the foregoing capital contributions into One World in reasonable reliance upon those intentional misrepresentations and/or omissions.

106.    Following Chaleplis' foregoing capital contributions made towards One World, Onoufriadis, Karloutsos, Rodgers, Theo and other conspirators in Greece ultimately formed three (3) new Greek companies for purposes of One World/Chaleplis investing in the Medicinal Cannabis Scam: (i) Bioprocann, S.A. ("Bioprocann"); (ii) Leadercann, S.A. ("Leadercann"); and (iii) Hellascann, S.A. ("Hellascann").  These three (3) Greek companies were formed to execute the Medicinal Cannabis Scam that Onoufriadis, Karloutsos and Rodgers had materially and intentionally misrepresented to One World and Chaleplis.  Notably, Onoufriadis is publicly listed as a one percent (1%) shareholder in Hellascann.  In addition, Theo is the President, CEO and board member of Hellascann, while the Onoufriadis brothers' mother Tarsi Onoufriadis is also a board member.

107.    Shorlty thereafter, Onoufriadis, Karloutsos and Rodgers intentionally misrepresented to Chaleplis/One World that Hellascann and Leadercann were encountering temporary delays in opening their Greek bank accounts due to Greek banking laws and regulatory reviews regarding the shareholder composition of those two (2) new Greek

companies.  In comparison, Bioprocann was able to quickly open a bank account under Greek

law and regulations.  In reality, Onoufriadis, Karloutsos and Rodgers purposefully acted in

collaboration with an accounting firm of their choosing and under their influence, MyLysis, to

intentionally misrepresent to Chaleplis that Hellascann and Leadercann would be able to open

bank accounts, when in fact they all knew that neither company would be able to do so given

their shareholder composition.  Consequently, Onoufriadis, Karloutsos and Rodgers advised One

World/Chaleplis that they would: (i) fund Bioprocann's operations directly from One World; but

(ii) wire the necessary proceeds from One World to another Greek single member company

called Conmave Monoprosopi IKE ("Conmave") that Theo allegedly controlled, so that

Conmave could hold those proceeds in escrow temporarily until Hellascann's and Leadercann's

bank accounts were opened.  Thereafter, Conmave would immediately transfer the One World

funds held in escrow to those two (2) Greek companies to fund them for the Medicinal Cannabis

Scam.  Onoufriadis, Karloutsos and Rodgers intentionally misrepresented to Chaleplis that

Conmave was solely to serve as a facilitator of One World funds to Leadercann and Hellascann

until those two (2) companies completed their bank account openings per Greek protocols.  In

reasonable reliance upon these material misrepresentations, Chaleplis ultimately agreed to this

falsely advertised temporary solution given the very quick turnaround time required to comply

with the Greek published licensing application requirements.

108.    Onoufriadis, Theo, Karloutsos and Rodgers intentionally misrepresented the

realities regarding the inability to open Greek bank accounts for Leadercann and Hellascann so

that One World's and Chaleplis' funds could/would be transferred to Conmave for

misappropriation by Onoufriadis, Karloutsos, Rodgers, Theo and their fellow co-conspirators.

These intentionally delays also allowed them to conceal from Chaleplis the fact that they failed

28

to use any of the proceeds One World wired to Conmave to pursue the Medicinal Cannabis Scam
and/or to fund the Leadercann and Hellascann business operations.

109.     Moreover, Chaleplis' accountant was appointed as minority director and company
accountant for Bioprocann along with other individuals appointed by Onoufriadis, Theo and
Karloutsos.  In comparison, the directors and property owners for Leadercann and Hellascann
were Onoufriadis' mother Tarsi Onoufriadis and his first cousin Fotis Sinoris respectively.  In
addition, the Onoufriadis brothers' friends and relatives controlled those boards while the
accountant for Leadercann and Hellascann was MyLysis, also friendly with the Onoufriadis
brothers and their family having no relationship with Chaleplis. Onoufriadis, Karloutsos , Theo
and Rodgers also ensured that the shareholder makeup of all three (3) companies would ensure
that they would have total control over Bioprocann, Leadercann and Hellascan so they could
deprive and alienate Chaleplis in the future from monitoring and tracking those companies'
business operations and objectives.

110.     At the time, Chaleplis did not have concerns regarding the foregoing because
Onoufriadis, Karloutsos and Rodgers intentionally did not reasonably present him with any
indications or disclosures that they were plotting to defraud Chaleplis and One World of their
fund allocated to the Medicinal Cannabis Scam.  Rather, Chaleplis reasonably trusted them to
properly pursue the phony Medicinal Cannabis Scam and to properly use One World's wired
proceeds.

111.     On or about October 14, 2018, Chaleplis once again met with Onoufriadis and
Rodgers in Manhattan at a restaurant to discuss One World's current business affairs,
investments, business opportunities and investment opportunities that Rodgers, Karloutsos and

Onoufriadis allegedly had been working on for One World, including but not limited to the status and progress of the Medical Cannabis Scam (the "October 14, 2018 Meeting).

112.    The purpose of the October 14, 2018 Meeting was for Onoufriadis, Rodgers and Karloutsos to update Chaleplis on the progress, status and performance of One World's investments, future targeted investments to be made and other investment opportunities that Onoufriadis, Rodgers and Karloutsos had allegedly identified and made, including the Medical Cannabis Scam.

113.    During the October 14, 2018 Meeting, neither Onoufriadis, Rodgers nor Karloutsos ever disclosed to Chaleplis the truth about the Medicinal Cannabis Scam, which is that it was designed to convert and misappropriate plaintiffs' funds for their own personal benefit.  Such failure to disclose was intentional to avoid Chaleplis refraining from making additional capital contributions into One World, and/or from discovering the truth about the Medicinal Cannabis Scam.

114.    Moreover, during the October 14, 2018 Meeting, Onoufriadis and Rodgers intentionally failed and/or refused to disclose to Chaleplis that they had already diverted and misappropriated millions  of dollars belonging to One World/Chaleplis to themselves, their companies and/or their co-conspirators through Conmave and other transfers as detailed below. Those intentionally undisclosed diversions and theft of funds had already taken place in or about May 2018, June 2018 and July 2018 as detailed below, and thereafter as detailed below.

115.    Based upon Karloutsos', Onoufriadis' and Rodgers' affirmative misrepresentations and/or intentional concealments during the October 14, 2020 Meeting regarding the Medicinal Cannabis Scam and their initial failure to disclose their theft of One World's/Chaleplis' funds in May 2018, June 2018, July 2018 and thereafter, Chaleplis made

30

additional subsequent capital contributions into One World, including on or about December 21, 2018 in the amount of €2,180,000. Chaleplis also made no effort to attempt to recover his stolen funds at that time since he was unaware of the misappropriation of those funds.

116.    During all of the foregoing business meetings in Manhattan, neither Onoufriadis, Rodgers nor Karloutsos ever disclosed to Chaleplis that the Medicinal Cannabis Scam was utilized and/or being utilized as a fraudulent scheme to misappropriate and convert One World's/Chaleplis funds while: (i) Onoufriadis served as One World's Manager; (ii) while Rodgers served as One World's Chief Legal Officer and Secretary; and (iii) while Karloutsos served as a de factor manager, agent representative and operator for One World while using Onoufriadis and Rodgers as "front men" and having a 50/50 "side deal" with Rodgers. Their intentional failures to disclose these material facts were intentional so that Chaleplis would not discover the truth about the Medicinal Cannabis Scheme, so that Chaleplis would not remove Onoufriadis as Manager of One World, would not remove Rodgers as Secretary or Chief Legal Officer and/or would not discover or recover Chaleplis' misappropriated funds and/or preserve his capital contributions that Onoufriadis, Rodgers and Karloutsos were misappropriating for their own personal financial gain and lifestyles.

117.    Prior to all of the foregoing exchanges and meetings discussing the Medical Cannabis Scam and the wiring of funds to Conmave, Rodgers, Karloutsos and Onoufriadis all intentionally failed to disclose to Chaleplis that they had clandestinely received two (2) international wires from Conmave's Greek bank account into Rodgers' attorney trust account on the following dates: (i) $50,000 on February 26, 2018; and (ii) $10,000 on February 27, 2018. In addition, they failed to disclose to Chaleplis that on December 11, 2017, Rodgers had wired $120,000 through his attorney trust account to Conmave's Piraeus Bank account in Greece with

a note: "Down payment MB AMG GTS ITN5454." They further failed to disclose to Chaleplis

that on March 3, 2018, they had One World wire $70,948 from One World's Alex Brown

account to Onoufriadis' good friend Ioannis Manolakos ("Manolakos') for no legitimate purpose

whatsoever other than to abscond Chaleplis'/One World's funds.

118.    Rodgers, Karloutsos and Onoufriadis further intentionally concealed from

Chaleplis the above international wire payments to/from Conmave because the two incoming (2)

wires to Rodgers' attorney trust account served as payment advances and/or bribes to Karloutsos,

Onoufriadis and Rodgers from Conmave, Theo and other wrongdoers in Greece who partnered

and "associated-in-fact" with Onoufriadis, Karloutsos and Rodgers to misappropriate

Chaleplis'/One World's funds as further detailed below.

**Onoufriadis', Karloutsos' and Rodgers' Theft and Conversion of at Least $9,000,000 Out of One World's Accounts Through The Phony Greek Corporate Conduit Conmave Monoprosopi IKE**

119.    In May 2018 and June 2018, Onoufriadis, Karloutsos and Rodgers converted,

misappropriated and stole at least €4,000,000 from One World by way of three (3) separate

international wires from One World's Citizen Bank account to the phony Greek single member

company Conmave.

120.    The three (3) separate international wires from One World's Citizen Bank account

to Conmave were made and/or initiated by Onoufriadis, Rodgers and Karloutsos on their

collective behalf as follows: (i) $1,813,945 on May 22, 2018; (ii) $1,167,900 on June 18, 2018;

(iii) $1,693,455 on June 18, 2018.  These amounts in American dollars were collectively the

equivalent of approximately €4,000,000 on those times and dates.

