IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GABRIEL CHALEPLIS, et al.  :  CIVIL ACTION
          :  NO. 21-1492
   Plaintiffs,   :
  v.        :
          :
MICHAEL KARLOUTSOS, et al., :
          :
   Defendants.   :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.       January 10, 2022

## Table of Contents

I.  INTRODUCTION.................................................... 2

II.  BACKGROUND..................................................... 3

 A. Formation of One World, LLC ............................. 4

 B. Chaleplis Invests in the Greek Medicinal Cannabis Market 7

 C. Rodgers and Karloutsos Misappropriate Funds Invested by
   Chaleplis ............................................... 9

 D. Karloutsos and Rodgers' Use of Converted Funds ......... 10

 E. Related Proceedings in Other Courts .................... 12

III. LEGAL STANDARD................................................ 15

IV. DISCUSSION.................................................... 16

 A. Karloutsos' 12(b)(2) Motion to Dismiss for Lack of
   Personal Jurisdiction ................................. 16

 B. The Karloutsos Defendants' 12(b)(6) Motion to Dismiss .. 22

  1. Choice of Law ......................................... 22

  2. Counts I, II, and III: Conversion ..................... 23

  3. Counts V-VII: Breach of Fiduciary Duties .............. 27

  4. Count VIII: Unjust Enrichment ......................... 28

  5. Count IX: Accounting .................................. 30

  6. Count X: Constructive Trust ........................... 30

  7. Count XI: Declaratory Judgment ........................ 31

  8. Count XII: Alter Ego .................................. 33

  9. Count XIII: Fraud .................................... 35

    **C.**   **Rodgers Defendants' Motion to Dismiss under R. 12(b)(6)** 38

    **D.**   **Karloutsos Defendants' Motion under Fed. R. Civ. P. 12(b)(7), 12(f), 19, and 28 U.S.C. § 1404** .............. 39

     1.   Necessary and Indispensable Party .................... 40

     2.   Motion to Transfer Venue .............................. 43

    **E.**   **Rodgers' Motion for Sanctions** ......................... 45

**V.**   **CONCLUSION** ............................................. 47

## I.   INTRODUCTION

One World, LLC and Gabriel Chaleplis, its sole member (hereinafter referred to as "Plaintiffs"), bring this action against defendants James M. Rodgers, Esq., Rodgers Investments, and James M. Rodgers, P.C. (collectively the "Rodgers Defendants"), and Michael Karloutsos and his company, MAK Consulting, LLC (collectively the "Karloutsos Defendants").

Plaintiffs allege that Defendants induced Chaleplis to invest €10,750,000 (approximately $12,000,000) of One World, LLC funds in Greek companies controlled by Defendants' associates, who then rerouted the funds back to Defendants in the United States where they were misappropriated for personal purposes.

The following six motions are pending before the Court:

1)    A motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2) filed by Karloutsos (ECF No. 15);

2)    A motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by the Rodgers Defendants (ECF No. 19);

3)    A motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by the Karloutsos Defendants (ECF No. 20);

4)    A motion for sanctions filed by the Rodgers Defendants (ECF No. 23);

5)    A motion to dismiss or transfer venue filed by the Karloutsos Defendants (ECF No. 40); and

6)    A motion to dismiss pursuant to Fed. R. Civ. P. 19 and Fed. R. Civ. P. 12(b)(7) filed by the Rodgers Defendants (ECF No. 42).

For the reasons that follow, the Karloutsos Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be granted in part and denied in part. Pursuant to that motion, Count XI (declaratory judgment) will be dismissed with prejudice, and Counts XII (alter ego) and XIII (fraud) will be dismissed without prejudice and with leave to amend. Defendants' remaining motions are denied.

Count X of the Complaint asserts an independent claim for constructive trust, which is not recognized as an independent claim under Pennsylvania law. Pursuant to Fed. R. Civ. P. 12(f)(1), Count X (constructive trust) will be stricken as a standalone claim.

## II.   BACKGROUND[1]

Plaintiff Gabriel Chaleplis is a citizen of the United Kingdom. Chaleplis is the sole member of One World, LLC ("One World"), which is a Delaware LLC.

---

[1]    The facts alleged in the Complaint and asserted herein are accepted as true and viewed in the light most favorable to Plaintiffs.

Michael Karloutsos is a citizen of Virginia or Florida and a resident of Virginia.[2] Before moving to Virginia, Karloutsos owned and operated a restaurant in Philadelphia called Water Works. On July 23, 2017, he took a position as Deputy Chief of Protocol with the U.S. State Department, where he served until December 17, 2017. Karloutsos is also the sole member and manager of MAK Consulting, LLC ("MAK"), which is a Pennsylvania LLC also named as a defendant in this case.

Defendant James Rodgers, Esq., is a citizen and resident of Pennsylvania. He is a member of the Pennsylvania Bar. Rodgers is the sole member of Rodgers Investments and sole shareholder of James M. Rodgers, P.C., which are named as defendants in this action.

### A.   Formation of One World, LLC

Before May 2017, Chaleplis decided to form a company to serve as a vehicle through which he could invest in American businesses. To that end, Chaleplis consulted with a friend in Greece who referred him to Nikolaos Onoufriadis, a businessman who is not a party to this action.

Onoufriadis represented to Chaleplis that he was experienced in international business development and global government relations, and that he was familiar with various

---

[2]     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

American industries in which Chaleplis was interested in
investing. Onoufriadis further recommended that Chaleplis hire
Karloutsos, Onoufriadis' "very good friend and best man," for
his "presence in the United States," purported experience in
American and Greek politics, government relations, and lobbying,
and because of his father's position within the Greek Orthodox
Church. Compl. ¶¶ 14-15, ECF No. 1. Onoufriadis, Karloutsos, and
Chaleplis later met in Greece to discuss their respective roles
in the proposed company. Id. Karloutsos recommended that
Chaleplis also hire Rodgers to handle the company's legal work.
The proposed company ultimately became One World, LLC
(hereinafter "One World").

    In the communications leading up to the formation of One
World, Karloutsos advised Chaleplis that he would be taking a
position with the U.S. State Department, and thus could not
formally or publicly participate in the membership or management
of One World. Karloutsos recommended that Chaleplis use
Onoufriadis and Rodgers as formal officers of One World.
However, while Karloutsos could not formally participate in the
operation of One World, the Complaint alleges that he "silently"
worked with Onoufriadis and Rodgers on Plaintiffs' behalf to
research and pursue opportunities for One World. Id. at ¶ 29.

    On May 24, 2017, Chaleplis officially formed One World as a
Delaware LLC. On June 15, 2017, Rodgers allegedly formed Rodgers

Investments as a Wyoming LLC to serve as the conduit company and bank account designed for Rodgers and his businesses, and for Karloutsos and his company, MAK, to misappropriate and convert Plaintiffs' funds for their own benefit.

The parties met in New York City on September 28, 2017. Onoufriadis, Karloutsos, and Rodgers assured Chaleplis they had the necessary experience to successfully identify and pursue investments on behalf of Chaleplis and One World. Based on these assurances, Chaleplis hired Onoufriadis as Manager and Rodgers as Secretary and Chief Legal Officer of One World. The appointments were memorialized in One World's operating agreement, which the parties executed two days later.

