IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GABRIEL CHALEPLIS, et al.     :     CIVIL ACTION
                              :     NO. 21-1492
          Plaintiffs,         :
     v.                       :
                              :
MICHAEL KARLOUTSOS, et al.,   :
                              :
          Defendants.         :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      June 27, 2022

I.    **INTRODUCTION**

     One World, LLC and Gabriel Chaleplis, its sole member

(collectively, "Plaintiffs"), bring this action against

defendants James M. Rodgers, Esq., Rodgers Investments, and

James M. Rodgers, P.C. (collectively the "Rodgers Defendants"),

and Michael Karloutsos and his company, MAK Consulting, LLC

(collectively the "Karloutsos Defendants").

     There are currently four motions pending in this case: (1)

a motion to dismiss and strike the Amended Complaint filed by

the Karloutsos Defendants; (2) a motion to dismiss and strike

filed by the Rodgers Defendants; (3) a motion for an order

releasing escrowed funds filed by the Karloutsos Defendants; and

(4) a motion to quash a subpoena filed by the Karloutsos

Defendants.

     For the reasons set forth below, the Karloutsos Defendants'

motion to dismiss and strike will be granted in part and denied

1

in part, the Rodgers Defendants' motion to strike and dismiss will be denied, the Karloutsos Defendants' motion for an order releasing escrowed funds will be granted in part and denied in part, and the Karloutsos Defendants' motion to quash will be granted in part and denied in part.

## II.  BACKGROUND

Plaintiffs allege that Defendants induced Chaleplis to invest €10,750,000 (approximately $12,000,000) of One World, LLC funds in Greek companies controlled by Defendants' associates, who then rerouted the funds back to Defendants in the United States where they misappropriated them for personal use. The facts and background of this case are set forth extensively in the Court's prior memorandum on the pending motions to dismiss and will not be fully reiterated here. See Memorandum at 3-14, ECF No. 55. The background relevant to the present motions is set forth briefly below.

Prior to the start of this case, Plaintiffs filed a memorandum of lis pendens in Virginia state court against Karloutsos' Virginia home. On October 28, 2021, the parties executed an escrow agreement, which this Court enforced as a consent order, pursuant to which Plaintiffs agreed to discharge the lis pendens on Karloutsos' home to allow Karloutsos to sell the home, and Karloutsos agreed to place the proceeds of the sale in escrow pending the outcome of the case.

After the initial complaint was filed in this case and Defendants moved to dismiss, the Court dismissed three counts of the complaint: Count XI, which sought a declaratory judgment adjudicating that Plaintiffs were the rightful title owners of Karloutsos' and Rodgers' homes, was dismissed with prejudice; Count XII, which brought a claim for alter ego, was dismissed without prejudice and with leave to amend; and Count XIII, which brought a claim for fraud, was also dismissed without prejudice and with leave to amend. Pursuant to Federal Rule of Civil Procedure 12(f)(1), the Court also struck Count X, which purported to bring a claim for a constructive trust, because it found that constructive trust was not recognized as an independent claim under Pennsylvania law.

On February 18, 2022, Plaintiffs filed their Amended Complaint, which brings eleven counts: (I) conversion as to all defendants; (II) conspiracy to commit conversion as to all defendants; (III) aiding and abetting conversion as to all defendants; (IV) breach of One World LLC operating agreement as to Rodgers; (V) breach of fiduciary duty of loyalty as to Rodgers and Karloutsos; (VI) breach of the fiduciary duty of care as to Rodgers and Karloutsos; (VII) breach of fiduciary duty - usurping corporate opportunity as to Karloutsos and Rodgers; (VIII) unjust enrichment as to all defendants; (IX) accounting as to Rodgers and Karloutsos; and (X) legal fraud and

3

fraud in the inducement as to Rodgers and Karloutsos; and (XI) conspiracy to commit legal fraud and fraud in the inducement as to Karloutsos and Rodgers. Plaintiffs did not elect to replead their alter ego claim, but the "prayer for relief" in the Amended Complaint includes a request for a judgment "piercing the corporate veils of MAK, Rodgers Investments and JMR PC to hold Rodgers and Karloutsos personal[ly] liable for the actions of those companies . . . ." Am. Compl. at 80 ¶ (g), ECF No. 59.