121.    In doing so, Onoufriadis, Rodgers and Karloutsos intentionally and falsely

represented to Chaleplis in all of the New York City meetings, and at other times, that Conmave

was one of the Greek companies that One World would use to facilitate financing, pursuing and developing the Medicinal Cannabis Scam.

122.    Directly before the first wire to Conmave on May 22, 2018, Conmave actually wired approximately $60,000 from Conmave's Greek account to Rodgers' attorney trust account in the United States as an advance from Conmave (controlled by Onoufriadis' brother Theophylos) towards the theft of One World's/Chaleplis' funds under the guise of the Medical Cannabis Scam.

123.    The Conmave transfers and payments outlined above were intentionally never disclosed by Onoufriadis, Rodgers and/or Karloutsos to Chaleplis during any of the New York City meetings (or elsewhere) detailed above and below.

124.    To conceal and justify that theft of funds from Chaleplis/One World, Onoufriadis, Rodgersand Karloutsos, prepared a phony May 18, 2018 promissory demand note in One World's favor for €4,000,000 executed by the purported Conmave representative in Greece that was a childhood friend of the Onoufriadis brothers named Grigorios Chatziantoniadis ("Chatziantoniadis") (the "First Conmave Note").

125.    To further conceal and justify the €4,000,000 theft of funds, Onoufriadis, Rodgers and Karloutsos had the First Conmave Note contain a worthless "corporate guaranty" from Conmave itself "guaranteeing" the First Conmave Note, despite the fact Conmave is worthless company with no assets and the signatory of the First Conmave Note.

126.    Onoufriadis, Rodgers and Karloutsos obtained absolutely no actual security interest and/or collateral of any kind from Conmave to secure the First Conmave Note. Additionally, they failed to make the First Conmave Note a convertible note as they had falsely

BE:11690424.1/CHA379-277986

represented to Chaleplis they would regarding the financing of the new Greek companies formed for the Medical Cannabis Scam.

127.    At the New York City meetings Onoufriadis, Karloutsos and Rodgers participated in with Chaleplis, and thereafter, they intentionally misrepresented to Chaleplis that Onoufriadis' brother Theo had a controlling interest in Conmave.  They further advised Chaleplis that the actual Manager of Conmave is/was Chatziantoniadis, who was extremely close with the Onoufriadis brothers and who actually executed the First Conmave Note on Conmave's behalf. Onoufriadis, Karloutsos and Rodgers made these intentional misrepresentations to Chaleplis to fraudulently induce Chaleplis into making additional contributions to One World in reliance on the trust that Chaleplis had in Onoufriadis,  Rodgers and Karloutsos, so they could subsequently then steal One World's/Chaleplis' funds through the Medical Cannabis Scam by wiring One World's funds to Conmave for subsequent misappropriation and diversion.  Based on Onoufriadis', Rodgers' and Karloutsos' intentional misrepresentations and concealments as to Conmave's control and management, Chaleplis was reasonably induced and reasonably relied upon those intentional misrepresentations and concealments to trustingly allow Onoufriadis, Rodgers and Karloutsos to wire One World's funds to Conmave's Greek bank accounts.

128.    Onoufriadis, Karloutsos and Rodgers engaged Conmave in this manner and created the First Conmave Note for the specific purpose of misappropriating and diverting One World's/Chaleplis' funds to themselves, their family members and their colleagues by sending Chaleplis'/One World's funds to Conmave, then routing those funds into other Greek and European company accounts, and then re-routing those funds back to themselves here in the U.S. to their own personal United States accounts and/or accounts controlled by their friends and agents, including to accounts owned/controlled by Onoufriadis and his alter-ego company Power

34

2u and MAK. Tellingly, the First Conmave Note was not even convertible in nature as Onoufriadis, Rodgers and Karloutsos had misrepresented to Chaleplis it would regarding any One World funds advanced to finance the newly formed Greek companies earmarked for the Medical Cannabis Scam.

129.    After the €4,000,000 was wired from One World to Conmave into Greek bank account(s) between May 2018 and July 2018, Onroufriadis, his brother Theo, his mother, Karloutsos, Rodgers, Onoufriadis' cousin Fotis Sinioris and others in Greece working with co-conspirators in concert immediately absconded and converted One World's/Chaleplis' €4,000,000 from the Conmave bank account(s) for their own personal use, lifestyles and their unrelated business interests/companies in Greece, including but not limited to for the purchase of exotic automobiles, boats, paying for Onoufriadis' wedding, paying for personal expenses, purchasing and financing new homes for themselves in the United States that were far more valuable (and out of their price range) than their existing homes and other lifestyle expenses. Onoufriadis and Karloutsos also re-routed One World's and Chaleplis' misappropriated funds to their individual U.S. bank accounts, and to accounts that: (i) Onoufriadis controlled in the name of Power 2u; and (ii) to MAK.

130.    Meanwhile, Conmave has never made a single payment of any principal or interest to One World for the First Conmave Note, and the First Conmave Note is currently in default as of May 18, 2020.

131.    Worse, Conmave never invested or used any monies to advance, establish and/or develop the purported Medicinal Cannabis Scam that Onoufriades, Rodgers and Karloutsos perpetuated upon One World/Chaleplis.

132.    This intended and/or actual theft and misappropriation of Plaintiffs' funds using the First Conmave Note was intentionally never disclosed to Chaleplis at the March 17 Meeting, the March 2018 Meetings, the March 21, 2018 Meeting and/or the October 2018 Meeting in New York City.  Had it been, Chaleplis would have removed Onoufriadis and Rodgers as One World officers, and would have taken appropriate action to preclude any further theft and diversion of his/One World's funds and/or would have refrained from making any further capital contributions to One World.

133.    On or about October 17, 2018, Onoufriadis, Karloutsos and Rodgers again converted and stole at least another €3,250,000 from One World by way of international wire to the phony Greek company Conmave.

134.    The October 17, 2018 international wire to the Conmave account was in the amount of $3,746,600, which equaled approximately €3,250,000 at that time.

135.    To conceal and justify that theft of funds from Chaleplis and One World, Karloutsos, Onoufriadis and Rodgers prepared a second phony promissory demand note executed by the same Conmave representative in Greece in One World's favor for €3,250,000 (the "Second Conmave Note").  The Second Conmave Note was also not convertible in nature as Onoufriadis, Rodgers and Karloutsos had intentionally misrepresented any such loans advanced to the three (3) new Greek companies would be per their discussions with Chaleplis regarding the Medicinal Cannabis Scam.

136.    To further conceal and justify Onoufriadis', Rodgers' and Karloutsos' theft of One World's/Chaleplis' funds, the Second Conmave Note also contains a worthless "corporate guaranty" from Conmave "guaranteeing" the Second Conmave Note.

BE:11690424.1/CHA379-277986

137.    Onoufriadis, Rodgers and Karloutsos obtained absolutely no security interest and/or collateral of any kind from Conmave to secure the Second Conmave Note.

138.    After the at least €3,250,000 was illegally wired to Conmave into its Greek bank account(s), Onoufriadis, his brother Theo, his mother, Karloutsos, Rodgers, Onoufriadis' counsin Fotis Sinioris and their colleagues in Greece misappropriated and converted the €3,250,000 from the Conmave bank account for their own personal use, lifestyles and their unrelated business interests/companies in Greece in the same manner as they converted and misappropriated the funds involved in the First Conmave Note.   Onoufriadis and Karloutsos also re-routed One World's/Chaleplis' misappropriated funds comprising the Second Conmave Note to their individual U.S. bank accounts, and to accounts that Onoufriadis' alter-ego Power 2u account and Karloutsos' alter-ego MAK's bank account.

139.    To date, Conmave, Karloutsos, Rodgers, Onoufriadis, Theo and their colleagues have not repaid or returned a single dollar of the First Conmave Note or Second Conmave Note funds that they improperly diverted and misappropriated from One World to Greece for themselves and their unrelated personal/business interests.

140.    Conmave has never made a single payment of any principal or interest to One World for the Second Conmave Note.

141.    This intended and/or actual theft and diversion of One World's/Chaleplis' funds via the Second Conmave Note, and the scheme behind it, was intentionally never disclosed to Chaleplis at and/or leading up to the March 17 Meeting, the March 2018 Meetings, the March 21, 2018 Meeting and/or the October 2018 Meeting.  Had it been, Chaleplis would have removed Onoufriadis and Rodgers as One World officers, would have taken appropriate action to preclude

any further theft and diversion of One World's/Chaleplis' funds and/or would have refrained from making any further capital contributions to One World.

142.    None of the funds involved in the Second Conmave Loan were ever invested or utilized to pursue or advance the Medicinal Cannabis Scam.

143.    Absolutely none of the purported "loans" to Conmave or other undisclosed companies were actual "loans" or "convertible loans" as Onoufriadis, Rodgers and Karloutsos intentionally mispresented they would structure them.  In addition, none of those diversions were authorized "investments" in accordance with One World's business purpose of investing in American investment opportunities.  They were not even convertible in nature so as to allow Chaleplis to own equity in Conmave, Bioprocann, Hellascann and/or Leadercann or any other Greek company established to pursue the Medicinal Cannabis Scam, which Onoufriadis and his co-conspirators expressly promised and intentionally misrepresented to Chaleplis would be the structure of any such advances as part of the Medicinal Cannabis Scam.  These actions confirm the fraudulent scheme and artifice that Onoufriadis, Rodgers and Karloutsos perpetrated upon One World/Chaleplis.

144.    Had Chaleplis ever been made aware of the truth behind the Medicinal Cannabis Scam at any point in time by Karloutsos, Onoufriadis and/or Rodgers, Chaleplis would have removed Onoufriadis and Rodgers as One World officers, would have taken appropriate action to preclude any further theft of One World's/Chaleplis' funds and/or would have refrained from making any further capital contributions to One World to preserve One World's/Chaleplis' assets.

BE:11690424.1/CHA379-277986

**The Bioprocann Loan**

145.    On or about June 26, 2018, Onoufriadis, Karloutsos and Rodgers wired approximately $3,534,900 from One World to the Greek corporation Bioprocann by way of international wire.