Pursuant to the Operating Agreement, Chaleplis held an 80% membership interest in One World while Onoufriadis held a 20% membership interest. Chaleplis was the 100% "profit member," however, as he contributed all of One World's capital.

Because of Karloutsos' official position in the State Department, he was not identified in the agreement. But the Complaint alleges that Karloutsos "utilized his good friends Onoufriadis and Rodgers as 'front men' for Karloutsos to participate in the management, operations, and profitability of One World" and entered into an oral "side agreement" with Rodgers, pursuant to which Rodgers and Karloutsos would split Rodgers' three percent interest in One World 50-50. Id. at ¶¶

6

58-59. Karloutsos allegedly continued co-managing One World pursuant to this "side agreement" after leaving the State Department on December 17, 2017. Id. at ¶¶ 61, 62.

Chaleplis began making capital contributions to One World in August 2017. Following the execution of the Operating Agreement, Onoufriadis, Karloutsos, and Rodgers caused One World to open (i) three separate Citizens Bank accounts, (ii) an Alex Brown/Raymond James investment account, and (iii) a Hancock Whitney account. Virtually all of Chaleplis' capital contributions were deposited into Rodger's Citizen Bank IOLTA attorney trust account for intended transfer to One World's bank accounts. The Complaint alleges that Onoufriadis opened three separate accounts with Citizens Bank for the sole reason of allowing Rodgers, Karloutsos, and himself to misappropriate Chaleplis' capital contributions.

## B. Chaleplis Invests in the Greek Medicinal Cannabis Market

Karloutsos, Rodgers, and Onoufriadis met again with Chaleplis in New York City on March 17, 2018. In this meeting, they proposed to Chaleplis that One World invest in the Greek medicinal cannabis market.

At the March 17, 2018 meeting, Karloutsos, Rodgers, and Onoufriadis presented Chaleplis with a budget that they claimed itemized the estimated cost to capitalize and launch the

business. In exchange for providing funding, One World was supposed to receive an equity interest in the new Greek companies and in Conmave, a Greek single-member company that was supposed to hold One World's proceeds in escrow temporarily until bank accounts could be opened for the new cannabis companies.

Following the meeting, and in order to invest in the cannabis market, they recommended that One World invest in new Greek companies, which would then use the funds to apply for licensing, pay governmental and lobbying expenses, purchase land and equipment, and all other necessary services to establish and operate the medicinal cannabis business. Because the Greek cannabis market was "publicly perceived with distrust," Onoufriadis, Rodgers, and Karloutsos recommended that Chaleplis himself not be a shareholder in any of these new companies, but that the new companies should be owned and controlled by individuals known to Onoufriadis, Rodgers, and Karloutsos. Id. at ¶¶ 74-75.

Chaleplis made the following capital contributions into One World for the purpose of capitalizing the medicinal cannabis project: €2,700,000 on March 19, 2018; €10,400,000 on March 30, 2018; and €2,180,000 on December 21, 2018. These funds were transferred into Rodgers' Citizens Bank attorney trust account for intended transfer into One World's accounts. The funds from

the pre-December 2017 investments were transferred to Conmave in three wire transactions as follows: $1,813,945 on May 22, 2018; $1,167,900 on June 18, 2018; and $1,693,455 again on June 18, 2018. In total, Chaleplis transferred approximately €4,000,000 to Conmave.

Following Chaleplis' foregoing capital contributions, Karloutsos and Rodgers, among others, formed three new Greek companies: (i) Bioprocann, S.A. ("Bioprocann"); (ii) Leadercann, S.A.; and (iii) Hellascann, S.A. As planned, and for the purpose of investing in the medicinal cannabis scam, Karloutsos, Rodgers, and Onoufriadis organized the ownership structure of shareholders to guarantee that they would control the three companies. Under this arrangement, Chaleplis would be excluded from monitoring the companies' business operations in the future.

### C. Rodgers and Karloutsos Misappropriate Funds Invested by Chaleplis

The Complaint alleges that Onoufriadis, Karloutsos, and Rodgers misappropriated over $9,000,000 of the funds Chaleplis invested into One World. The scheme was carried out by first wiring funds from One World into either Conmave or Bioprocann. The three men attempted to disguise the scheme by issuing promissory notes for the amounts wired which listed the entity receiving the money, i.e. Conmave or Bioprocann, as both the

obligor and the guarantor on the loan. As such, these loans were essentially unsecured. Neither Conmave nor Bioprocann has made any repayment on these "loans."

Next, the funds were transferred in smaller amounts into either Rodgers' attorney trust account or another account controlled by Rodgers, Karloutsos, or Onoufriadis. Each of Defendants' alleged misappropriations are laid out in detail on pages 50-59 of the Complaint, including the date of the misappropriation, the amount, and which bank accounts the money was transferred to and from. Due to Defendants' alleged misappropriation of funds, Plaintiffs are currently out of pocket approximately $9,000,000 that Chaleplis contributed towards One World.

### D.   Karloutsos and Rodgers' Use of Converted Funds

Plaintiffs alleged that Karloutsos and Rodgers used One World's money to pay for personal expenses and homes they could not otherwise afford. Plaintiffs admit that both men financed their respective home purchases with conventional bank mortgage loans: Karloutsos used conventional mortgage financing to purchase a home in McLean, Virginia for $1,270,000 on September 1, 2018, and Rodgers also used conventional mortgage financing to purchase a townhouse in Philadelphia for $491,000 on November 15, 2018.

Plaintiffs allege that neither Karloutsos nor Rodgers would have cleared enough cash from the sale of their previously owned homes to afford the respective down payment on their new homes. According to the Complaint, Karloutsos sold his prior home, which was subject to a $678,000 outstanding mortgage, for $847,500. Rodgers sold his prior residence for $163,000 seven months after purchasing his new home.

The Complaint makes a number of further assertions regarding Karloutsos' personal finances. Specifically, Plaintiffs allege that he took out a $2,112,500 business loan in 2006 to finance a restaurant venture in Philadelphia. They further allege that (1) there is a $36,179 default judgment outstanding against him, and (2) in his sworn March 23, 2017 Office of Government Ethics Public Financial Disclosure Report, he disclosed under oath that "(i) Karloutsos's business was his consulting/lobbying company MAK; (ii) that his annual income from MAK for 'consulting' was between $100,000 and $125,000 annually; (iii) that he only had $15,000 to $50,000 in his Wells Fargo personal bank account; and (iv) that he has personal business ties to Greece and Cyprus." Id. at ¶ 23. Based on these facts, Plaintiffs argue that Karloutsos would have been unable to purchase his Virginia home without the use of Plaintiff's misappropriated funds.