On March 15, 2022, though discovery had not officially commenced in this case given that no scheduling order had yet been entered, the Karloutsos Defendants filed a motion to quash Plaintiffs' subpoena. The subpoena in question is directed at Wells Fargo Bank and seeks broad discovery of banking information for the Karloutsos Defendants as well as Karloutsos' non-party company, Ask4MAK LLC. The Court stayed the subpoena and took the motion under advisement until such time as a scheduling order issued in this case.

The Karloutsos Defendants' motion to dismiss and strike, motion for release of escrowed funds, and motion to quash, and the Rodgers Defendants' motion to dismiss and strike are fully briefed and were argued at a hearing on May 31, 2022.

## III. LEGAL STANDARDS

### A.   Motion to Dismiss

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See,

e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.   Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "[S]triking a portion of a pleading is a drastic remedy," and Rule 12(f) motions "are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2021). To succeed on a motion to strike, a movant must show that "the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration" and that "their presence in the

pleading throughout the proceeding will be prejudicial to the moving party." Id.

## IV. DISCUSSION

### A. Karloutsos Defendants' Motion to Dismiss and Strike

The Karloutsos Defendants' motion to dismiss and strike makes four requests for relief: (1) that the Court dismiss Plaintiffs' fraud claim, as set forth in Count X of the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6); (2) that the Court strike, pursuant to Fed. R. Civ. P. 12(f), any request to impose alter ego liability upon Karloutsos from the Amended Complaint; (3) that the Court strike the portion of Plaintiffs' prayer for relief that seeks the imposition of a constructive trust; and (4) that the Court strike portions of paragraph 32 and 73 of the Amended Complaint on the grounds that they contain immaterial, impertinent, and scandalous material.

#### 1. Motion to Dismiss Plaintiffs' Fraud Claim

To state a claim for fraud under Pennsylvania law, a plaintiff must show "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).

7

Federal Rule of Civil Procedure 9(b) requires a party to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such particularity in pleading must be sufficient to "place the defendants on notice of the precise misconduct with which they are charged[.]" Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), abrogated on other grounds by Williams v. Medley Opp. Fund II, LP, 965 F.3d 229, 242 (3d Cir. 2020). In order to satisfy the particularity standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

The Amended Complaint sets forth two theories for Plaintiffs' fraud claim against Karloutsos and Rodgers. First, Plaintiffs aver that both Karloutsos and Rodgers made fraudulent misrepresentations to Chaleplis regarding their experience and connections upon which Chaleplis justifiably relied in deciding to go into business with them. And second, Plaintiffs assert that Karloutsos and Rodgers each made material misrepresentations and/or omissions regarding the formation of medicinal cannabis companies which Chaleplis relied upon in making his investments into those companies. As set forth below, the Court finds that both of these theories have been

sufficiently pled to support Plaintiffs' fraud claim at this stage.

As the basis for the first theory, the Amended Complaint identifies a number of statements Karloutsos and Rodgers made to Chaleplis regarding their experience and qualifications in order to induce Chaleplis to do business with them. For example, Plaintiffs allege that Karloutsos told Chaleplis on September 29, 2017 that he had the requisite connections to involve Chaleplis in certain investments in, inter alia, "oil refineries in Pennsylvania and Texas, e-sports, sports betting/online gaming in Louisiana, Mississippi and Nevada," and "becoming an investor in the Miami Marlins MLB baseball team as part of Derek Jeter's and/or Jeb Bush's investment group." Am. Compl. ¶ 19. Karloutsos also allegedly represented to Chaleplis that he was networked with a number of individuals who were capable of "altering, changing, and/or navigating the casino gaming and online gaming laws in Nevada, Louisiana and/or Mississippi" and "obtaining a Nevada gaming license for online sports betting and online casino operations." Id. ¶¶ 20-21. As to Rodgers, Plaintiffs' allegations include that he attested to the veracity of the foregoing representations from Karloutsos and further represented to Chaleplis that he and Karloutsos "had a very successful track record of obtaining such desired results for clients in the areas of gaming, e-sports betting, petro-chemical

9

investments, traditional market investments and pre-IPO investments." Id. ¶ 46. Plaintiffs further allege that these representations from Karloutsos and Rodgers were false and that if not for these statements, Chaleplis would not have agreed to conduct business with either of them.