146.    Onoufriadis, Rodgers and Karloutsos advised Chaleplis that the "loan" to Bioprocann was also for purposes of investing in Medical Cannabis Scam.  Onoufriadis, Karloutsos and Rodgers then prepared a June 26, 2018 promissory demand note for the alleged loan to Bioprocann in the amount of €3,000,000 (the "Bioprocann Note").

147.    Tellingly, the phony "front man" that Onoufriadis, Karloutsos and Rodgers used for Conmave (Grigorios Chatziantoniadis) was also a shareholder in Bioprocann who executed the Bioprocann Note.

148.    Once again, Onoufriadis, Karloutsos and Rodgers obtained absolutely no security interest or collateral of any kind from Bioprocann or its shareholders to secure the Bioprocann Note.  In addition, the Bioprocann Note also was not a convertible note as these three (3) had originally and intentionally misrepresented and promised Chaleplis they would be regarding any One World funds advanced to finance and capitalize the three (3) new Greek companies formed to pursue the Greek Medical Cannabis Scam.

149.    The purported Bioprocann "loan" for €3,000,000 was yet another planned effort by Onoufriadis, Karloutsos and Rodgers to divert and steal funds from One World to themselves, Theo and their friends in Greece for unrelated personal and business purposes having nothing to do with One World's business and investment objectives.

150.    Notably, the Bioprocann funds were wired on or about June 26, 2018 within approximately one week of most of the First Conmave Note funds also being wired.

BE:11690424.1/CHA379-277986

151.    In or around April 2019, Bioprocann's board of directors determined that obtaining the necessary Greek medicinal cannabis licensing to operate a medicinal cannabis business was not viable at that time.  The Bioprocann board of directors therefore directed its accountant to return the remaining €2,200,000 from the €3,000,000 that One World had loaned to Bioprocann, in order to avoid incurring unnecessary costs and interest relating to that loan.  The accountant then effectuated return of the remaining €2,200,000 back to James M. Rodgers, Esq.'s attorney trust account between April 2, 2019 through April 4, 2019.

152.    In addition to recovering One World's €2,200,000 remaining with Bioprocann, Chaleplis made written demand to Onoufriadis in the latters's capacity as One World Manager that Conmave return all funds that One World had advanced to Conmave as detailed above by no later than end of May 2019.

153.    In response to Chaleplis' recovery of One World's approximately €2,200,000 from Bioprocann and his deadline demand for return of all One World funds wired to Conmave, Onoufriadis, Theo and Karloutsos responded by: (i) cutting off Chaleplis' ability in Greece monitor and track the status of the balance of the Bioprocann "loan proceeds"; and (iii) abruptly replaced Bioprocann's board of directors management and accountant with individuals under their own influence to obstruct Chaleplis' ability to further monitor Bioprocann's business activities.  They also never returned and/or repaid a single penny of the funds that One World advanced to Conmave and Bioprocann, other than the €2,200,000 that Bioprocann's accountant returned per Bioprocann's board of director's decision.

154.    Meanwhile, Bioprocann has never made a single payment of any principal or interest to One World for the Bioprocann Note, other than the return of the unused €2,200,000.  Bioprocann is therefore in default of the Bioprocann Note payment obligations owed to One

World, and still owes One World €800,000, plus all owed interests, penalties and attorneys' fees relating to such default.

155.    Additionally in response to Chaleplis' demand that Conmave return all One World funds advanced to Conmave by the end of May 2019, Onoufriadis, Karloutsos and Theo also abruptly changed the board management for Bioprocann, Leadercann and Hellascann in April 2019/May 2019 to preclude Chaleplis' ability to monitor and observe those companies' business activities going forward.

156.    Following their investigation in Greece and other parts of Europe, One World/Chaleplis have discovered that Karloutsos, Onoufriadis and/or Rodgers have and/or may have misappropriated and diverted One World's funds from Conmave into other Greek, European and/or American companies owned and/or controlled by Onoufriadis, his family members/friends and/or Karloutsos' family and/or friends, including but not limited to: (i) Hellascann; (ii) Leadercann; (iii) Bioprocann (after their replacement of board management); (iv) Canncore, Inc.; (v) Conmave; and (vi) another deceptively named Greek company named Conwave Monoprosopi IKE ("Conwave") having a Greek registered address located adjacent to Conmave's registered address.  From those conduits, Onoufriadis and his co-conspirators misappropriated One World's/Chaleplis' funds for their own personal benefit and use, and also by re-routing those funds back to the United States, including for the purchase of new expensive homes, and to pay for their personal lifestyles and living expenses.  Onoufriadis' and Karloutsos' direct theft of funds from One World, and their rerouting and diversion of such funds back to the U.S., includes transfers of such misappropriated fund to their own personal account, to MAK and to Power 2u then re-routed to MAK.

41

157.    Due to the foregoing, One World/Chaleplis are currently missing approximately and at least $9,000,000 that Chaleplis contributed towards One World due to Onoufriadis', Rodgers' and Karloutsos' misappropriation of such funds as detailed above and below.

**Onoufriadis Converts and Misappropriates Through Domestic & International Diversion At Least $1,923,000 Out of One World to Himself to Purchase a Luxury Boston Waterfront Condo and to Fund His Lifestyle**

158.    On or about May 22, 2019, Onoufriadis fraudulently and illegally purchased a new luxury Boston waterfront condominium (the " Boston Condo") in his own name and as his own personal residence pursuant to a progress payment purchase agreement.

159.    Onoufriadis purchased the Condo for $1,923,000 in an all cash deal without any mortgage financing.  He initially made the first deposit towards the Condo on or about May 22, 2018 in the amount of $187,3000 that he misappropriated by wire from One World's Citizens Bank account directly to his personal account.  He then made the second progress payment in the amount of approximately $192,000 towards the Condo purchase by misappropriating an additional $300,000 from One World's Citizens Bank account by wire directly to his personal account on or about November 15, 2018.  After misappropriating that $487,300 from One World, he awaited the completion of the Condo.

160.    On March 1, 2019, Onoufriads' Power 2u company received a $149,500 international wire from a National Bank of Greece account owned/controlled by Theo and/or other co-conspirators involved in the Medicinal Cannabis Scam and Conmave.  This $149,500 were funds that Karloutsos, Onoufriadis and Rodgers stole through the Conmave transfers that they then re-routed to the U.S.

161.    From that re-routed $149,950 belonging to Plaintiffs, Onoufriadis transferred $50,000 to MAK by way of Power 2u Check # 102 on March 17, 2019.

162.    In addition, from that $149,950, Onoufradis transferred: (i) $48,000 to NYATH, LLC that is a company affiliated with Karloutsos; and (ii) approximately $52,000 to Onoufriadis', Rodgers' and Karloutsos' co-conspirator Ioannis Manolakos relating to the Boston Condo purchase.

163.    When the Boston Condo was substantially completed in or about May 2019, Onoufriadis transferred portions of One World's approximately $9,000,000 in misappropriated funds to himself through a "loan" scheme with his friend Ioannis Manolakos to complete the purchase price for the Boston Condo.  Notably, the "loan" scheme did not even involve Manolakos placing a mortgage and/or other security interest against the Boston Condo and/or obtaining any personal guarantee from Onoufriadis.  Notably, Manolakos' company Quick Manufacturing, LLC advertises a Greek business address that is the identical business address as Conmave's Greek business address in Athens, Greece.

164.    Onoufriadis could not have even remotely afforded to purchase the Boston Condo in an all cash deal given his financial background, employment status, profession and salary, or even with conventional residential mortgage financing.

165.    Though Rodgers was the CLO and Secretary of One World, Rodgers did absolutely nothing to impeded Onoufriadis' and Karloutsos' foregoing thefts and/or to pursue Onoufriadis or Karloutsos on One World's or Chaleplis' behalf because Rodgers was in conspiracy with Karloutsos and Onoufriadis to misappropriate Plaintiffs' foregoing funds.

166.    Furthermore, Onoufriadis, Rodgers and Karloutsos misappropriated One World funds directly from Rodgers' IOLTA account, Rodgers Investments account and One World's accounts to themselves through various inter-company bank accounts they own/control, and also by rerouting the misappropriated funds they absconded with their co-conspirators through the

First Conmave Note and Second Conmave Note back to the United States to accounts owned and/or controlled by Onoufriadis, Rodgers and/or Karloutsos, so that the three (3) of them could purchase new residences for themselves at One World's/Chaleplis' expense and at price points these individuals could not have otherwise afforded, and to finance their lifestyles,

167.     There is no executed promissory note, personal guaranty and/or security instrument of any kind memorializing and/or evidencing that Onoufriadis even had One World actually loan a single dollar of the $1,923,000 to Onoufriadis for the purchase of the Condo.

168.     There is no mortgage recorded against the Condo's title securing a single dollar of any purported loan for the $1,923,000 from One World to Onoufriadis (or from anyone) for the purchase of the Condo.

169.     Onoufriadis never executed a personal guaranty for the $1,923,000 he stole from One World to purchase the Condo for Onoufriadis' own personal benefit.

170.     Onoufriadis never paid a single penny of principal and/or interest on the $1,923,000 that he stole from One World to purchase the Condo.

171.     Onoufriadis never disclosed to One World and/or Chaleplis that Onoufriadis had purchased the Condo for $1,923,000 all cash using stolen funds from One World.

172.     Despite the foregoing, Rodgers never made any efforts to pursue Onoufriadis on One World's behalf.

**Karloutsos & Rodgers Purchase of New & Much More Expensive Homes for Themselves in the Fall 2018 Using Plaintiffs' Misappropriated and Converted Funds**

173.     Contemporaneously during 2018 with Onoufriadis making his Boston Condo progress payments with One World's misappropriated funds, both Karloutsos and Rodgers also contemporaneously purchased new residences for themselves using Plaintiffs' misappropriated funds.

BE:11690424.1/CHA379-277986

174.    Specifically, Karloutsos used the funds he misappropriated and converted clandestinely from Plaintiffs as detailed below to purchase a new home on or about September 1, 2018 located at 6966 Kyleakin Court, McLean, Virginia for $1,270,000 (the "Virginia Home").