11

### E.   Related Proceedings in Other Courts

The parties in this case, as well as several others, are prosecuting and defending, respectively, related claims in multiple fora. Plaintiffs filed a nearly identical lawsuit in the U.S. District Court for the Southern District of New York in 2020, but the amended complaint in that case also included two RICO counts. Also, unlike in this case, Onoufriadis and Canncore, Inc. were named as defendants. Then-Chief Judge McMahon first found that Plaintiffs failed to state RICO claims, and that, therefore, there was no federal question jurisdiction. See One World, LLC v. Onoufriadis, No. 20-cv-5802, 2021 WL 184400, at *11-*13 (S.D.N.Y. Jan 19, 2021). Nor was there diversity jurisdiction. Judge McMahon noted that because Onoufriadis, a citizen of Greece, and Plaintiffs, citizens of the United Kingdom, were all foreign citizens, "the presence of aliens on two sides of a case [as in the N.Y. case] destroy[ed] diversity jurisdiction." Id. (quoting Corporacion Venezolana de Formento de Vintero Sales Corp., 629 F.2d 786, 790 (2d Cir. 1980)).

Having dismissed Plaintiffs' federal claims for lack of jurisdiction, Judge McMahon declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. See id. at *15. Plaintiffs appealed this decision to the Second Circuit, who affirmed the district

12

court's order and judgment. See One World, LLC v. Onoufriadis,
No. 21-cv-374, 2021 WL 4452070, at *3 (2d Cir. Sept. 29, 2021).

Meanwhile, back in Greece, Plaintiffs also filed a lawsuit
against Conmave and its principals in July 2021. See One World,
LLC v. Conmave, et al., General Filing No. 52277/2020, Specific
Filing No. 5698/2020. Plaintiffs were granted a temporary
restraining order by the Greek court enjoining the Greek
defendants from selling automobiles and boats that they
allegedly purchased using the money that was transferred from
One World to Conmave.

Plaintiffs also filed a memorandum of lis pendens in
Virginia state court against Karloutsos' home prior to the start
of this case. Plaintiffs later agreed to discharge the lis
pendens to allow Karloutsos to sell the home subject to the
proceeds of the sale being placed in escrow pending the outcome
of the case.

On January 13, 2021, Onoufriadis filed a complaint in
Massachusetts state court against Chaleplis and One World,
bringing claims for unpaid wages, breach of contract and
fiduciary duty, and malicious prosecution. Chaleplis and One
World removed the action to the District of Massachusetts, where
a motion to remand is currently pending. See Onoufriadis v. One
World, et al., No. 21-cv-10085. The Karloutsos and Rodgers

defendants are not parties to the District of Massachusetts action.

Finally, Plaintiffs filed the instant Complaint in this Court on March 29, 2021. The Complaint brings the following thirteen counts:

    I.    Conversion against all defendants;

    II.    Conspiracy to commit conversion against all defendants;

    III.    Aiding and abetting conversion against all defendants;

    IV.    Breach of One World, LLC operating agreement against James M. Rodgers;

    V.    Breach of fiduciary duty of loyalty against Rodgers and Karloutsos;

    VI.    Breach of fiduciary duty of care against Rodgers and Karloutsos;

    VII.    Breach of fiduciary duty - usurping corporate opportunity against Rodgers and Karloutsos;

    VIII.    Unjust enrichment against all defendants;

    IX.    Accounting against Rodgers and Karloutsos;

    X.    Constructive trust against all defendants and Rodgers' and Karloutsos' personal residences;

    XI.    Declaratory judgment as to Rodgers' and Karloutsos' personal residences;

    XII.    Alter-ego as to Karloutsos and MAK and as to Rodgers, Rodgers Investments, and James M. Rodgers, P.C.; and

    XIII.    Legal fraud and fraud in the inducement against Karloutsos and Rodgers.

The aforementioned motions were subsequently filed and briefed and are now ripe before the court.

### III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When considering such a motion, the Court must "accept
as true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party." DeBenedictis v.
Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting
Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir.
1989)).

To withstand a motion to dismiss, the complaint's
"[f]actual allegations must be enough to raise a right to relief
above the speculative level." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007). This "requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Id. Although a plaintiff is
entitled to all reasonable inferences from the facts alleged, a
plaintiff's legal conclusions are not entitled to deference, and
the Court is "not bound to accept as true a legal conclusion
couched as a factual allegation." Papasan v. Allain, 478 U.S.
265, 286 (1986).

The pleadings must contain sufficient factual allegations
so as to state a facially plausible claim for relief. See,
e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187,

190 (3d Cir. 2009). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the
Court limits its inquiry to the facts alleged in the complaint
and its attachments, matters of public record, and undisputedly
authentic documents if the complainant's claims are based upon
these documents. See Jordan v. Fox, Rothschild, O'Brien &
Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit
Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196
(3d Cir. 1993).

## IV.   DISCUSSION

### A.   Karloutsos' 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Karloutsos moves to dismiss on the grounds that this Court
lacks personal jurisdiction over him. He first argues he is not
subject to general jurisdiction in Pennsylvania because he moved
from Pennsylvania to Virginia before the events that gave rise
to this case occurred, and because his company, MAK, though a
Pennsylvania LLC, has not had any office or business address in
Pennsylvania since 2017. He next argues that he is not subject
to specific jurisdiction because Plaintiffs do not allege
sufficient minimum contacts between him and Pennsylvania. While

16

Karloutsos may be correct that he is not subject to general jurisdiction in Pennsylvania, Plaintiffs have plainly alleged minimum contacts between Karloutsos and Pennsylvania concerning this case that would subject him to specific personal jurisdiction in Pennsylvania.

Specific personal jurisdiction exists in a given case when: (1) the defendant "purposefully directed" its activities at the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with notions of "fair play and substantial justice." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (citations and internal quotation marks omitted). Physical presence in the forum is not required. See Burger King v. Rudzewicz, 471 U.S. 462, 476 (1985) (same).

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendant. See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). A district court deciding a challenge to its jurisdiction over a defendant has discretion to either hold an evidentiary hearing on the motion or to decide it based on the parties' submissions. See id. (considering a district court's ruling on a 12(b)(2) motion without holding an evidentiary hearing); Doe v. Hesketh, 15 F. Supp. 3d 586, 591 (E.D. Pa. 2014) (quoting Charles Alan Wright &

Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1351 (3d ed. 2013) ("A district court considering a challenge to its jurisdiction over a defendant has 'considerable leeway in choosing a methodology for deciding the motion.'")).

If the court elects not to hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. In evaluating the plaintiff's case, the court takes the plaintiff's allegations as true and construes all factual inferences in the plaintiff's favor. <u>See</u> <u>Miller Yacht Sales, Inc.</u>, 384 F.3d at 97. Here, because there are no significant factual disputes that would necessitate an evidentiary hearing on the issue of personal jurisdiction, the Court elects to decide the motion based on the allegations of the Complaint. Plaintiffs' allegations are therefore taken as true and any factual disputes are construed in their favor.