The Karloutsos Defendants argue that the above allegations do not sufficiently form the basis of a fraud claim because "the Amended Complaint does not explain what was false about those paraphrased, alleged statements." Def's Mot. at 14, ECF No. 62-1. They assert that these representations are "at most" an overstatement of the likelihood of the success of a number of business ventures, which, standing alone, does not amount to a fraudulent misrepresentation. Id. at 14-15 (citing Aircraft Repair Servs. v. Stambaugh's Air Serv. Inc., 175 F.3d 314, 322 (3d Cir. 1999) ("An overstatement alone is insufficient to prove bad faith or fraud in the absence or evidence of some element of overreaching, fraud, imposition or lack of good faith.") (citation and internal quotation marks omitted)). But this argument mischaracterizes Plaintiffs' allegations. Plaintiffs allege more than just an overstatement of the likelihood of success of these investments; they allege that Karloutsos and Rodgers told Chaleplis they had certain connections and a demonstrated history of successful investments that they did not actually have. At this stage, taking the allegations in the

Amended Complaint as true and in the light most favorable to
Plaintiffs, the Court finds that Plaintiffs have adequately pled
that Karloutsos and Rodgers made fraudulent representations
regarding their connections and experience.

The Karloutsos Defendants next argue in their motion that
Plaintiffs have not pled that any injury was proximately caused
by Defendants' alleged misrepresentations regarding their
connections and experience. In determining whether a particular
act is the proximate cause of an injury, Pennsylvania courts
apply the "substantial factor" test as stated in the Restatement
Second) of Torts. See Heeter v. Honeywell, Int. Inc., 195 F.
Supp. 3d 753, 758 (E.D. Pa. 2016) (citing Whitner v. Von Hintz,
263 A.2d 889, 893-94 (Pa. 1970)). In deciding whether particular
conduct is a substantial factor in bringing about an identified
harm such that the conduct is the proximate cause of the harm,
courts consider (1) the number of factors other than the actor's
conduct that contributed to the harm, and the extent of their
contribution, (2) whether the conduct created a force that was
in continuous operation up to the time of the harm, or created a
situation that is harmless unless acted upon by other forces for
which the actor is not responsible, and (3) the lapse of time
between the conduct and the harm. Id. at 759 (first citing
Vattimo v. Lower Bucks Hosp., Inc., 465 A.2d 1231, 1234 (Pa.
1983) and then citing Restatement (Second) of Torts § 433).

11

Plaintiffs have adequately pled that Karloutsos' and
Rodgers' alleged representations regarding their experience and
capabilities proximately caused Plaintiffs' injuries. According
to the allegations in the Amended Complaint, the factors
contributing to the harm alleged (i.e. the loss of Plaintiffs'
investment funds) were all a result of the actions of Karloutsos
and Rodgers. And Plaintiffs plainly allege that the
misrepresentations regarding Defendants' qualifications created
a business relationship which was "in continuous and active
operation up to the time of the harm." Id. As to the final
factor, the Court finds the proximity alleged between these
misrepresentations and the start of the conversion of
Plaintiffs' funds—which was less than one year—also weighs in
favor of a finding of proximate cause based on the nature of the
injury alleged here.

The second theory Plaintiffs advance to support their fraud
claim is that Karloutsos and Rodgers knowingly made false
representations to Chaleplis to induce him to invest in Greek
medicinal cannabis companies, which were allegedly made for the
purpose of misappropriating Chaleplis' investment funds for
themselves. Plaintiffs also advanced this theory as a fraud
claim in the initial complaint, which this Court dismissed
because the Plaintiffs did not specify which representations

12

were made by which defendant or provide adequate clarity as to the Defendants' respective roles in the alleged scheme.

The Amended Complaint adds supporting facts to Plaintiffs' fraud claim that were absent from the initial complaint. Plaintiffs specifically allege that at a March 22, 2018 meeting, Karloutsos explained to Chaleplis, inter alia, the requirements for establishing a Greek medical cannabis company, how much capital was required for the investment, and Chaleplis' investment funds would be used. See Am. Compl. ¶¶ 86-94, ECF No. 59. While these representations are also attributed to non-party Nikolaos Onoufriadis who was present at the meeting, the Amended Complaint further alleges that Karloutsos met with Chaleplis alone on July 30, 2018 and September 18, 2018 in Athens, Greece. Plaintiffs aver that at that meeting, Karloutsos represented that all plans for Chaleplis' investment were proceeding as scheduled. According to the Amended Complaint, these representations were false and made with the intent to mislead Chaleplis.