175.    Karloutsos used conventional mortgage financing in the amount of $952,000 to purchase the Virginia Home, and deposited approximately the lowest amount possible to qualify for the financing needed to purchase the Virginia Home using Plaintiffs' misappropriated funds. That deposit was entirely misappropriated from Plaintiffs as detailed below.

176.    Karloutsos made his purchase immediately before the Second Conmave Note, and only a few months after the First Conmave Note.  He also made his purchase approximately two (2) months after most of the First Conmave Note funds and all of the Bioprocann funds were wired to Greece to those company accounts.

177.    Karloutsos was in no financial position to purchase the Virginia Home without converting Plaintiffs' funds based upon his foregoing financial condition at the time he commenced his position with the U.S. State Department in mid-2017, as confirmed by his OGE certified disclosures under penalty of perjury concerning his financial holdings, annual income and assets at that time.

178.    On November 15, 2018, Rodgers and his wife also purchased a 2,400 square foot unit at 4726 Grant Avenue, Apt. D, Philadelphia, PA 19114 (the "Philly Condo").

179.    The Philly Condo purchase prices was $491,000 using a $390,400 conventional 30-year residential mortgage.

180.    Rodgers basically made a down payment of a little over just enough money (20%) to obtain the 30-year mortgage.  The entire deposit amount for that purchase was comprised of funds that Rodgers misappropriated from Plaintiffs as detailed below.

BE:11690424.1/CHA379-277986

181.    Notably, Citizens Bank was the lender for the mortgage, which is the same bank that Rodgers uses for his IOLTA attorney trust account and that Onoufriadis, Rodgers and Karloutsos used for One World.

182.    Rodgers' November 15, 2018 purchase of his Philly Condo was only approximately two (2) months after Karloutsos himself purchased Karloutsos' own Virginia Condo on September 1, 2018.  Further, Rodgers made his Philly Condo purchase only six (6) months after the May 18, 2018 date of the First Conmave Note for the €4,000,000, and only one (1) month after the Second Conmave Note and corresponding electronic wire to Conmave on October 18, 2018 for €3,250,000. It was also only five (5) months after Onoufriadis purchased his Boston Condo.

183.    After purchasing his new Philly Condo on or about November 15, 2018, Rodgers sold his previous Shelmier Avenue home seven (7) months later on June 17, 2019 for $163,000.

184.    Notably, Rodgers originally purchased his previous home at 3536 Shelmire Avenue, Philadelphia, Pennsylvania on or about December 24, 2012 for $151,000 using a $122,100 mortgage.

185.    Consequently, the sale of his previous residence provided Rodgers with little cash equity from the sale given he was only about six (6) years into the mortgage amortization schedule.

186.    Moreover, the seven (7) months between his November 15, 2018 purchase of his Philly Condo and the June 17, 2019 sale of his old home means Rodgers needed to financially "carry" the old home while paying the new mortgage and other expense for the new home. To no surprise, Rodgers received a $18,198 check from One World's Hancock Whitney bank account

on March 25, 2019 from Onoufriadis for "business development expenses" between January 2018 and March 2019 to pay for such carrying expenses.

187.    Karloutsos, Rodgers and Onoufriadis all purchased new homes for themselves contemporaneously with one another following the First Conmave Note funding  and/or contemporaneous with the Second Conmave Note funding all totaling about €10,750,000, and following their theft of Plaintiffs' funds as more detailed below.

188.    Specifically, Karloutsos, Manolakos and Rodgers all purchased within only two (2) months of one other, while Onoufriadis depositing the second progress for his Boston Condo in mid-November 2018 right after the Second Conmave Note funding on October 17, 2018, as well as within the same approximately two (2) month window.

 The homes Rodgers, Karloutsos and Onoufriadis purchased, as well as the terms of those purchases, were out of their price range and were only afforded due to their theft of Plaintiffs' funds as detailed above and below.

**Onoufriadis Illegally Diverts Monies to His Personal Friends/Family as Purported "Loans"**

189.    While serving as One World's Manager, Onoufriadis illegally diverted and misappropriated at least approximately $405,000 from One World to his family/friends: (i) Fotios Sinioris (Onoufriadis' first cousin) in the amount of approximately $292,000; and (ii) Ioannis Manolakos (Onoufriadis' friend) in the amount of approximately $71,000 and $52,600.

190.    There are no promissory notes, mortgages, personal guaranties and/or security agreements of any kind made in One World's favor relating to these purported "loans."

191.    Onoufriadis' diversion of this at least $363,000 from One World to his family/friends was an additional theft of funds whereby Onoufriadis diverted One World money to himself using third-party friendly "conduits" both in Greece and Europe, and then back to United States accounts owned/controlled by Onoufriadis and his alter-ego companies.

47

192.    No principal or interest of any kind has ever been paid on the at least $405,000 in alleged "loans" to Onoufriadis' friends.

193.    Notably, Fotios Sinioris is also a board member of Hellascann that never received a direct loan from One World.  Hellascann is one of the Greek companies that Onoufriadis, Rodgers and Karloutsos may have used to divert and misappropriated One World's/Chaleplis' funds through after initially being transferred from Conmave's Greek bank account,  and then ultimately back to the United States to Onoufriadis' alter-ego companies.

194.    Moreover, Onoufriadis diverted One World's/Chaleplis misappropriated funds to Greece via Conmave, then into other foreign conduit account(s), and then back to the United States into accounts owned and/or controlled by Onoufriadis and his friend Manolakos, including.  Onoufriadis and Manolakos then used One World's/Chaleplis' misappropriated funds to purchase a new property in Manolakos name in an all cash deal for $405,000 on or about August 1, 2018 located at 11 Norma Way, Middleton, Massachusetts that Manolakos would not have otherwise afforded or purchased.

195.    Manolakos paid all cash for the 11 Norma Way condo (like Onoufriadis did for his own) in the amount of $405,000 without any mortgage financing, and received One World's/Chaleplis' stolen funds in Manolakos' and/or Onoufriadis' bank accounts, and/or the bank accounts of P2U DE, Canncore and P2U WY.  Such stolen funds came directly from One World and/or from Greek/foreign accounts that had received One World's/Chaleplis' misappropriated funds.

196.    Despite serving as One World's Chief Legal Office and Secretary, Rodgers made zero efforts to impede Onoufriadis actions outlined above and/or to pursue legal action against Onoufriadis on One World's behalf because Rodgers was in conspiracy with Onoufriadis and

Karloutsos to misappropriate Plaintiffs' funds.  Karloutsos made no such efforts either, but rather conspired with Onoufriadis and Rodgers to misappropriate Plaintiffs' funds as well.

**Removal of Onoufriadis as One World Manager & Member**

197.    On or about April 2, 2020, Onoufriadis assigned all of his twenty percent (20%) membership interest in One World to Chaleplis by way of a written and executed assignment instrument.  In that assignment instrument, Onoufriadis admitted under penalty of perjury that he had a capital account of $0 in One World, confirming that One World did not owe him any money of any kind.

198.    On or about April 7, 2020, Onoufriadis resigned as the Manager of One World effective April 7, 2019 by way of an April 7, 2020 written and executed resignation.

199.    Before resigning as One World's Manager, Onoufriadis engaged in all of the above fraudulent actions, concealments, omissions, misconduct and his theft of funds while serving as the Manager of One World, and while being a member in One World.

200.    As a result, Onoufriadis' tenure as One World's Manager lasted from September 30, 2017 until April 7, 2019, while his membership lasted from September 30, 2017 until April 2, 2020.

201.    There is no evidence and/or documentation of any kind that either Onoufriadis, Rodgers and/or Karloutsos ever conducted any due diligence whatsoever before the above detailed diversions of One World funds were made to the above-reference companies and third-parties, or that there is any legitimate business purpose for those diversions.  Moreover, these defendants took no steps to advance or develop the Medicinal Cannabis Scam with One World's "loan" proceeds.

202.    To the contrary, upon Chaleplis recovering control of One World following Onoufriadis' assignment and resignation, Rodgers continued to intentionally conceal his

49

knowledge and involvement in the thefts and transfers described above and below, in an effort to conceal the sensational fraud he, Karloutsos and Onoufriadis had collectively perpetrated upon Chaleplis and One World.

**Rodgers' Karloutsos' and Onoufriadis' Collective Misappropriation of Plaintiffs' Funds**

203.    Specifically, Onoufriadis, Rodgers and Karloutsos committed the following misappropriations of One World's/Chaleplis' funds and predicate acts constituting wire fraud, theft, fraud and bribery during the relevant time period of May 2017 through at least March 19, 2020, which include but are not limited to:

(a)    February 26, 2018 international wire from Conmave to Rodgers' IOLTA attorney trust account in the amount of a $50,000 payment advance and/or bribe from Theo, Conmave and other wrongdoers in Greece partnering and planning with Rodgers, Onoufriadis and Karloutsos to misappropriate and divert One World's/Chaleplis' funds;

(b)    February 27, 2018 international wire from Conmave to Rodgers' IOLTA attorney trust account in the amount of a $10,000 payment advance and/or bribe from Theo Conmave and other wrongdoers in Greece partnering and planning with Rodgers, Onoufriadis and Karloutsos to misappropriate and divert One World's/Chaleplis' funds;

(c)    March 3, 2018 interstate wire of $70,948 from One World's Alex Brown account to "Ioannis Manolakos" into Community Credit Union of Lynn, Massachusetts Account # ******4675 for theft by Onoufriadis and Manolakos constituting wire fraud;

(d)    April 9, 2018 interstate wire of $20,000 belonging to Chaleplis/One World from Rodgers' IOLTA attorney trust account to Onoufriadis' personal Citizens Bank account constituting wire fraud;

50

(e)      April 16, 2018 interstate wire of $15,000 belonging to Chaleplis/One World from Rodgers' IOLTA attorney trust account to Onoufriadis' personal Citizens Bank account constituting wire fraud;

(f)       May 7, 2018 interstate wire of $50,000 belonging to Chaleplis/One World from Rodgers' IOLTA attorney trust account to Onoufriadis' Power 2u Consulting, LLC Citizens Bank account constituting wire fraud;