This is a fraud case in which a conspiracy is alleged. "[U]nder Pennsylvania law personal jurisdiction of a non-forum coconspirator may be asserted [] where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum coconspirator was aware or should have been aware of those acts." <u>O'Shaughnessy v. Palazzo</u>, 496 F. Supp. 3d 872, 880 (E.D. Pa. 2020) (alteration in original) (citation omitted); <u>see also</u> <u>Arnold v. Chenery Mgmt., Inc.</u>, 2014 WL 10919595, at *9 (Super. Ct. Pa. May 23, 2014)

18

(quoting Ethanol Partners Accredited v. Weiner, Zuckerbrot,
Weiss & Beicher, 635 F. Supp. 15, 18 (E.D. Pa. 1985)) ("When co-
conspirators have sufficient contacts with the forum, so that
due process would not be violated, it is imputed against the
'foreign' co-conspirators who allege that there [are] not
sufficient contacts; co-conspirators are agents for each
other.") (alteration in original); cf. Commonwealth ex rel.
Pappert v. TAP Pharm. Prods., Inc., 868 A.2d 624, 632 (Pa. Comm.
Ct. 2005) (declining to exercise personal jurisdiction over a
foreign co-conspirator because "the allegations [were] simply
insufficient to establish that [the defendant] participated in,
or knew of, the alleged conspiracy").

        In O'Shaughnessy, another fraud case, there was only "one
principal act alleged to have taken place in Pennsylvania – the
sending of the instructions for the disbursement of money by
non-movant Mr. Thompson from Bethlehem, Pennsylvania to non-
defendant Mr. Cumbie in Florida," but Judge McHugh found that
one allegation sufficient to constitute a "substantial act in
furtherance of the conspiracy," and exercised personal
jurisdiction over the foreign defendant. Id. at 881.

        Here, Plaintiffs allege that their funds were fraudulently
misappropriated by Defendants, including Karloutsos, by
transferring those misappropriated funds through the Rodgers
IOLTA Account at a Citizens Bank branch in Pennsylvania to other

                                 19

accounts owned and controlled by Defendants. This is more substantial than the conduct alleged in O'Shaughnessy, as there were actual transfers of money occurring in Pennsylvania. Therefore, these allegations are certainly sufficient to constitute a "substantial act in furtherance of the conspiracy." See id.

Plaintiffs also make several allegations that, if true, collectively demonstrate that Karloutsos was aware of the alleged fraudulent transfers of funds through Rodgers's IOLTA account. These allegations include, inter alia, the following:

- Karloutsos recommended that Chaleplis involve Rodgers as a formal officer to assist in managing One World and handling the company's legal work since Karloutsos could not "publicly" participate in One World's management;
- Karloutsos entered into an unwritten oral "side deal" to split Rodgers's profit-sharing interest in One World 50/50;
- Although Karloutsos was not publicly mentioned in the Operating Agreement, he was involved in managing the business operations of One World;
- Karloutsos attended meetings wherein he and Rodgers, among others, tried to convince Chaleplis to enter into and pursue the Greek medicinal cannabis market;
- Karloutsos helped convince Chaleplis that Chaleplis should not be one of the shareholders of any of the new companies formed in Greece and that the companies must be owned and controlled by individuals under their own influence (i.e., the influence of Karloutsos, Rodgers, and Onoufriadis);
- Karloutsos helped convince Chaleplis that his investments must be structured as convertible loans to the new Greek companies;
- Karloutsos intentionally misrepresented the realities regarding the inability to open Greek bank accounts for some of the new cannabis companies, and helped

20

convince Chaleplis that Conmave, a Greek single member company owned by a co-conspirator, would hold One World's proceeds in escrow temporarily until bank accounts could be opened for the new companies;

- Karloutsos helped to prepare fraudulent promissory notes describing One World as the "lender," and both the "borrower" and the "guarantor" as Conmave, without obtaining any actual security interest from Conmave;

- Chaleplis made the capital contributions for the medicinal cannabis venture into Rodgers's IOLTA account;

- On May 3, 2018, $200,000 belonging to Plaintiffs was transferred from the Rodgers IOLTA account to the Rodgers Investments account (both with Citizens Bank), which was then transferred to Karloutsos's personal Wells Fargo account on May 4, 2018;

- On July 31, 2018, $20,000 belonging to Plaintiffs was transferred from the Rodgers IOLTA account to the Rodgers Investments account, which was then transferred to Karloutsos's MAK account with Wells Fargo;

- On August 6, 2018, $20,000 belonging to Plaintiffs was transferred from the Rodgers IOLTA account to the Rodgers Investments account, which was then transferred to Karloutsos's MAK account;

- On August 7, 2018, $50,000 belonging to Plaintiffs was transferred directly from Rodgers's IOLTA account to Karloutsos's personal Wells Fargo account;

- On August 8, 2018, $110,000 belonging to Plaintiffs was transferred from the Rodgers IOLTA account to the Rodgers Investments account, which was then transferred to Karloutsos's personal Wells Fargo account;

- On June 11, 2019, $148,000 belonging to Plaintiffs was transferred from the Rodgers IOLTA account to the Rodgers Investments account, which was then transferred to Karloutsos's personal Wells Fargo account on June 13, 2019;

- On February 28, 2020, $20,000 belonging to Plaintiffs was transferred from the Rodgers IOLTA account to the Rodgers Investments account, which was then transferred to Karloutsos's personal Wells Fargo account; and

- Karloutsos purchased a home in Virginia that he was in
  no financial position to purchase without converting
  Plaintiffs' funds based upon his financial condition
  at the time he commenced his position with the U.S.
  State Department in mid-2017, as confirmed by his OGE
  certified disclosures under penalty of perjury
  concerning his financial holdings, annual income and
  assets at that time.

Compl. ¶¶ 18-19, 41, 43, 59-60, 68-69, 75-76, 87, 91, 124-26,

177, 204. These allegations, which the Court must take as true

at this stage, demonstrate that Karloutsos knew that Plaintiff's

funds were being misappropriated by transferring them through

the Rodgers IOLTA account at a Citizens Bank branch in

Pennsylvania to other accounts owned and controlled by

Defendants.

Finally, Karloutsos does not advance any reason why

exercising personal jurisdiction over him in this case would not

comport with notions of fair play and substantial justice.

Because Plaintiffs have made a prima facie showing that the

Court can exercise personal jurisdiction over Karloutsos, his

12(b)(2) motion will be denied.

**B.   The Karloutsos Defendants' 12(b)(6) Motion to Dismiss**

    **1.   <u>Choice of Law</u>**

MAK and Karloutsos (the "moving Defendants") first argue

that New York law should apply to this case. Plaintiffs'

response argues that Pennsylvania law should apply. However,

both parties acknowledge that there are no significant

differences between the two jurisdictions with respect to the underlying claims in this case. Def's. Mot. at 11, ECF No. 20-1 ("[R]egardless of whether New York of Pennsylvania law governs, plaintiffs fail to plead any valid claim"); Pl's Resp. at 11, ECF No. 35 ("In the instant matter, the laws of Pennsylvania and New York concerning the underlying claims in this matter are not in conflict."). Because the application of either New York or Pennsylvania law would not change the result on any issue in the case, any potential difference between them would be no more than a "false conflict." See Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). Under these circumstances, the Court will conduct no further analysis on the choice-of-law question, and "applies the law of Pennsylvania as it is the law of the forum in which the Court sits." Phoenix Lithographing Corp. v. Bind Rite Servs., Inc., 27 F. Supp. 3d 636, 640 (E.D. Pa. 2014).

## 2.   Counts I, II, and III: Conversion

Counts I, II, and III of the Complaint allege claims for conversion, conspiracy to commit conversion, and aiding and abetting conversion, respectively, against the Karloutsos Defendants.