As to Rodgers, the Amended Complaint alleges, inter alia, that he specifically proposed a plan for how he would structure Plaintiffs' investment transfers as "convertible notes" to become equity in the newly formed Greek companies. Id. ¶ 94. According to the Amended Complaint, Rodgers "never had any intention of preparing any such promissory notes as

13

'convertible' notes to secure Plaintiffs' funds transferred to Greek companies," but only made these representations in order to "collectively put Plaintiffs' investment proceeds beyond Plaintiffs' reach once the funds were transferred to the Greek companies." Id. ¶ 95.

Because the Amended Complaint provides sufficient detail regarding the allegedly fraudulent misrepresentations made by both Karloutsos and Rodgers, the Court finds that Plaintiffs' fraud claim now satisfies the particularity requirement of Rule 9(b). Given that Plaintiffs have plausibly alleged that both Karloutsos and Rodgers intentionally made false representations to Chaleplis, that Chaleplis justifiably relied upon these statements in transferring investment funds pursuant to the scheme alleged, and that the ultimate loss of those investment funds was proximately caused by Defendants' statements, Plaintiffs have stated a valid fraud claim against Karloutsos and Rodgers. Karloutsos' motion to dismiss will therefore be denied as to this claim.

### 2. Motion to Strike Plaintiffs' Request for Alter Ego Liability and a Constructive Trust

The Karloutsos Defendants next request that the Court strike the Amended Complaint's prayers for alter ego liability and a constructive trust over Defendants' assets. They argue that the Court should strike this requested relief given that

the Court dismissed Plaintiffs' alter ego claim and struck their constructive trust claim from the initial complaint. The Karloutsos Defendants further argue that Plaintiffs' request for a constructive trust should be stricken because the Amended Complaint does not adequately "trace any of [P]laintiffs' funds to any asset owned by or in the pos[session] of Karloutsos or MAK," which they argue is a necessary element for the imposition of a constructive trust. Def's Mot. at 21, ECF No. 62-1.

In making these arguments, the Karloutsos Defendants improperly seek to impose the pleading standards for claims on Plaintiffs' requests for relief. A plaintiff's claims are governed by Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The Supreme Court has clarified that this rule requires "[f]actual allegations" that "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. But the standard set forth in Twombly and its progeny does not apply to a plaintiff's requests for relief, which are government by Rule 8(a)(3). See Fed. R. Civ. P. 8(a)(3) (a pleading must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief"). Defendants cite no authority, and the Court is aware of none, that states that a demand for relief sought

15

must be accompanied by such specific factual allegations at the
pleading stage.

Under Pennsylvania law, the equitable remedy of alter ego,
also referred to as piercing the corporate veil, is available
"to prevent fraud, illegality or injustice or when recognition
of the corporate entity would defeat public policy[.]" See
Village at Camelback Property Owners Assn. Inc. v. Carr, 538
A.2d 528, 533 (Pa. Super. Ct. 1988). A court applying
Pennsylvania law "may impose a constructive trust as a remedy to
prevent the unjust enrichment of one party." Moreland v.
Metrovich, 375 A.2d 772, 776 (Pa. Super. Ct. 1977) (collecting
cases). Given that Plaintiffs have stated claims for fraud and
unjust enrichment, and that Pennsylvania recognizes the remedies
of alter ego and constructive trust in connection with these
claims, the Court will deny the Karloutsos Defendants' motion to
strike Plaintiffs' request for these remedies.

### 3.   Motion to Strike Language From Paragraphs 32 and 73 of the Amended Complaint

The Karloutsos Defendants next move to strike language from
paragraphs 32 and 73 of the Amended Complaint that they argue
are immaterial to the claims at issue in this case and unfairly
prejudicial. See Chan v. Barbour, Inc., 263 F. Supp. 3d 521, 524
(E.D. Pa. 2017) (citing Dann v. Lincoln Nat'l Corp., 274 F.R.D.
139, 142-43 (E.D. Pa. 2011) (stating that a motion to strike may

be granted when "the allegations have no possible relation to
the controversy and may cause prejudice to one of the parties,
or if the allegations confuse the issues")).