(g)      May 15, 2018 interstate wire of $187,300 from One World's Citizens Bank account to Onoufriadis' personal Citizens Bank account that Onoufriadis stole for his first progress payment to contract for and purchase of the Boston Condo constituting wire fraud;

(h)      May 22, 2018 international wire of $1,831,945 from One World's Citizens Bank account to Conmave for theft by Rodgers, Onoufriadis, Karloutsos and their colleagues constituting wire fraud;

(i)      June 18, 2018 international wire of $1,167,900 from One World's Citizens Bank account to Conmave for theft by Rodgers, Onoufriadis, Karloutsos and their colleagues constituting wire fraud;

(j)      June 18, 2018 international wire of $1,693,455 from One World's Citizens Bank account to Conmave for theft by Rodgers, Onoufriadis, Karloutsos and their colleagues constituting wire fraud;

(k)      June 19, 2018 interstate wire of $30,000 belonging to Chaleplis/One World from Rodgers' IOLTA attorney trust account to Onoufriadis' personal Citizens Bank account constituting wire fraud;

(l)      August 2018 international wire of $291,925 from One World's Hancock Whitney account to a bank account in Greece titled to "Fotios Sinioris", who is Onoufriadis'

cousin and a board member of Hellascann, for theft by Rodgers, Onoufriadis, Karloutsos, Sinioris and their colleagues constituting wire fraud;

(m)    October 17, 2018 international wire of $3,746,600 from One World's Hancock Whitney account to Conmave for theft by Rodgers, Onoufriadis, Karloutsos and their colleagues constituting wire fraud;

(n)    October 29, 2018 interstate wire of $25,000 belonging to Chaleplis/One World from Rodgers' IOLTA attorney trust account to Onoufriadis' Power 2u Consulting, LLC Citizens Bank account that constituting wire fraud;

(o)    November 15, 2018 interstate wire of $300,000 from One World's Hancock Whitney account to Onoufriadis personal account with Citizens Bank for theft by Onoufriadis, and for partial use towards Onoufriadis' second progress payment for the Boston Condo that Onoufriadis fraudulently purchased using One World's funds; and

(p)    March 1, 2019 transfer to Onoufriads' Power 2u Consulting, LLC company in the amount of $149,500 via international wire from a National Bank of Greece account owned/controlled by Theo and/or other co-conspirators involved in the Medicinal Cannabis Scam and Conmave, which Onoufriadis then transferred as follows: (i) $50,000 to MAK by way of Power 2u Check # 102 on March 17, 2018; (ii) $48,000 to NYATH, LLC that is a company affiliated with Karloutsos; and (ii) approximately $52,000 to Onoufriadis', Rodgers' and Karloutsos' co-conspirator Ioannis Manolakos;

(q)    March 19, 2020 transfer in the amount of $43,695 from a Bank of Cyprus Public Company, Ltd. account titled to Equazione Tot Consulting Ltd to Onoufriadis' Power 2u company bank account that was a rerouting of Plaintiffs' funds misappropriated through Conmave back to the U.S. for Onoufriadis' theft

(r)    June 21, 2019 transfer in the amount o $49,450 from a Hellenic Bank Public Co. Ltd. account titled to Alpha Advance Management Ltd. to Onoufriadis' Power 2u bank account that was a rerouting of Plaintiffs' funds misappropriated through Conmave back to the U.S. for Onoufriadis' theft;

204.    In coordination with Rodgers and Onoufradis, and after Rodgers received millions of dollars in capital contributions into his IOLTA account from Chaleplis as capital contributions to fund One World, Karloutsos converted and misappropriated at least **$623,634.62** from One World and Chaleplis directly to himself on the following dates and in the following manner:

(a)    May 3, 2018 $200,000 belonging to Chaleplis/One World from the Rodgers IOLTA account to the Rodgers Investments account (both with Citizens Bank), and then transfer of that $200,000 belonging to Plaintiffs from the Rodgers Investments account to Karloutsos' personal Wells Fargo account on May 4, 2018;

(b)    $20,000 transfer of funds belonging to Chaleplis/One World from the Rodgers' IOLTA account to the Rodgers Investments Account, and then transfer of that $20,000 from the Rodgers Investments Account to Karloutsos' MAK account with Wells Fargo on July 31, 2018;

(c)    $20,000 transfer of funds belonging to Chaleplis/One World from the Rodgers' IOLTA account to the Rodgers Investments Account, and then transfer of that $20,000 from the Rodgers Investments Account to Karloutsos' MAK account with Wells Fargo via check on August 6, 2018;

(d)    $50,000 transfers of funds belonging to Chaleplis/One World from Rodgers' IOLTA account directly to Karloutsos' personal Wells Fargo account on August 7, 2018;

(e)    $110,000 transfer of funds belonging to Chaleplis/One World from Rodgers' IOLTA account to Rodgers' Investments account, and then from the Rodgers' Investments accounts to Karloutsos' personal Wells Fargo account via check on August 8, 2018;

(f)    Karloutsos then used approximately $350,000 of Plaintiffs' funds he misappropriated as outlined above to purchase and finance his Virginian Home on or about September 1, 2018;

(g)    $50,000 of Plaintiffs' stolen funds misappropriated through Conmave to MAK's Wells Fargo Account on or about March 17, 2019 from Onoufriadis' alter-ego company Power 2u Consulting, LLC, that Power 2u Consulting, LLC itself received via wire on March 1, 2019 from a National Bank of Greece account controlled and/or owned by Onoufriadis' and Karloutsos' Conmave conspirators in Greece controlling One World's misappropriated funds transferred to Conmave;

(h)    March 27, 2019 check from One World to MAK from One World's Hancock Whitney Account in the amount of $5,634.62 issued by Onoufriadis;

(i)    June 11, 2019 transfer of $148,000 belonging to Chaleplis/One World from Rodgers' IOLTA account to Rodgers' Investments account (as part $300,000 transferred from Rodgers' IOLTA Account to Rodgers' Investments), and then from Rodgers Investments Accounts to Karloutsos' personal Wells Fargo account on June 13, 2019;

(j)    $20,000 belonging to Chaleplis/One World transferred from Rodgers' IOLTA account to the Rodgers' Investments account, and then from the Rodgers' Investments accounts to Karloutsos' personal Wells Fargo account on February 28, 2020;

BE:11690424.1/CHA379-277986

205. In coordination with Onoufriadis and Karloutsos, Rodgers and JMR PC converted and misappropriated the following funds from One World and Chaleplis to himself, Rodgers' Investments and his JMR PC legal practice on the following dates and in the following manner:

(a)    $5,000 belonging to Chaleplis/One World transferred from Rodgers' IOLTA Account to Rodgers' Working Account (account used by JMR PC for its law practice) on January 4, 2018;

(b)    $5,000 belonging to Chaleplis/One World transferred from Rodgers' IOLTA Account to Rodgers' Working Account on January 26, 2018;

(c)    $35,000 belonging to Chaleplis/One World transferred from Rodgers' IOLTA Account to Rodgers' Working Account on January 29, 2018;

(d)    February 22, 2018 transfers of $3,100 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers' Working Account;

(e)    $10,000 belonging to Chaleplis/One World transferred from Rodgers' IOLTA Account to Rodgers' Working Account on March 15, 2018;

(f)    March 28, 2018 transfer of $100,000 belonging to Chaleplis/One World from Rodgers' IOLTA Account to Rodgers' Investments Account for later theft by Rodgers and Karloutsos and Rodgers' Working Account as detailed herein;

(g)    April 10, 2018 transfer of $101,455.75 belonging to Chaleplis/One World from Rodgers' IOLTA account to Rodgers' Investments account for theft by Karloutsos and Rodgers as itemized herein in the amount of $200,000 each respectively;

(h)    April 19, 2018 transfer in the amount of $12,500,000 belonging to Chaleplis/One World from Rodgers IOLTA Account to the Citizens Banks account(s) that he, Onoufriadis and Karloutsos opened for One World, and then that they all used to make all of the

55

referenced international wires to Conmave for theft by Onoufriadis, Karloutsos and Rodgers as detailed herein;

(i)     April 20, 2018 transfer in the amount of $10,000 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers Working Account;

(j)     May 3, 2018 transfer of $201,455.75 belonging to Charlplis/One World from Rodgers' IOLTA account to Rodgers' Investments account for theft by Karloutsos/MAK and Rodgers' as detailed herein in the amount of $200,000 each respectively;

(k)     May 4, 2018 transfer in the amount of $200,000 belonging to Chaleplis/One World from Rodgers Investments Account to Karloutsos' personal Wells Fargo account, that was originally first transferred from Rodgers IOLTA Account to Rodgers Investment Account on March 28, 2018, April 10, 2018 and May 3, 2018 as detailed above, and then transferred from the Rodgers Investments Account to Karloutsos' personal Wells Fargo Account on May 4, 2018;

(l)     May 9, 2018 transfer of $7,500 belonging to Chaleplis/One World from Rodgers' Investments Account to Rodger's Working Account;

(m)     May 29, 2018 transfer of $10,000 belonging to Chaleplis/One World from Rodgers' Investments Account to Rodger's Working Account;

(n)     June 5, 2018 transfer of $30,000 from Rodgers Investments Account to his Working Account;

(o)     July 9, 2018 transfer of $25,000 belonging to Chaleplis/One World from Rodgers Investments Account to Rodgers Working Account;

(p)     July 23, 2018 transfer of $200,000 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers Working Account;

BE:11690424.1/CHA379-277986

(q)    October 4, 2018 transfer of $8,000 belonging to Chaleplis/One World from Rodgers Investments Account to Rodgers Working Account;

(r)    November 1, 2018 transfer of $1,500 belonging to Chaleplis/One World from Rodgers Investments Account to Rodgers Working Account;

(s)    November 6, 2018 transfer of $50,000 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers' Working Account used by Rodgers to purchase a Philadelphia residence for himself;

(t)    November 7, 2018 withdrawal of $75,010 from Rodgers' IOTLA Account belonging to Chaleplis/One World that Rodgers used for issuance of a certified check he used to purchase and finance the Philly Condo for himself;