With respect to Count I, the Karloutsos defendants argue that Plaintiffs fail to state a claim for conversion of Plaintiffs' money because they do not allege that either

Karloutsos or MAK took possession of specifically identifiable funds belonging to Plaintiffs. This argument is unpersuasive, as the Complaint details at least ten banking transfers totaling over $600,000 of Plaintiffs' funds received by the Karloutsos Defendants. The allegations specifically allege the amount, date, recipient, account holder, and bank involved in each transfer. Whether these funds truly belonged to Plaintiffs or to other parties is a question of fact to be determined at a later stage. In any event, Plaintiffs have pled a plausible conversion claim.

The Motion further argues that Count II should be dismissed, but their argument in this regard rests on the previous argument that Plaintiffs have not stated a claim for conversion, the underlying offense to the alleged conspiracy. See Bandy v. Hill, No. 18-cv-0425, 2019 WL 1259155, at *8 (E.D. Pa. Mar. 18, 2019) (dismissing a claim for conspiracy to commit conversion because the plaintiff did not state an underlying conversion claim). However, as previously discussed, Plaintiffs have stated a claim for conversion. Accordingly, the Karloutsos Defendants' motion to dismiss will be denied as to Count II.

The Karloutsos Defendants further argue that Plaintiff's claim for aiding and abetting conversion, as stated in Count III, is not a recognized claim under Pennsylvania law. In support of this argument, they cite Canters Deli Las Vegas, LLC

24

v. FreedomPay, Inc., 460 F. Supp. 3d 560, 576 (E.D. Pa. 2020).
The Canters Deli court noted in a footnote that "[t]o the extent
Plaintiffs characterize this claim as one for aiding and
abetting conversion, it is not clear that such a claim exists."
460 F. Supp. 3d at 576 n.9. The Canters Deli court cited to
Mifflinburg Telegraph, Inc. v. Criswell, 277 F. Supp. 3d 750
(M.D. Pa. 2017), which concluded that no "aiding and abetting
conversion" tort existed in Pennsylvania, as it could not
identify any Pennsylvania case in which such a claim was
recognized. Mifflinburg Telegraph, Inc., 277 F. Supp. 3d at 795;
see also Regional Produce Cooperative Corp. v. T.D. Bank, N.A.,
No. 19-cv-1883, 2020 WL 1444888, at *6 (E.D. Pa. Mar. 24, 2020)
(citing Mifflinburg and reaching the same conclusion).

While the Canters Deli, Mifflinburg, and Regional Produce
courts doubted that Pennsylvania recognized a claim for aiding
and abetting conversion, a more recent case from the
Pennsylvania Superior Court, Marion v. Bryn Mawr Trust Co., 253
A.3d 682 (Pa. Super. Ct. 2021), suggests otherwise. In Marion,
the court considered whether a claim for aiding and abetting
fraud was recognized under Pennsylvania law. Marion, 253 A.3d at
687-90. The court noted that while no Pennsylvania case
recognized a claim for "aiding and abetting fraud" specifically,
the claim could be more accurately construed as a claim for
"concerted tortious conduct," which is recognized under

Pennsylvania law. Id. at 689. The Superior Court concluded that
the plaintiff's styling of the claim as "aiding and abetting
fraud" rather than "concerted tortious action" was not
dispositive. Id. Thus, based on Marion, it seems that
Pennsylvania law does recognize a claim for aiding and abetting
conversion under the rubric of concerted tortious conduct.

The Pennsylvania Supreme Court has adopted the elements
stated in section 867 of the Restatement (Second) of Torts to
constitute the claim of concerted tortious conduct. HRANEC Sheet
Metal, Inc. v. Metalico Pittsburgh, Inc., 107 A.3d 114, 120 (Pa.
2014). Under section 867, a defendant is liable for concerted
tortious conduct if he:

> (a) does a tortious act in concert with the other or
> pursuant to a common design with him, or

> (b) knows that the other's conduct constitutes a
> breach of duty and gives substantial assistance or
> encouragement to the other so to conduct himself, or

> (c) gives substantial assistance to the other in
> accomplishing a tortious result and his own conduct,
> separately considered, constitutes a breach of duty to
> the third person.

Restatement (Second) of Torts § 867.

While Plaintiff's Count III claim is styled "aiding and
abetting conversion," it states a plausible claim for concerted
tortious conduct under Pennsylvania law. Count III alleges a
tortious act (conversion) performed under a common design
between Karloutsos and others to misappropriate Plaintiffs'

funds, in which each provided substantial assistance to the other by participating in the meetings where the scheme was allegedly devised. Accordingly, Defendants' motion to dismiss will be denied as to Count III.

### 3.   Counts V-VII: Breach of Fiduciary Duties

Counts V, VI, and VII allege claims for breach of the fiduciary duty of loyalty, breach of fiduciary duty of care, and breach of fiduciary duty - usurping corporate opportunity, respectively. The Karloutsos Defendants essentially argue in their motion that because Karloutsos never held a formal position or entered into an agency relationship with One World or Chaleplis, he did not owe Plaintiffs a fiduciary duty.

But one does not have to hold a formal employment relationship with another to owe a fiduciary duty—rather, "[f]iduciary or confidential relationships arise when one party places confidence in another with resulting superiority and influence on the other." Jairett v. First Montauk Securities Corp., 153 F. Supp. 2d 562, 567 (E.D. Pa. 2001) (internal citations and quotation marks omitted); see also Frowen v. Blank, 425 A.2d 412, 416-17 (Pa. 1981) (finding that a fiduciary duty "appears when the circumstances make it certain the parties do not deal on equal terms, but, on one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed"). The question of whether such a

relationship exists is "fact specific and cannot be reduced to a particular set of facts or circumstances." Yenchi v. Ameriprise Financial, Inc., 161 A.3d 811, 820 (Pa. 2017).

Plaintiffs have pled sufficient facts to plausibly state the existence of a fiduciary relationship between them and Karloutsos at this stage. The Complaint alleges, inter alia, that Karloutsos acted as a "trusted agent" of One World and, in that regard, worked "silently" with Onoufriadis and Rodgers on Plaintiffs' behalf "to research, identify, pursue, develop and consummate American business opportunities and investments for Chaleplis' investment company that was ultimately One World." Compl. ¶¶ 29, 214, ECF No. 1. The Complaint specifically states that Chaleplis felt he could trust Karloutsos because of his close relationship with Onoufriadis, his experience in Greek and American politics, his political and social connections in the U.S., his father's position within the Greek Orthodox Church, and his purported consulting experience. Compl. ¶ 15. This alleged trust Chaleplis placed in Karloutsos is sufficient to state a fiduciary relationship at the motion to dismiss stage. The Karloutsos Defendants' motion to dismiss will therefore be denied as to Counts V-VII of the Complaint.