Paragraph 32 alleges, inter alia, that Karloutsos
"commenced his State Department position financially reeling
from a scandalous business endeavor and significant related debt
loads." Am. Compl. ¶ 32. It alleges in further detail that
Karloutsos became "embroiled in major scandals and corrupt
business dealings" in connection with his operating the
Waterworks Restaurant in Philadelphia. Id. The Court agrees with
the Karloutsos defendants that reference to these "corrupt
business dealings" is immaterial to the claims at issue in this
case and may be unfairly prejudicial to Karloutsos. These
portions of paragraph 32 will therefore be stricken from the
Amended Complaint. Paragraph 32 will accordingly now read as
follows:

> 32. Karloutsos sold his former residence at 1462 Hagys
> Ford Road, Penn Valley, Pennsylvania outside of
> Philadelphia for $847,500 on or about September 8, 2017
> after commencing his State Department. [sic] The
> original face amount of the mortgage on that home at the
> time of sale was $678,000. Notably, when Karloutsos and
> his wife purchased that home, they used a $608,000
> purchase money mortgage. Their mortgage debt thus
> increased while they lived there between 2011 and 2017,
> and while owning/operating the city-owned Waterworks
> Restaurant in Philadelphia.

Id.

Paragraph 73 of the Amended Complaint alleges that Karloutsos "became involved in another private scandal" stemming from his involvement in the attempted purchase of a Greek national insurance company, which caused his departure from his position at the U.S. State Department. Id. ¶ 73. It further alleges that Karloutsos "continued 'working' on One World's behalf after leaving the State Department. The Court agrees that Plaintiffs' reference to this second "private scandal" is immaterial to the claims at issue in this case and should be stricken. But the Court declines to strike the allegation that Karloutsos continued working for One World during this time, given that this allegation is repeated throughout the Amended Complaint. See, e.g., id. ¶¶ 71-72. Consequently, paragraph 73 of the Amended Complaint will now read as follows:

> 73. On December 17, 2017, Karloutsos nevertheless left his position at the U.S. State Department after less than half a year. Nevertheless, he continued "working" on One World's behalf to purportedly identify and create alleged "investment and business opportunities" for One World and Chaleplis that he and Rodgers were not capable of producing or facilitating.

Id. ¶ 73.

### B.   Rodgers Defendants' Motion to Dismiss and Strike

The Rodgers Defendants' motion makes four requests: (1) that the Court dismiss with prejudice Plaintiffs' Count IV claim for Breach of One World Operating Agreement; (2) that the Court dismiss Plaintiffs' Count X Fraud claims; (3) that the Court

18

strike Plaintiffs' request for an imposition of a constructive trust; and (4) that the Court strike the portion of the Amended Complaint's prayer for relief that seeks to impose alter ego liability upon Rodgers. The second, third, and fourth requests are duplicative of the Karloutsos Defendants' motion, and the Rodgers Defendants advance no independent basis for these requests, so they are denied for the reasons stated in the preceding section. See supra Section IV.A.

As to the motion's first request, the Rodgers Defendants argue that Plaintiffs' claim for breach of One World's operating agreement against Rodgers should be dismissed because Rodgers himself was not a signatory to the agreement. While it is true that Rodgers is not a signatory to the agreement, "courts interpreting common law contract principles agree that 'a party may adopt and be bound to a contract to which it was not originally a signatory.'" Camp Ne'er Too Late, LP v. Swepi, LP, 185 F. Supp. 3d 517, 542 (M.D. Pa. 2016) (quoting Am. Legacy Found. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 640 F. Supp. 2d 524, 538 (D. Del. 2009), aff'd sub nom Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 623 F.3d 135 (3d Cir. 2010)).

A third party to a contract becomes a party to a contract who is bound by a contract's terms "by either explicitly or implicitly adopting the agreement." Id. (citation omitted); see

19

also generally Am. Legacy Found. v. Lorillard Tobacco Co., 831
A.2d 335, 343-44 (Del. Ch. 2003) ("One does not have to be a
signatory to a contract, however, to become bound by it. Third
parties to an agreement may become parties to it, and thus bound
by it, by either expressly or implicitly adopting the
agreement.") (collecting cases). "Courts will often find
implicit adoption when a party who has received benefits of a
contract then tries to avoid burdens imposed by the same
contract." Id. (citation omitted); see also Lehigh Valley
Transit Co. v. Zanes, 46 F.2d 848, 849 (3d Cir. 1931) (quoting
Wiggins Ferry Co. v. Ohio & M.R. Co., 142 U.S. 396, 408 (1892)
("If a person conduct[s] himself in such manner as to lead the
other party to believe that he has made a contract his own . . .
he will not be permitted afterwards to repudiate any of its
obligations.")).