(u)    November 7, 2018 withdrawal for a cashier's check in the amount of $101,536.91 also used to purchase and finance the Philly Condo for himself;

(v)    March 25, 2019 transfer from One World's Hancock Whitney account to Rodgers Working Account in the amount of $18,198 issued by Onoufriadis;

(w)    April 29, 2019 transfer of $12,974.60 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers Working Account;

(x)    May 20, 2019 transfer of $10,000 belonging to Chaleplis/One World from Rodgers' IOLTA Account to his Working Account;

(y)    June 11, 2019 transfer in the amount of $300,000 belonging to Chaleplis/One World from Rodgers' IOLTA account to Rodgers' Investments account, that Rodgers then used to re-routed and transferred from the Rodgers' Investments account as follows: (1) $148,000 to Karloutsos' personal Wells Fargo Account on June 12, 2019; and (2) another $148,000 to the Rodgers' Working Account on June 12, 2019;

57

(z)    June 18, 2019 transfer of $259,513.14 belonging to Chaleplis/One World from Rodgers' IOLTA Account to Rodgers' Investments Account;

(aa)    July 3, 2019 transfer of $50,000 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers Investments Account;

(bb)    July 17, 2019 transfer of $20,000 belonging to Chaleplis/One World from Rodger's IOLTA Account to an individual named "Cougentakis'" Signature Bank account in New Jersey and/or New York; and

(cc)    August 6, 2019 transfer of $50,000 belonging to Chaleplis/One World from Rodgers Investments (previously wired from Rodgers IOLTA Account to the Rodgers Investments Account) to Rodgers Working Account;

(dd)    October 7, 2019 transfer of $88,000 belonging to Chaleplis/One World from Rodgers Investment Account to Rodgers Working Account;

(ee)    October 24, 2019 transfer of $50,000 belonging to Chaleplis/One World from Rodgers Investment Account to Rodgers Working Account;

(ff)    November 25, 2019 transfer of $4,500 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers Working Account;

(gg)    November 25, 2019 transfer of $1,750 belonging to Chaleplis/One World from Rodgers Investments Account to Rodgers Working Account;

(hh)    December 18, 2019 transfer of $15,000 belonging to Chaleplis/One World from Rodgers IOLTA Account to Rodgers Working Account;

(ii)    January 24, 2020 transfer of $22,000 belonging to Chaleplis/One World from Rodgers Investments Account to Rodgers Working Account;

BE:11690424.1/CHA379-277986

(jj)   February 18, 2020 transfer of $20,000 belonging to Chaleplis/One World from Rodgers Investments Account to Rodgers Working Account;

**Onoufriadis', Karloutsos' and Rodgers' Failure & Refusal to Account to Plaintiffs and Rodgers/Karloutsos Continued Efforts to Conceal Their Fraudulent Conduct**

206.   On or about April 20, 2020, counsel for One World and Chaleplis served a written notice and demand on Onoufriadis through Rodgers to: (i) return any and all financial and business books and records that belong to One World; (ii) to account for the foregoing approximately $10,000,000 in diverted and missing One World funds; (iii) to provide all documentary backup for the diverted funds and "loans" Onoufriadis allegedly made to the above referenced third-party individuals and/or companies; and (iv) to provide all business records and due diligence records relating to the above referenced theft of funds.

207.   The April 20, 2020 letter provided Onoufriadis with an April 30, 2020 deadline to comply with the demand to turn over those financial books and records.

208.   To date, Onoufriadis has failed and/or refused to respond to the April 20, 2020 written notice and demand, and has failed to provide or turn over any of the business and financial records belonging to One World, or relating to his theft of funds. Rather, he has elected to "stonewall" in response to Defendants' demands.

209.   During Rodgers tenure as One World's CLO and Secretary, he allowed all of the foregoing thefts and transfers to knowingly occur without disclosing any of these financial transfers to Chaleplis, and without ever taking even the most minor of legal steps to pursue the wrongdoing on One World's behalf because Rodgers himself was involved in the fraudulent schemes and transfers with Onoufriadis and Karloutsos.

210.   During Rodgers' tenure as One World's CLO and Secretary as well as Karloutsos silent management role and 50/50 side deal with Rodgers spanning approximately two and a half

years, One World did not make or attempt to develop a single legitimate, reasonably prudent, researched, profitable and/or viable investment on One World's or Chaleplis' behalf in America or elsewhere.

211.    During Rodgers' and Karloutsos' management and involvement in One World, they inexplicably oversaw and allowed the theft and diversion of approximately $10,000,000 in Plaintiffs' funds to themselves, Onoufriadis, their companies, Onoufriadis' companies and their co-conspirators through Conmave, Rodgers Investments, MAK, JMR PC, Power 2u Consulting, etc. and the other transfers outlined above that have never been accounted for, pursued and/or explained by them and/or returned to One World.

212.    Chaleplis asked Karloutsos to assist in compelling Onoufriadis to explain and return Plaintiffs' misappropriated funds, but Karloutsos refused to get involved citing the fact Karloutsos and his son have baptized Onoufriadis' daughter, and that Karloutsos and Onoufriadis are "best men." Karloutsos though refused in actuality to continue concealing all of the aforementioned thefts and schemes he, Rodgers, Onoufriadis and their other co-conspirators had perpetrated upon Plaintiffs.

213.    Onoufriadis, Rodgers and Karloutsos failed to even obtain basic security interests and/or collateral for the repayment of Conmave and Bioprocann loans, failed to create any real business documentation justifying these transfers, failed to make any of the promissory notes convertible, failed to perform even the most rudimentary of due diligence regarding these transactions and/or failed to compel or demand any of these foreign companies and/or unidentified individuals (including himself) to even make a single payment and/or pay any interest on these purported "loans." They also tellingly failed to pursue any legal action against these purported "borrowers."

214.    Rodgers engaged in the above fraudulent conduct despite serving as One World's officers with both contractual obligations and common law fiduciary responsibilities to reasonably, prudently, honesty and loyally perform his management and investment responsibilities, which required him to be fully informed about the decisions he made on One World's behalf.   Karloutsos did the same as One World's trusted agent.

**Other Lawsuits Seeking to Recover Plaintiffs' Stolen Assets Diverted by Onoufriadis and His Defendant Companies**

215.    One World/Chaleplis filed a legal action in Greece against Conmave and its principal(s)/agent(s) captioned One World, LLC v. Conmave, et. al., General Filing # 52277/2020 and Specific Filing # 5698/2020, before the Hon. Eleni Motsovolea (P.J.) on or about July 31, 2020 (the "First Greek Action").  The First Greek Action was filed to recover One World's/Chaleplis' stolen funds diverted and absconded through Conmave by Onoufriadis, Karloutsos, Rodgers, Theo and other bad actors in Greek who partnered in coordination with Onoufriadis to misappropriate One World's/Chaleplis' funds.

216.    Notably, One World/Chaleplis filed a temporary restraining order and preliminary injunction application in the First Greek Action that was granted by the Greek Court on July 31, 2020, resulting in temporary restraint being entered against Conmave and its principal(s)/agent(s) barring them from selling and/or transferring millions of dollars in exotic automobiles and boats that were improperly purchased through Conmave with One World's/Chaleplis' stolen funds.

217.    After obtaining temporary restraints in the Greek Action, One World and Chaleplis filed a second legal action in Greece against Conmave and Conwave Manoprosopi IKE ("Conwave") captioned One World, LLC v. Conmave, et. al. (the "Second Greek Action"). After filing the Second Greek Action, One World/Chaleplis obtained additional temporary restraints against Conmave and Conwave on December 17, 2020 further seizing and enjoining

the sale and/or transfer of millions of dollars in exotic automobiles and boats that were improperly purchased through Conmave with Plaintiffs' stolen funds.

218.    One World/Chaleplis also filed a one-count action in this District of Massachusetts under seal captioned One World, LLC v. Onoufriadis, C.A. No. 20-cv-11580-RWZ (the "Onoufriadis *Lis Pendens* Action") for court approval to file a *lis pendens* against Onoufriadis' Boston Condo that Onoufriadis purchased using almost $2,000,000 of Plaintiffs' stolen funds.  That action was accompanied by a motion for approval to file a *lis pendens*, and successfully resulted in the Hon. Rya W. Zobel (D. Mass.) entering a September 2, 2020 Order Approving a Memorandum of *Lis Pendens* for filing against Onoufriadis' Condo Unit.

219.    Notably, authority to file the *lis pendens* was Ordered by Judge Zobel based upon: (i) the facts alleged in this action; (ii) the One World bank accounts evidencing the One World wire transfers to Onoufriadis, Conmave, Manolakos, etc.; (iii) Onoufriadis' purchase of the Boston Condo with no mortgage using almost $2,000,000 that Onoufriadis stole from One World/Chaleplis  as outlined above; (iv) and a certified translation of the Greek temporary restraining order/preliminary injunction; and (v) out of concern Onoufriadis would transfer the Boston Condo to a friend or family member's name to place the asset beyond One World's/Chaleplis' reach.

220.    Moreover on October 9, 2020, One World/Chaleplis filed an action and motion for *lis pendens* against Onoufriadis', Rodgers' and Karloutsos' co-conspirator and partner in the Medical Cannabis Scam, Ioannis Manolakos, in the District of Massachusetts captioned One World, LLC v. Manolakos, et. al., Civil Action # 1:20-cv-11837 (the "Manolakos Action").

221.    In the Manolakos Action, One World/Chaleplis are pursuing conversion, unjust enrichment, quiet title, fraud, constructive trust, accounting and federal RICO claims against

Manolakos and his affiliate company relating to Manolakos coordinated theft of Plaintiffs' funds and receipt of at least $405,000 via separate direct or indirect wires from One World (either by interstate wire or international wire) he used to purchase a condo located at 11 Norma Way, Middleton, Massachusetts ("Middleton Lot") without a mortgage, as part of the Medical Cannabis Scam carried out by Karloutsos, Onoufriadis and Rodgers.