### 4.   Count VIII: Unjust Enrichment

The elements of unjust enrichment in Pennsylvania are (1) benefits conferred on the defendant by the plaintiff, (2)

appreciation of such benefits by the defendant, and (3)
acceptance and retention of such benefits under such
circumstances that it would be inequitable for defendant to
retain the benefit without payment of value. Stoeckinger v.
Presidential Fin. Corp. of Delaware Valley, 948 A.2d 828, 933
(Pa. 2008) (citing Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super.
Ct. 1993)). "[T]he most significant element of the doctrine is
whether the enrichment of the defendant is unjust." Id. (citing
Styer, 619 A.2d at 350) (emphasis in original).

        The Karloutsos Defendants argue that Plaintiffs fail to
plead facts to plausibly state that they were unjustly enriched.
Their reasoning in this regard mirrors that in their argument
seeking dismissal of Plaintiffs' conversion claim—namely, that
despite what is asserted in the Complaint, the payments received
by the Karloutsos defendants were legitimate. Again, as
discussed with respect to conversion, these counterfactual
arguments do not carry the day at this stage. The allegations
contained in the Complaint, which the Court accepts as true for
the purposes of a 12(b)(6) motion, detail with specificity at
least ten transfers to the Karloutsos Defendants that were not
justified by the initial agreement. Plaintiffs have therefore
stated a plausible claim for unjust enrichment at this stage.

### 5.   Count IX: Accounting

"An equitable accounting is improper where no fiduciary relationship exists between the parties . . . <u>or</u> the plaintiff possesses an adequate remedy at law." <u>Rock v. Pyle</u>, 720 A.2d 137, 142 (Pa. Super. Ct. 1998) (emphasis in original). Moving Defendants argue that Plaintiffs are not entitled to an accounting from Karloutsos because no fiduciary relationship exists between the parties, inter se. Additionally, they contend that Plaintiffs have asserted other legal claims for damages, and therefore, that Plaintiffs have an adequate remedy at law. As explained in section IV(B)(3), above, Plaintiffs have sufficiently pled a fiduciary relationship at this stage. Furthermore, because Plaintiffs are entitled to plead in the alternative, the fact that they have asserted other claims for damages in other counts of the Complaint does not bar this claim. <u>See</u> Fed. R. Civ. P. 8(d)(2). Thus, whether Plaintiffs possess an adequate remedy at law is not ripe for resolution at this stage.

### 6.   Count X: Constructive Trust

In Count X, Plaintiffs seek, inter alia, a constructive trust upon all assets of the Karloutsos Defendants. The Karloutsos Defendants' motion requests that Count X be dismissed because Pennsylvania does not recognize a separate cause of action for constructive trust; rather, constructive trust is an

equitable remedy. <u>See</u> <u>Buchanan v. Brentwood Fed. Sav. and Loan</u> <u>Ass'n</u>, 320 A.2d 117, 126 (Pa. 1974) ("A constructive trust . . . is not really a trust at all but rather an equitable remedy."); <u>Brock & Co., Inc. v. Kings Row Assocs.</u>, No. 04-cv-2096, 2004 WL 2624864, at *5 (E.D. Pa. Nov. 17, 2004) (noting that "a constructive trust is an equitable remedy and not a separate, specific cause of action").

In addition to constructive trust not being recognized as an independent cause of action under Pennsylvania law, Plaintiffs' claim for constructive trust is redundant, as Plaintiffs already request a constructive trust as a remedy for their other claims. As such, rather than grant the motion to dismiss as to Plaintiffs' Count X claim for constructive trust on the merits, the Court will exercise its discretion under Fed. R. Civ. P. 12(f)(1) to strike Count X from the Complaint as a standalone claim. <u>See</u> Fed. R. Civ. P. 12(f)(1).

### 7.   <u>Count XI: Declaratory Judgment</u>

In Count XI, Plaintiffs seek a declaratory judgment adjudicating that Plaintiffs are the rightful title owners of both Karloutsos's house in Virginia and Rodgers' condominium in Philadelphia based on their allegations that Karloutsos and

Rodgers used funds misappropriated from Plaintiffs to pay for them.

There are several problems with Plaintiffs' declaratory judgment claim. First, the allegations that Karloutsos and Rodgers used Plaintiffs' misappropriated funds toward the purchases of their respective homes are too conclusory to satisfy Plaintiffs' pleading standard. The Complaint does not contain any details about Rodgers' personal finances and does nothing to show why he and his wife would not have been able to afford a twenty percent down payment on a townhouse that allegedly cost $491,000. Compl. ¶¶ 178-80. The Complaint similarly alleges that Karloutsos would not have been able to afford a down payment on his home based only on financial disclosures he made over a year before purchasing the home and the amount he made from the sale of his previous residence. These allegations fall short of stating a plausible claim that Plaintiffs are entitled to a judgment on the facts stated that they are the rightful title owners to these properties.

Second, even if Plaintiffs had pled sufficient facts to trace the fruits of the conversion directly into the purchases of Defendants' respective homes, the Court could not declare Plaintiffs sole title owners because they acknowledge that both Rodgers and Chaleplis purchased these homes with conventional mortgage financing. At most, Plaintiffs could be entitled to the

amount of money derived from the stolen funds and used as a down payment. Because the homes were purchased with conventional mortgage financing and no more than a twenty percent down payment was required, any recovery would be limited to the amount of the down payment. See Compl. ¶¶ 175, 180. In any event, the Court could not declare Plaintiffs titled owners of the properties over the senior interests of the holders of the respective mortgages.[3]

Because Plaintiffs have failed to plead a plausible claim for a declaratory judgment, and because the Court finds that any amendment of the claim would be futile, Count XI is dismissed with prejudice.

### 8.   Count XII: Alter Ego

In Count XII, Plaintiffs allege a claim for alter ego to pierce the corporate veil of MAK and hold Karloutsos liable for MAK's actions and conduct in allegedly misappropriating Plaintiffs' funds. Count XII also claims that Rodgers Investments and James M. Rodgers, P.C. are alter egos of

---

[3]     Plaintiffs' request for a declaratory judgment, even if only applied to the misappropriated funds used toward the down payments on the respective homes, would still be improper as duplicative of their other requested relief. "[I]f a party seeks declaratory relief that is redundant with claims already presented, courts may dismiss the claim which seeks declaratory relief for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Carlson v. Amica Mut. Ins. Co., No. 17-cv-4621, 2021 WL 10809978, at *3 (E.D. Pa. Mar. 12, 2018) (citing Malibu Media, LLC v. [Redacted], 705 Fed. Appx. 402, 406 (6th Cir. 2017)). As Plaintiffs already seek money damages pursuant to their remaining claims, a declaratory judgment entitling them to any funds used to purchase Defendants' homes would be "redundant with claims already presented." Id.

Rodgers. The Karloutsos Defendants argue in their 12(b)(6)
motion that Plaintiffs fail to plead facts to support their
alter ego claim.

Under Pennsylvania law, the following factors are
considered in deciding whether to pierce the corporate veil:
"undercapitalization, failure to adhere to corporate
formalities, substantial intermingling of corporate and personal
affairs and use of the corporate form to perpetrate a fraud."
Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)
(quoting Kaites v. Dept. of Envtl. Res., 529 A.2d 1148, 1151
(Pa. Comm. Ct. 1987)).