Because the operating agreement appoints Rodgers as a
"member" of One World as Corporate Secretary and Chief Legal
Counsel, and Plaintiffs allege that Rodgers accepted payment for
this appointed role, the Amended Complaint contains sufficient
facts to support an inference that Rodgers was bound by the
operating agreement even as a non-signatory third party. The
Rodgers Defendants' motion to dismiss Count IV will be
accordingly denied.

**C.    Motion to Release Escrowed Funds**

The Karloutsos Defendants next move for an order releasing the proceeds from the sale of his Virginia home, which are currently held in escrow pursuant to the escrow agreement enforced by the Court. They reassert their argument that Plaintiffs are not entitled to a constructive trust on Karloutsos' assets, and that Plaintiffs therefore have no cognizable interest in the proceeds of the sale of Karloutsos' home. However, as explained above in section IV.A.2, Plaintiffs' request for a constructive trust on Karloutsos' assets has been adequately pled in connection with their unjust enrichment claim and will remain in the Amended Complaint. Therefore, the Court cannot find that Plaintiffs have no interest in the funds held in escrow at this stage.

However, in the Court's memorandum on the prior motions to dismiss, the Court held that because Plaintiffs acknowledge that Karloutsos purchased his home with conventional mortgage financing, Plaintiffs' potential interest in the home was necessarily limited to, at most, the amount of stolen funds used as a down payment on the home. The sale of Karloutsos' home and the parties' subsequent escrow agreement did nothing to change the limit on that potential interest. Therefore, even at this stage, it is clear that Plaintiffs' interest in the escrowed funds cannot exceed the amount of Karloutsos' down payment on

the Virginia home. Based on the allegations of the Amended Complaint, that amount is $318,000.[1] The motion to release the escrowed funds will therefore be granted in part and denied in part;[2] the Court will order that $318,000 remain in escrow[3] and the remaining funds, if any, be released.

**D.    Motion to Quash Plaintiffs' Subpoena**

The Karloutsos Defendants next move to quash Plaintiffs' "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" dated March 8, 2022 and issued to Wells Fargo Bank (the "Subpoena"), and, in addition and/or alternatively, for a protective order pursuant to Fed. R. Civ. P. 26(c). They argue that the subpoena is unnecessary, overbroad, unduly burdensome, and outside the scope of discovery for Plaintiffs' claims.

In complex litigation of this sort, an orderly process of gathering evidence is essential. Given that much, if not all, of the information requested in the Subpoena would be available from the Defendants in this case, the Court finds that

---

[1]    According to the Amended Complaint, Karloutsos purchased the Virginia home for a total sale price of $1,270,000 but used mortgage financing in the amount of $952,000. By subtracting the mortgage amount from the total sale price, the Court arrived at the down payment amount of $318,000.

[2]    The Karloutsos also move for sanctions on Plaintiffs and their counsel based on their conduct in filing the lis pendens on the Virginia home and their later refusal to release the escrowed funds. The Court finds that no sanctions are warranted here, so it will deny this request.

[3]    Whether the balance of the escrowed funds is traceable to the alleged fraud the Court leaves for another day on a more developed record.

Plaintiffs should first seek the relevant discovery from the parties to this matter before involving third-party Wells Fargo. See Spring Pharms., LLC v. Retrophin, Inc., No. 18-cv-4553, 2019 WL 3731725, at *4 (E.D. Pa. Aug. 8, 2019) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party. Accordingly, [a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.") (citation and internal quotation marks omitted).

The Karloutsos Defendants' motion to quash the subpoena will therefore be granted in part, and the Subpoena will be quashed without prejudice. At this time, the Court need not reach the issue of whether the Subpoena is substantively improper under the relevant rules. These issues may be litigated at a later date, if appropriate. The Court accordingly denies Defendants' request to issue a protective order against the Subpoena's enforcement at this time.

V.    **CONCLUSION**

For the foregoing reasons, the Karloutsos Defendants' motion to dismiss and strike will be granted in part and denied in part, the Rodgers Defendants' motion to strike and dismiss will be denied, the Karloutsos Defendants' motion for an order releasing escrowed funds will be granted in part and denied in

part, and the Karloutsos Defendants' motion to quash will be granted in part and denied in part.

An appropriate order follows.