222.    On October 13, 2020, the Hon. Rya W. Zobel (D. Mass.) again entered an Order in the Manolakos Action authorizing One World/Chaleplis to file a *lis pendens* against the Middleton Lot that Onoufriadis, his co-conspirators and Manolakos diverted One World/Chaleplis' funds into via wire transfers and diversions.

223.    One World also filed a State law claim against Conmave in the Superior Court of Massachusetts, Suffolk County, captioned <u>One World v. Conmave</u>, Civ. Action # 21-03233 for breach of contract on the two Conmave promissory notes.

## <u>COUNT I</u>

### (Conversion as to Rodgers, Karloutsos, Rodgers Investments, MAK and JMR PC)

224.    One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

225.    Karloutsos', Rodgers', MAK's, Rodgers Investments' and JMR PC's above detailed thefts, diversions, transfers and/or misappropriations of One World's/Chaleplis' funds constitutes conversion to the detriment of One World and Chaleplis.

226.    Karloutsos, Rodgers, MAK, Rodgers Investments and JMR PC ultimately transferred and/or received significant portions of One World's/Chaleplis' misappropriated investment funds to their bank accounts that constitutes conversion of Plaintiffs' funds.

227.    Karloutsos, Rodgers, MAK, Rodgers Investments and JMR PC ultimately and knowingly received Plaintiffs' converted funds in coordination with one another and

Onoufriadis, and in conspiracy with one another after they collectively coordinated the conversion of One World's/Chaleplis' funds as described above.

228.    As a result, One World and Chaleplis have been and will continue to be damaged.

## COUNT II

### (Conspiracy to Commit Conversion as to Rodgers, Karloutsos, Rodgers Investments, MAK and JMR PC)

229.    One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

230.    Karloutsos, Rodgers, Onoufriadis, MAK, Rodgers Investments, JMR PC, Theo, Power 2u Consulting, Conmave and other bad actors all conspired with one another by way of an agreement between them to divert, convert and misappropriate One World's/Chaleplis' funds using multiple Citizens Bank accounts, Conmave's bank account(s), company accounts, and other Greek and Cypriot bank accounts while concealing those misappropriations from One World/Chaleplis.

231.    As a result, One World/Chaleplis have been and will continue to be damaged.

## COUNT III

### (Aiding and Abetting Conversion as to Rodgers, Karloutsos, Rodgers Investments, MAK and JMR PC)

232.    One World and Chaleplis  repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

233.    Karloutsos, Rodgers, Onoufriadis, MAK, Rodgers Investments, JMR PC, Theo and Power 2u Consulting aided and abetted one another, and provided assistance to one another, by way of an agreement among them to divert, convert and misappropriate One World's/Chaleplis' funds by using multiple Citizens Bank accounts to conceal their wrongful actions and conduct, including the diversion of One World's/Chaleplis' funds from Rodgers'

IOLTA Account and Rodgers Investments Account into other accounts owned and/or controlled by Onoufriadis, Karloutsos, Rodgers, the remaining Defendants and their other co-conspirators, and from Conmave and/or Conwave directly and/or indirectly back to Defendants' own personal accounts in the U.S that Defendants, Onoufriadis and his alter-ego(s) then diverted and misappropriated.

234.   As a result, One World/Chaleplis have been and will continue to be damaged.

## COUNT IV

### (Breach of One World Operating Agreement as to Rodgers)

235.   One World and Chaleplis  repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

236.   Rodgers actions and inactions outlined above constitute a material breach of the Operating Agreement between Onoufriadis and One World/Chaleplis based upon Rodgers' intentional and material failures to perform his contractual duties as the Chief Legal Officer and Secretary of One World.

237.   As a result, One World/Chaleplis have been and will continue to be damaged.

## COUNT V

### (Breach of Fiduciary Duty of Loyalty as to Rodgers and Karloutsos)

238.   One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

239.   Rodgers actions, conduct, omissions and concealments detailed above constitute breach of his fiduciary duty of loyalty to Plaintiffs.

240.   Rodgers actions, conduct, omissions and concealments outlined above as agent, officer and fiduciary of One World constitute a breach of his fiduciary duties of loyalty owed to One World/Chaleplis.

65

241.    Karloutsos and Rodgers entered into a 50/50 "side deal" arrangement agreeing to split Rodgers' profit sharing interest in One World in exchange for Karloutsos assisting Rodgers in the latter's One World management role.

242.    As a result, both were vicariously and directly placed in the position of trust and control by Plaintiffs that gave Rodgers and Karloutsos' management and operating control over One World's business and financial affairs with Onoufriadis.  Karloutsos and Rodgers therefore owed a fiduciary duty of loyalty to Plaintiffs.

243.    Karloutsos' Rodgers actions, conduct, omissions and concealments detailed above constitute breach of his fiduciary duty of loyalty to Plaintiffs.

244.    Karloutsos' actions, conduct, omissions and concealments outlined above as agent, officer and fiduciary of One World constitute a breach of his fiduciary duties of loyalty owed to One World/Chaleplis.

245.    As a result, One World/Chaleplis have been and will continue to be damaged.

## COUNT VI

### (Breach of Fiduciary Duty of Care as to Rodgers and Karloutsos)

246.    One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

247.    Rodgers and Karloutsos' actions, inactions and concealments outlined above constitute a breach of their fiduciary duties of care owed to One World/Chaleplis as officers and/or trusted agents acting on One World's behalf.

248.    Rodgers' and Karloutsos' intentional failures and concealments in refusing to disclose all of the aforementioned thefts, fraudulent schemes and improper transfer to Plaintiffs, while doing nothing to impede or stop that wrongful conduct, constitutes gross negligence, and a

BE:11690424.1/CHA379-277986

failure by Rodgers and Karloutsos to be reasonably informed and prudent about the management, operations and business dealings of One World.

249.    Rodgers and Karloutsos' horrendous mismanagement of One World for their own personal benefit constitutes breach of fiduciary duty of care.

250.    As a result, One World and Chaleplis have been and will continue to be damaged.

## COUNT VII

### (Breach of Fiduciary Duty – Usurping Corporate Opportunity as to Karloutsos and Rodgers)

251.    One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

252.    To the extent Conmave, Hellascann, Leadercann and/or Bioprocann are affiliated with, subsidiaries of and/or dominated by Karloutsos, Rodgers and/or any of their defendant companies or non-defendant companies, and/or share common businesses, and/or to the extent they own and/or control any of those Greek companies that received and utilized One World's funds to allegedly create Greek medicinal cannabis operations, Karloutsos' and Rodgers' diversion of One World's/Chaleplis' funds to these companies for the sole benefit of themselves, their friends, their family members and/or their other co-conspirators constitutes the usurpation of One World's business opportunity by Karloutsos and Rodgers to Plaintiffs' financial detriment and expense.

253.    As a result, One World and Chaleplis have been and will continue to be damaged.

## COUNT VIII

### (Unjust Enrichment as to Karloutsos, Rodgers, MAK, Rodgers Investments & JMR PC)

254.    One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

67

255.    Karloutsos', Rodgers', MAK's, Rodgers Investments' & JMR PC' actions, inactions, misappropriations, conversions, diversions and concealments outlined above, as well as their taking and receipt of funds from One World and Chaleplis for services never rendered constitutes unjust enrichment to their benefit at the expense of One World and Chaleplis.

256.    Karloutsos', Rodgers', MAK's, Rodgers Investments' & JMR PC's diversion of One World's/Chaleplis' funds to themselves and their co-conspirators constitutes unjust enrichment to Plaintiffs' financial detriment.

257.    As a result, One World and Chaleplis  have been and will continue to be damaged.

## **COUNT IX**

### **(Accounting as to Rodgers and Karloutsos)**

258.    One World and Chaleplis  repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

259.    Based upon the foregoing actions and wrongful conduct, One World and Chaleplis are entitled to a full accounting from Rodgers and Karloutsos to ascertain and identify any and all financial receipts, transactions, thefts, misappropriations and diversions that they committed and carried out that in any way relate to their involvement and/or management in One World, and their diversion of Plaintiffs' funds to themselves and their companies.

260.    As a result, One World and Chaleplis demand an accounting from Rodgers and Karloutsos and are entitled to such an accounting.

BE:11690424.1/CHA379-277986

## COUNT X

### (Constructive Trust Over Karloutsos, the Virginia Home, MAK, Rodgers, Rodgers Investments, JMR PC and the Philly Condo)

261.    One World and Chalepliss repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

262.    Based upon Karloutsos' and Rodgers' conversion of Plaintiffs' funds and Plaintiffs' unjust enrichment claims stemming from the foregoing thefts by Defendants, One World and Chalepis are entitled to the imposition of a constructive trust upon all assets of Karloutsos, Rodgers, MAK, Rodgers Investments and JMR PC, including but not limited to Karloutsos' Virginia Residence and Rodgers Philly Condo.

## COUNT XI

### (Declaratory Judgment as to Karloutsos, the Virginia Home, MAK, Rodgers, Rodgers Investments, JMR PC and the Philly Condo)

263.    One World and Chalepis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

264.    Defendants' theft of One World's/Chalepis' funds to purchase and finance the Virginia Home and Philly Condo cannot entitle Karloutsos and/or Rodgers to ownership and/or title for either one of those properties under any possible legal or equitable principle.  The same is true regarding all other funds that Defendants misappropriated from One World and Chalepis as outlined above.

265.    Accordingly, One World and Chalepis are entitled to a declaratory judgment that both Virginia Home and Philly Condo are rightfully the sole title and property of One World and/or Chalepis, and a declaratory judgment adjudicating that One World and/or Chalepis are the rightful title owners in fee simple of both the Virginia Home and Philly Condo.

## COUNT XII

**(Alter-Ego as to Karloutsos and MAK & as to Rodgers, Rodgers Investments & JMR PC)**

266.     One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

267.     Karloutsos and MAK are alter-egos of one another and constitute one and the same person and/or entity.

268.     Karloutsos and MAK observe no corporate formalities whatsoever, and comingle their funds, assets and business operations together as if one and the same.

269.     MAK serves no legitimate business purpose other than to serve as a conduit for Karloutsos to divert and misappropriate money through MAK to himself from others.