Count XII alleges that MAK (1) is owned by Karloutsos; (2)
"is operated and managed by Karloutsos"; (3) "has confused,
commingled and intermingled its business assets and business
operations"; (4) "failed to observe any corporate formalities";
(5) "has no corporate records"; (6) "is insolvent except for the
funds misappropriated from [Plaintiffs]"; (7) "had any and all
of its funds and/or [Plaintiffs'] funds siphoned away by
Karloutsos"; (8) "was used to advance Karloutsos' own personal
efforts to misappropriate [Plaintiffs'] funds"; and (9)
"Karloutsos used MAK to perpetrate fraud and conversion upon
[Plaintiffs] as detailed above while having absolutely no
business operations or legitimate business purposes whatsoever

34

for MAK." Compl. ¶ 273. Plaintiffs repeat virtually the same allegations with respect to Rodgers and his companies.

Nearly all the above allegations are conclusions that are unsupported by any alleged facts. The Complaint contains no specific examples of either Karloutsos' or Rodgers' lack of respect for the corporate form. Instead, the Complaint advances a recitation of the factors courts consider in evaluating whether to pierce the corporate veil. As the Supreme Court warned in Twombly, "a formulaic recitation of the elements of a cause of action will not do" to survive a motion to dismiss. Twombly, 550 U.S. at 555.

Plaintiffs have failed to state a plausible claim that MAK, Rodgers Investments, or James M. Rodgers, P.C. are alter egos of either Karloutsos or Rodgers, so the Karloutsos Defendants' motion is granted as Count XII. Because there is no indication that amendment would be futile with respect to this claim, it is dismissed without prejudice and with leave to amend.

### 9.   **Count XIII: Fraud**

To state a claim for fraud under Pennsylvania law, a plaintiff must show "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation;  and (6) the

resulting injury was proximately caused by the reliance." Gibbs
v. Ernst, 647 A.2d 882, 889 (Pa. 1994).

Federal Rule of Civil Procedure 9(b) requires a party to
plead "with particularity the circumstances constituting fraud
or mistake." Fed. R. Civ. P. 9(b). Such particularity in
pleading must be sufficient to "place the defendants on notice
of the precise misconduct with which they are charged[.]"
Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d
786, 791 (3d Cir. 1984), abrogated on other grounds, Williams v.
Medley Opp. Fund II, LP, 965 F.3d 229, 242 (3d Cir. 2020).

Plaintiffs have not satisfied the particularity
requirements of Rule 9(b) in pleading their fraud claim. The
Complaint fails to identify with specificity any fraudulent
representation made by either Karloutsos or Rodgers, claiming
instead that "they at all times advised Chaleplis that the
Medicinal Cannabis Scam was a legitimate business and
investment, and that One World's/Chaleplis' monies would be
and/or were being used to finance that purported opportunity."
Compl. ¶ 277. In lieu of identifying a particular representation
from either defendant, the Complaint relies on the allegation
that "at no time did Onoufriadis, Rodgers and/or Karloutsos ever
disclose to Chaleplis and/or any One World representative that
they were systematically siphoning, diverting, and
misappropriating Plaintiffs [sic] funds behind Plaintiffs' back

36

direct from One World's and Rodgers' IOLTA accounts to themselves and/or their defendant third-party companies." Id. at ¶ 278. These allegations are too vague and conclusory to allow the Court to infer that either Karloutsos or Rodgers specifically made any representation with the intent to defraud plaintiffs.

Moreover, the Complaint provides little detail about Defendants' respective roles in the scheme and leaves unclear how much of the alleged fraud is attributable to non-party Onoufriadis. This method of collective pleading does not satisfy the requirements of Rule 9(b). See In re Supreme Specialties, Inc. Sec. Lit., 438 F.3d 256, 282 (3d Cir. 2006) ("[P]laintiffs' manner of pleading their claim collectively, through blanket allegations against numerous different defendants, runs afoul of the particularity requirements of . . . Rule 9(b).") In short, the allegations supporting Plaintiffs' fraud claim fail to place each defendant individually "on notice of the precise misconduct with which [he is] charged[.]" Seville Indus. Mach. Corp., 742 F.2d at 791.

Because Plaintiff's fraud claim is not pled with sufficient particularity under Rule 9(b), the Karloutsos Defendants' motion will be granted as to Count XIII. Due to the possibility that Plaintiffs may add additional facts to support a claim for

fraud, it is dismissed without prejudice and with leave to amend.

### C. Rodgers Defendants' Motion to Dismiss under R. 12(b)(6)

Most of the Rodgers Defendants' 12(b)(6) motion is essentially an unacknowledged word-for-word copy of Karloutsos' motion to dismiss in the SDNY case. The plagiarism is apparent given that (a) Rodgers failed to change out the references to Karloutsos on pages 5 and 9 of the brief (e.g., the brief states "Plaintiffs Fail to State an Unjust Enrichment Claim Against Karloutsos" rather than "Plaintiffs Fail to State an Unjust Enrichment Claim Against Rodgers"); (b) the brief clearly addresses the claims in the SDNY complaint, rather than the instant Complaint (e.g., page 9 states that "Count VII of the complaint purports to state an unjust enrichment claim against all defendants," but Count VII of this Complaint is actually a breach of fiduciary claim); and (c) the brief fails to cite to a single Pennsylvania, Eastern District of Pennsylvania, or Third Circuit case, instead relying on the New York, Southern District of New York, and Second Circuit cases cited in Karloutsos's SDNY brief.

The Court does not take Rodgers' plagiarism lightly. Rodgers is a member of the Pennsylvania Bar and is thus subject to the Pennsylvania Rules of Professional Conduct. An

unacknowledged appropriation of another lawyer's work for use in court is prohibited by Rule 3.3, which requires candor to the tribunal, and is sanctionable conduct under Fed. R. Civ. P. 11. See generally Conboy v. United States Small Bus. Admin., 992 F.3d 153, 158 (3d Cir. 2021) ("[T]he copy-and-paste jobs before us reflect a dereliction of duty, not an honest mistake.").

In any event, as Rodgers' 12(b)(6) motion cites to no Pennsylvania, Eastern District of Pennsylvania, or Third Circuit authority applicable to the present action, the motion will be denied.

### D.   Karloutsos Defendants' Motion under Fed. R. Civ. P. 12(b)(7), 12(f), 19, and 28 U.S.C. § 1404

This motion by the Karloutsos Defendants makes three main arguments: (1) that Onoufriadis, who was not joined to this action as a defendant, is a necessary and indispensable party under Fed. R. Civ. P. 19, which requires the Court to dismiss the action according to Fed. R. Civ. P. 12(b)(7); (2) that, alternatively, the Court should transfer the case to the Southern District of New York according to 28 U.S.C. § 1404; and (3) that the Court should strike certain language from paragraphs 24 and 61 of the Complaint pursuant to Fed. R. Civ. P. 12(f). For the reasons enumerated below, all three arguments are unpersuasive.

1.   **Necessary and Indispensable Party**

In analyzing whether the joinder of a party is compulsory under Rule 19, a district court first determines whether the absent party should be joined as a necessary party under Rule 19(a). See Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d. Cir. 2007). If the absent party is necessary, but their joinder is not feasible (i.e. it will defeat diversity of citizenship), the court next determines whether the party is indispensable under Rule 19(b). See id. When a necessary and indispensable party's joinder is not feasible, the court may dismiss the action. Fed. R. Civ. P. 19(b).