270.     Rodgers, Rodgers Investments and JMR PC are alter-egos of one another and constitute one and the same person and/or entity.

271.     Rodgers, Rodgers Investments and JMR PC observe no corporate formalities whatsoever, and comingle their funds, assets and business operations together as if one and the same.

272.     Rodgers Investments and JMR PC serve no legitimate business purposes other than to serve as conduits for Rodgers to divert and misappropriate money through to himself from others.

273.     MAK is an alter-ego of Karloutsos since MAK: (i) it owed by Karloutsos; (ii) is operated and managed by Karloutsos; (iii) has confused, commingled and intermingled its business assets and business operations; (iv) failed to observe any corporate formalities; (v) has no corporate records; (vi) is insolvent except for the funds misappropriated from One World/Chaleplis; (vii) had any and all of its funds and/or One World's/Chaleplis' funds siphoned away by Karloutsos; (viii) was used to advance Karloutsos' own personal efforts to

70

misappropriate One World's and Chaleplis' funds; and (iv) Karloutsos used MAK to perpetuate fraud and conversion upon One World/Chaleplis as detailed above while having absolutely no business operations or legitimate business purposes whatsoever for MAK.

274.    Rodgers Investments and JMR PC are alter-egos of one another and Rodgers since the two (2) companies: (i) have the common ownership in Rodgers; (ii) are all operated and managed by Rodgers; (iii) have confused, commingled and intermingled their business assets and business operations; (iv) failed to observe any corporate formalities; (v) have no corporate records; (vi) are insolvent except for the funds misappropriated from One World/Chaleplis; (vii) had any and all of their funds and/or One World's/Chaleplis' funds siphoned away by Rodgers; (viii) were used to advance Rodgers' own personal efforts to misappropriate One World's and Chaleplis' funds; and (iv) Rodgers used Rodgers Investments and JMR PC to perpetuate fraud and conversion upon One World/Chaleplis as detailed above while having absolutely no business operations or legitimate business purposes whatsoever for Rodgers Investments and JMR PC.

275.    The conduct of MAK, Rodgers Investments and JMR PC should consequently be imputed and attributed to their members and managers Karloutsos and Rodgers.  Based upon the foregoing, the corporate veils of Rodgers Investments, MAK and JMR PC should be pierced, and Rodgers and Karloutsos should be personally liable for all actions and conduct those companies executed in the theft of One World's/Chaleplis' funds.

## COUNT XIII

### (Legal Fraud & Fraud in the Inducement as to Karloutsos and Rodgers)

276.    One World and Chaleplis repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

277.    Before, during and after the September 28, 2017 Meeting, the March 17, 2018 Meetings, the March 2018 Meetings, the March 21, 2018 Meeting and the October 14, 2018

71

Meeting, as well as during telephone and digital discussions during that time period and during visits to Greece to meet with Chaleplis to discuss One World's business, Onoufriadis, Rodgers and Karloutsos never once disclosed to Chaleplis and/or One World that they: (i) were and/or intended to misappropriate/had misappropriated millions of dollars from One World/Chaleplis as detailed above; or (ii) that the Medicinal Cannabis Scam was a fraudulent scheme and artifice design to abscond One World's/Chaleplis' monies.  The same is true for all times thereafter. Rather, they at all times advised Chaleplis that the Medicinal Cannabis Scam was a legitimate business and investment, and that One World's/Chaleplis' monies would be and/or were being used to finance that purported opportunity.

278.    At no time did Onoufriadis, Rodgers and/or Karloutsos ever disclose to Chaleplis and/or any One World representative that they were systematically siphoning, diverting and misappropriating Plaintiffs funds behind Plaintiffs' back direct from One World's and Rodgers' IOLTA accounts to themselves and/or their defendant third-party companies.

279.    Chaleplis reasonably relied upon Rodgers' and Karloutsos' foregoing material misrepresentations, concealments and/or omissions regarding their purported capabilities in agreeing to the One World Operating Agreement, to their involvement in One World and to the Medicinal Cannabis Scam, and in agreeing to continue from those specific points in time and/or forward to: (i) make additional capital contributions into One World; (ii) allow Onoufriadis to serve as Manager of One World and participate in its potential profitability; (iii) allow Rodgers to serve as Chief Legal Officer and Secretary and participate in its future potential profitability; (iv) allow Karloutsos' participation in One World operations, management and business development; (v) to continue allowing Onoufriadis, Rodgers and Karloutos to financially benefit from the relationship; (vi) allow the pursuit of the Medicinal Cannabis Scam using Plaintiffs'

BE:11690424.1/CHA379-277986

funds; and (vii) to not institute measures earlier to protect Plaintiffs' financial interests and assets.

280.     Rodgers and Karloutsos intentionally misled One World/Chaleplis into believing the Conmave and Bioprocann loans were legitimate loans to be used to finance the Medicinal Cannabis Scam, when in reality Karloutsos, Rodgers, Onoufriadis and their co-conspirators knowingly never had any intention of either repaying those funds and/or using them to advance the Medicinal Cannabis Scam, but rather to misappropriate One World's and Chaleplis' funds as detailed above.

281.     Rodgers himself participated in the drafting of the Conmave and Bioprocann promissory notes with Onoufriadis and Karloutsos, yet intentionally failed as One World's CLO to ensure or provide Plaintiffs with any security interest, convertible interest (as had been promised to Chaleplis by Karloutsos, Onoufriadis and Rodgers) and/or personal guarantees to secure repayment of those loans so that Rodgers, Karloutsos and Onoufriadis could misappropriate those funds.

282.     Chaleplis reasonably relied upon all of the foregoing intentional misrepresentations and omissions from Onoufriadis in allowing Onoufriadis to manage One World, and in continuing to finance One World before, during and after Onoufriadis' execution of the Medicinal Cannabis Scam, and systematic clandestine theft of One World's and Chaleplis' monies

283.     As a result, One World and Chaleplis have been and will continue to be damaged.

**WHEREFORE**, One World, LLC and Gabriel Chaleplis demand judgment against defendants James M. Rodgers, Esq., Michael Karloutsos, Rodgers Investments LLC, MAK Consulting LLC and James M. Rodgers, P.C. as follows:

BE:11690424.1/CHA379-277986

(a)    direct, actual and consequential damages;

(b)    compensatory damages;

(c)    punitive damages;

(d)    pre-judgment and post-judgment interest;

(e)    imposition of a constructive trust upon all the assets of Karloutsos, MAK Consulting LLC, Rodgers, Rodgers Investments LLC and James M. Rodgers, P.C., including but not limited to the Virginia Home and the Philly Condo titled in Karloutsos' and Rodgers' names respectively;

(f)    a declaratory judgment that One World, LLC and Chaleplis are the rightful title owner of the Virginia Home and the Philly Condo;

(g)    an accounting from Rodgers and Karloutsos concerning all financial transactions of any kind that they transacted and engaged in relating to One World and Chaleplis, and all funds they misappropriated and received from Plaintiffs;

(h)    piercing the corporate veils of MAK, Rodgers Investments and JMR PC to hold Rodgers and Karloutsos personal liable for the actions of those companies in misappropriating One World's/Chaleplis' funds, and determining they are all alter-egos of one another; and

(i)    any other relief the Court deems equitable and proper.

## CERTIFICATION PER LOCAL RULE

I hereby certify that the above referenced matter in controversy is not related to any other pending matter or arbitration, except for the following pending actions: (i) a one-count action in the District of Massachusetts that One World, LLC and Chaleplis have filed against Onoufriadis to obtain a lis pendens against Onoufriadis' Boston Condo captioned One World, LLC v. Onoufriadis, C.A. No. 20-cv-11580-RWZ (the "Onoufriadis *Lis Pendens* Action"); (ii) an action

that One World, LLC and Chaleplis filed against Ioannis Manolakos, his affiliate company and a third-party construction lender in the District of Massachusetts captioned <u>One World, LLC v. Manolakos, et. al.,</u> Civil Action # 1:20-cv-11837-RWZ (the "Manolakos Action"); (iii) an action against Onoufriadis and his alter-ego companies Power 2u Consulting, LLC, Canncore, Inc. and Power 2 U, LLC in the District of Massachusetts captioned <u>Onoufriadis v. One World, et. al.,</u> Civ. Action # 1:21-cv-10085-RWZ (the "D. Mass Action"); (iv) Chaleplis' and One World's former "first filed" Complaint against Onoufriadis in the United States District Court, Southern District of New York captioned <u>One World, LLC, et. al. v. Onoufriadis, et. al.,</u> Civ. Action # 1:20-cv-05802-CM (the "SDNY Action") currently on appeal before the Second Circuit Court of Appeals regarding two (2) counts in that action; and (v) an action that One World has filed against Conmave in the Superior Court of Massachusetts, Suffolk County, captioned <u>One World, LLC v. Conmave IKE,</u> Civ. Action # 21-0323B (the "Conmave Action").

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

**BRACH EICHLER LLC**
Attorneys for Gabriel Chaleplis and
One World, LLC

<u>/s/ *Thomas Kamvosoulis*</u>
Thomas Kamvosoulis, Esq.
tkamvosoulis@bracheichler.com
**BRACH EICHLER LLC**
101 Eisenhower Pkwy
Roseland, New Jersey 07069
Tel: (973) 228-5700
Fax: (973) 618-5539

BE:11690424.1/CHA379-277986

**BRACH EICHLER LLC**
Attorneys for Gabriel Chaleplis and
One World, LLC

*/s/ Bob Kasolas*
Bob Kasolas, Esq.
bkasolas@bracheichler.com
**BRACH EICHLER LLC**
101 Eisenhower Pkwy
Roseland, New Jersey 07069
Tel: (973) 228-5700
Fax: (973) 618-5539
(Pro Hac Vice Application Pending

Dated: March 29, 2021

BE:11690424.1/CHA379-277986

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas Kamvosoulis, Esq. hereby certify that on March 29, 2021, a true copy of this Complaint was filed electronically through the Court's ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Thomas Kamvosoulis*

BE:11690424.1/CHA379-277986