Onoufriadis is not a necessary party under Rule 19(a). An absent party is necessary if:

> (A)   in the person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
>> (i)   as a practical matter impair or impede the person's ability to protect that interest; or
>>
>> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1).

Karloutsos first argues that Onoufriadis is a necessary party because, as the "mastermind" of the alleged scheme, the court "cannot afford complete relief among existing parties."

40

Id. at 19(a)(1)(A). But this argument ignores clear Third
Circuit precedent "that [Rule] 19 does not require the joinder
of joint tortfeasors." Lomando v. United States, 667 F.3d 363,
384 (3rd Cir. 2011) (citation omitted); see also Temple v.
Synthes Corp., 498 U.S. 5, 7 (1990) ("It has long been the rule
that it is not necessary for all joint tortfeasors to be named
as defendants in a single lawsuit."). And contrary to
Karloutsos' assertions, the doctrine of joint and several
liability allows the Court to grant full relief to the
Plaintiffs in this action even in the absence of Onoufriadis.

Karloutsos further argues that Onoufriadis is a necessary
party under Rule 19(a)(1)(B)(ii) because the possibility of
future actions for contribution between the named defendants and
Onoufriadis subjects existing parties to "a substantial risk of
incurring double, multiple, or otherwise inconsistent
allegations because of [his] interest." Fed. R. Civ. P.
19(a)(1)(B)(i). But this is again inconsistent with Third
Circuit precedent, which states that Rule 19 does not require
the joinder of persons against whom named parties may have a
later claim for contribution. See Bank of Am. Nat. Tr. & Sav.
Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 (3d Cir.
1988) ("A defendant's right to contribution . . . from an absent
non-diverse party does not render that absentee indispensable
pursuant to Rule 19.").

As Onoufriadis is not a necessary party under Rule 19(a), the Court need not consider whether he is an indispensable party under Rule 19(b). But even if Onoufriadis were a necessary party under Rule 19(a), he is not an indispensable party. Rule 19(b) instructs courts to consider the following four factors in determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The first two factors overlap with the "necessary party" analysis in Rule 19(a). And again, potential future actions for contribution or indemnity from absent non-diverse parties do not render those parties indispensable. See Bank of Am. Nat. Tr. & Sav. Ass'n, 844 F.2d at 1054. The third factor also weighs against Karloutsos, as the doctrine of joint and several liability allows complete relief to be afforded to Plaintiffs even in Onoufriadis' absence. The fourth factor is the only one that may weigh in favor of indispensability, because Plaintiffs

42

could presumably bring the action in Pennsylvania state court if it were dismissed for nonjoinder. But taken as a whole, the Rule 19(b) factors require a finding that even if Onoufriadis is a necessary party under Rule 19(a), he is not indispensable. Accordingly, Karloutsos' request that the Court dismiss the case pursuant to Rule 19 will be denied.

The Rodgers Defendants also filed a motion to dismiss for failure to join an indispensable party (ECF No. 42) that tags along with the arguments made in Karloutsos' motion. As such, the preceding analysis also applies to Rodgers Defendants' motion, and it will also be denied.

### 2.  Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Once it has been established that another forum would be proper, the defendant bears the burden of showing, on the balance of public and private factors, the considerations weigh strongly in favor of transfer." Aamco Transmission, Inc. v. Johnson, 641 F. Supp. 2d 464, 466 (E.D. Pa. 2009) (internal quotation marks omitted); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.

43

1995) ("The burden of establishing the need for transfer still rests with the movant.").

The well-rehearsed factors to be considered include: (a) as to public factors, (1) the enforceability of judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases; (b) as to private factors, (1) the plaintiffs' forum choice, (2) the defendants' preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties according to their relative physical and financial condition, (5) the convenience of the witnesses, and (6) the location of books and records. See Jumara, 55 F.3d at 879-880.

Karloutsos argues the action should be transferred because (a) most of the business meetings between the parties allegedly occurred in New York and (b) because most of the parties and potential witnesses are not currently residents of Pennsylvania. However, as Judge McMahon noted in her opinion dismissing the case from the Southern District of New York, none of the parties are New York residents. One World, LLC, 2021 WL 184400, at *14. Given this fact, Karloutsos' choice of forum is entitled to no

44

weight. To the contrary, the fact that the allegedly fraudulent transfers of funds happened within the Eastern District of Pennsylvania, and that at least one of the parties resides in this district, this district has at least as much of a connection with the case as exists in the Southern District of New York, if not more. In sum, Karloutsos has fallen well short of satisfying his burden of showing that the public and private factors weigh in favor of transfer. His motion to transfer venue will be denied.

### 3.   Motion to Strike Language from Paragraphs 24 and 61 of the Complaint

Karloutsos' motion to strike is untimely. Rule 12(f)(2) allows courts to strike redundant, immaterial, impertinent, or scandalous matters from pleadings "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Karloutsos' motion to strike was filed over two months after his first motion to dismiss (ECF No. 15), which served as his response to the Complaint. As such, the motion was not filed within the time allotted by Rule 12(f)(2), so it will be denied.

### E.   Rodgers' Motion for Sanctions

Rule 11(b)(1) prohibits a party or attorney from presenting an argument "for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The Rodgers Defendants' motion for sanctions argues that (1) Plaintiffs and their counsel are using this action to improperly intimidate, discredit, and retaliate against Rodgers for reporting to Chaleplis that Rodgers suspected Chaleplis was using One World for criminal conduct, namely, manufacturing fake invoices to facilitate bank transfers; (2) Plaintiffs are improperly using judicial process to manufacture diversity jurisdiction because the SDNY case was dismissed for lack of diversity jurisdiction and the case has now been filed here without the defendant (Onoufriadis) that would defeat diversity jurisdiction; (3) Plaintiffs have engaged in abusive litigation tactics for failing to inform Rodgers of subpoenas of his banking records and corporate filings stemming from related actions in Boston; and (4) Plaintiffs failed to properly investigate.

These arguments are all at best premature. For example, as previously discussed, Plaintiffs were not required to join Onoufriadis as a defendant in this action, so his omission does not constitute "manufacturing diversity jurisdiction." Furthermore, many of Rodgers' arguments are based on disputed facts, which the Court cannot properly consider at this stage. Rodgers' motion for sanctions is consequently denied.

V.    **CONCLUSION**

For the foregoing reasons, the Karloutsos Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 20) will be granted as to Counts XI (declaratory judgment), XII (alter ego), and XIII (fraud) and denied as to the remainder of Plaintiff's claims. Count XI (declaratory judgment) will be dismissed with prejudice. Counts XII (alter ego) and XIII (fraud) will be dismissed without prejudice and with leave to amend.

Count X of the Complaint (constructive trust) will be stricken pursuant to Fed. R. Civ. P. 12(f)(1).

The remaining motions to dismiss, transfer venue, strike, or award sanctions (ECF Nos. 15, 19, 23, 40, 42) will be denied.

An appropriate order follows.