IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Gabriel Chaleplis,  et al., | : | CIVIL ACTION |
| | : | NO. 21-1492 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Michael Karloutsos, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    April 18, 2023

### I.    INTRODUCTION

One World, LLC and Gabriel Chaleplis, its sole member
(collectively, "Plaintiffs"), initially brought this action
against defendants James M. Rodgers, Esq., Rodgers Investments,
and James M. Rodgers, P.C. (collectively the "Rodgers
Defendants"), and Michael Karloutsos and his company, MAK
Consulting, LLC (collectively the "Karloutsos Defendants").

Plaintiffs allege that Defendants induced Chaleplis to
invest €10,750,000 (approximately $12,000,000) of One World, LLC
funds in Greek companies controlled by Defendants' associates,
who then rerouted the funds back to Defendants in the United
States where they misappropriated them for personal use.

Before the Court is Plaintiffs' motion to dismiss the
Rodgers Defendants' Counterclaim. The Counterclaim alleges that

Plaintiffs violated federal and Delaware whistleblower protections by terminating Rodgers' position with One World after he reported possible violations of money laundering to Chaleplis.  It further claims that Plaintiffs improperly filed suit against Rodgers in the instant case. Accordingly, the Counterclaim contains six counts: (I) retaliation against a whistleblower in violation of the Federal Anti-Money Laundering Act, 31 U.S.C. § 5323(g); (II) retaliation against a whistleblower in violation of the Delaware Whistleblower Protection Act, DEL. CODE ANN. tit. 19, §§ 1701-04 (2004); (III) accounting; (IV) malicious prosecution; (V) intentional infliction of emotional distress; and (VI) negligent infliction of emotional distress. <u>See</u> Rodgers' Answer to Pl.'s Am. Compl. & Countercl. 42-47, ECF No. 81 [hereinafter "Countercl."]. For the following reasons, Plaintiffs' motion to dismiss and strike the Rodgers Defendants' counterclaim will be granted in part and denied in part.

## II.  FACTUAL BACKGROUND

The factual background of this case is set forth extensively in the Court's prior memorandums on the first and second rounds of motions to dismiss. <u>See</u> Mem. Op. 3-14, ECF No. 55; Mem. Op. 2-4, ECF No. 76. The facts relevant to Plaintiffs'

Motion to Dismiss the Rodgers Defendants' Counterclaim are laid out below.[1]

On September 30, 2017, Plaintiffs and non-party Nicoloas Onoufriadis executed the One World Operating Agreement. The Operating Agreement designated Defendant Rodgers as chief legal counsel and secretary of the company. Defendant Rodgers and Onoufriadis received payment through a profit-sharing structure; a cumulative six percent of funds transferred into and out of the One World accounts would be paid to the Karloutsos Defendants.

Rodgers alleges that One World was used as a vehicle to launder illicit funds from foreign gambling operations, and that he unknowingly provided his services to the illegal laundering of funds through One World. While researching the gaming market in Louisiana for Chaleplis, Rodgers asserts that Chaleplis forced him to execute an agreement with Swiss company Artmind A.G. to provide market analysis for $964,363. Despite his ability to obtain market research for a total of $50,000, Chaleplis allegedly forced Rodgers to execute the agreement with Artmind. After, Chaleplis provided Christina Cebotar, the CEO of Artmind, with access to One World's accounts. Rodgers asserts

---

[1]    The facts alleged by the Rodgers Defendants and asserted herein are accepted as true and viewed in the light most favorable to the Rodgers Defendants.

that Artmind never produced the Louisiana gaming market
analysis.

Rodgers claims that he reported suspicious activity of
Artmind and Christina Cebotar to Chaleplis. In July 2020,
Rodgers claims he learned of his firing from One World from a
reporter inquiring about a suit filed against him by Plaintiffs
in the Southern District of New York--as a result of shortfalls
from illicit gambling operations--alleging the misappropriation
of One World's funds.

Rodgers alleges that his termination from One World in his
role as chief legal counsel and secretary served as retaliation
against his alleged uncovering of illegal gambling operations
perpetrated by Plaintiff. In addition, Rodgers claims he has not
received funds owed to him through the One World Operating
Agreement for work provided between June 2019 and June 2020.

### III. LEGAL STANDARD: MOTION TO DISMISS PURSUANT TO 12(B)(6) AND MOTION TO STRIKE PURSUANT TO 12(F)

#### A. **Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
Pleadings may be supported "by showing any set of facts
consistent with the allegations in the complaint." Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 563 (2007). Claims need not

include a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

The court will not "accept as true all allegations contained in a complaint." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court will accept "all of the complaint's well pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 211-12 (3d. Cir. 2009). To survive a motion to dismiss, a claim must demonstrate more than a possibility that claimant is entitled to relief. Iqbal, 556 U.S. at 678. A claim must demonstrate facial plausibility through "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. Id.

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading ... any redundant, immaterial,

5

impertinent, or scandalous matter."  "[S]triking a portion of a pleading is a drastic remedy," and Rule 12(f) motions "are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1380 (3d ed. 2021). To succeed on a motion to strike, a movant must show that "the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration" and that "their presence in the pleading throughout the proceeding will be prejudicial to the moving party." <u>Id.</u>

## IV.  PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM PURSUANT TO 12(B)(6)

### A. <u>Count I: Retaliation against a Whistleblower in Violation of Federal Anti-Money Laundering Act, 31 U.S.C. § 5323(g)</u>

Rodgers claims his termination from One World violated the whistleblower protections of 31 U.S.C. § 5323(g). Because Rodgers has not asserted a facially plausible set of facts demonstrating an entitlement to relief, Count I will be dismissed.

Under § 5323(g), no financial institution[2] may "directly or indirectly, discharge, demote, suspend, threaten, blacklist,

---

[2] Financial institutions include "investment company[ies]." 31 U.S.C. § 5312(a)(2)(I). Plaintiffs and Defendants have described One World as an investment company. Am. Compl. ¶ 37, ECF No. 59; Def.'s Mot. to Dismiss & Strike 1, ECF No. 66.

harass, or in any other manner discriminate against a whistleblower in the terms and conditions of employment or post-employment because of any lawful act done by the whistleblower." 31 U.S.C. § 5323(g). Section 5323 was created in the Anti-Money Laundering Act ("AMLA") of 2021 as an amendment to the Bank Secrecy Act ("BSA").

AMLA amended the BSA to "broaden the scope of protected activity" a whistleblower could claim. Shaikh v. Nat. Bank of Pakistan, 847 Fed. Appx. 45, 46 n.1 (2d. Cir. 2021). Thus far, the Third Circuit has not directly assessed the implications of AMLA.

Relevant under 31 U.S.C. § 5323(g)(2)(A), claimants seeking relief from whistleblower violations may "fil[e] a complaint with the Secretary of Labor in accordance with the requirements of [31 U.S.C. § 5323(g)(3)(A)]." Under 31 U.S.C. § 5323(g)(2)(B), "if the Secretary of Labor has not issued a final decision within 180 days of the filing of a complaint under subparagraph (A), and there is no showing that such a delay is due to the bad faith of the claimant[,]" then the claimant may "bring[] an action against the employer at law or in equity in the appropriate district court of the United States."

The Court must therefore determine whether a claim brought under 31 U.S.C. § 5323(g)(2)(B) requires exhaustion. Because there are no Third Circuit cases involving the BSA exhaustion

requirements at issue here,[3] analogous whistleblower requirements should inform the Court's analysis. The Sarbanes-Oxley Act ("SOX") provides near-identical requirements for claimants seeking whistleblower relief.[4] The Supreme Court has determined that SOX requires an exhaustion of administrative remedies under § 1514A(b)(1)(a) before federal courts may exercise jurisdiction. See Digital Realty Trust, Inc. v. Somers, 138 S. Ct. 767, 773 (2018) ("To recover under § 1514A, an aggrieved employee must exhaust administrative remedies by filing a complaint with the Secretary of Labor.") (quotation and citation omitted).

The plain statutory language of 21 U.S.C. § 5323(g)(2)(B) and the Supreme Court's interpretation of identical statutory language to require administrative exhaustion supports the conclusion that the BSA requires claimants to first exhaust claims with the Secretary of Labor before federal courts can properly exercise jurisdiction. Rodgers has not asserted any set

---

[3] The BSA was amended recently in 2021.

[4] The SOX enables claimants to obtain relief by:
        (A)  filing a complaint with the Secretary of Labor; or
        (B)  if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.
18 U.S.C.A. § 1514A(b).

of facts that demonstrate he has exhausted his administrative requirements under 31 U.S.C. 5323(g)(2)(B), and thus, Plaintiffs' motion to dismiss will be granted on Count I with leave to amend.

    B. **Count II: Retaliation against a Whistleblower in Violation Delaware Whistleblower Protection Act, DEL. CODE ANN. tit. 19 §§ 1701-04**

Rodgers claims his termination violated §§ 1701, 1702, 1703(4), and 1704 of the Delaware Whistleblower Protection Act ("DWPA"). Section 1703(4) of the DWPA protects employees who reported "any noncompliance or [] infraction which the employee knows or reasonably believes has occurred" "to the employer or the employee's supervisor, verbally or in writing." 19 DEL. CODE ANN. tit. § 1703(4) (2004).

Rodgers does not assert facts that plausibly state a claim upon which relief can be granted pursuant to the DWPA. The legislative history of the DWPA explains that the reach of the statute is limited to employees within the State of Delaware. Curlett v. Madison, 863 F. Supp. 2d 357, 362 (D. Del. 2012) ("[T]he legislature did not intend to provide protection to any class other than individuals employed in the State of Delaware."). In other words, claims under the DWPA must arise out of actions taken against employees within the state of Delaware, not solely based on the state of the business's formation. See id.; Roszak v. U.S. Foodservice, Inc., 13-cv-

1009, 2013 WL 12203869, at *4 (D. Ariz. Sept. 24, 2013) (dismissing a claim under the DWPA against a Delaware limited liability company from an employee in Arizona); Parisi v. Wipro Ltd., 16-cv-1824, 2016 WL 6905987, at *6 (S.D.N.Y. Nov. 23, 2016) (dismissing a claim under the DWPA against a Delaware company from an employee in New York); Eaton v. Coupe, N15C-09-245, 2017 WL 626614, at *5 n. 39 (Del. Super. Feb. 14, 2017) (citing to Curlett for the legislative history of the DWPA and for the proposition that the DWPA "does not apply to employees employed outside Delaware").

Rodgers is an employee of One World and operates out of Rodgers' Philadelphia, Pennsylvania offices. Countercl. ¶¶ 7, 9; ECF No. 81. Rodgers' only asserted connection to Delaware is his travel "to and through Delaware to register the company." Rodgers' Resp. in Opp'n 5, ECF No. 87 [hereinafter "Resp. in Opp'n"]. The Counterclaim contains no assertions that Rodgers was an employee in the state of Delaware, nor that the actions allegedly taken against him occurred in the state of Delaware. Rodgers instead admits that One World "conducted business between 2017 and 2020 through Rodgers' Philadelphia Offices." Countercl. ¶ 9, ECF No. 81. Therefore, Count II of the Counterclaim alleging a violation of the DWPA will be dismissed without leave to amend.

### C. **Count III: Accounting**[5]

---

[5] Plaintiffs assert that Rodgers' claim for accounting should be judicially estopped. See Mot. to Dismiss 15, ECF No. 84. Plaintiffs argue his current claim--in which Rodgers seeks an accounting through his rights stemming from the One World Operating Agreement--remains inconsistent with his previous claim that he was not a party to the One World Operating Agreement, waiving any entitlements to compensation under the One World Operating Agreement. The Court will address the claims of waiver and judicial estoppel.

First, a waiver of contractual rights "'is the intentional relinquishment of a known or abandonment of a known right.'" Morgan v. Sundance, 142 S.Ct. 1708, 1713 (2022) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). In Pennsylvania, a waiver of contractual rights "may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship, 610 A.2d 499, 501 (Pa. Super. Ct. 1992). In an earlier round of motions, Rodgers asserted that he was not a party to the One World Operating Agreement, though he seems to use "party" and "signatory" interchangeably. In the current motion, Rodgers asserts his rights in more ambiguous terms. Rodgers claims only that he is owed money through Section 15.13(c) of the Operating Agreement, without asserting whether this money is owed as a party to the contract, a third-party beneficiary, or any other form of relationship to the contract that would grant him rights under the contract.

Federal law controls claims of judicial estoppel. Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 n.2 (3d. Cir. 1996). Judicial estoppel is an appropriate remedy where a party has taken "two positions that are irreconcilably inconsistent[,]" a "party changed his or her position 'in bad faith—i.e., with intent to play fast and loose with the court[,]'" and "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-81 (3d. Cir. 2001). Bad faith requires more than "the existence of an inconsistency." Id. at 781. A showing of bad faith requires the litigant to engage in culpable behavior that was "engaged in . . . vis-a-vis the court." Id.; see Ryan Operations G.P. v. Santiam-Midwest Lumber Co. Eyeglasses, 81 F.3d 355, 362 (3d.

Under Pennsylvania law, "entitlement to an accounting may be legal or equitable." Bordoni v. Chase Home Fin. LLC, 374 F. Supp. 3d 378, 387 (E.D. Pa. 2019); Buczek v. First Nat. Bank of Mifflintown, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987). The Counterclaim does not specify whether the requested relief is a legal or equitable entitlement of an accounting. Accordingly, the Court will analyze both a legal accounting claim and an equitable accounting claim.

### a. Legal Accounting

The Counterclaim fails to sufficiently plead an entitlement to legal accounting. Legal accounting is a form of relief, not an individual claim. Pa. R. Civ. Pr. 1021(a); Bordoni, 374 F. Supp. 3d at 387; Buczek, 366 Pa. Super. at 555-56. To claim an entitlement to legal accounting, a claimant must first demonstrate a breach of contract. See id. ("The right to relief in the form of an accounting pursuant to Rule 1021 is merely an incident to a proper assumpsit claim.")[6]; Haft v. U.S. Steel Corp., 499 A.2d 676, 677 (Pa. Super. Ct. 1985); Lightman v.

---

Cir. 1996). Again, Rodgers has put forth ambiguous claims to his relationship to the One World Operating Agreement. Though the Court acknowledges Plaintiffs' judicial estoppel argument, it is unclear that Rodgers' allegations in his Counterclaim rise to the level of bad faith.

[6] An "assumpsit" claim is "a common-law action for breach of such a promise or for breach of a contract." Assumpsit, Black's Law Dictionary (9th ed. 2009).

Marcus, No. 12-cv-97, 2012 WL 1344378, at *4 (E.D. Pa. Apr. 18, 2012).

The Rodgers Defendants have not brought forth a formal breach of contract claim. The Counterclaim alleges that Plaintiffs owe Rodgers a six percent "interest in all transactions" transferred into and out of company accounts. Countercl. 29, ECF No. 81. Rodgers' alleged interest in One World derives from Section 15.13(c) of the One World operating agreement. Id. at ¶ 112. But the Counterclaim does not bring a formal breach of contract claim to substantiate Rodgers' entitlement in the One World operating agreement. Therefore, the Counterclaim has not sufficiently pled an entitlement to a legal accounting.

    b. Equitable Accounting

"An equitable accounting is improper where no fiduciary relationship exists between the parties . . . or the plaintiff possesses an adequate remedy at law." Rock v. Pyle, 720 A.2d 137, 142 (Pa. Super. Ct. 1998); see also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."). Equitable accounting "does not exist merely because the plaintiff desires information that he could obtain through discovery." Buczek, 531 A.2d at 1124.

13

Rodgers' claim for accounting amounts to a claim for breach of contract for funds owed under the One World Operating Agreement. Countercl. ¶ 136; ECF No. 81 ("Rodgers is entitled to a full accounting from One World and Chaleplis to ascertain and identify all funds due Rodgers under the One World Operating Agreement."). A breach of contract claim provides Rodgers with an adequate remedy at law. See Bordoni v. Chase Home Finance LLC, 374 F.Supp.3d 378, 387 (E.D. Pa. 2019) ("[B]ecause [Plaintiff] has an adequate remedy at law for breach of contract, . . . he cannot maintain a claim for an equitable accounting."); Schirmer v. Principal Life Ins. Co., No. 08-cv-2406, 2008 WL 4787568, at *5 (E.D. Pa. Oct. 29, 2008) (finding that "an adequate remedy at law exists" through plaintiff's breach of contract claim). Rodgers' claim for equitable accounting is precluded by the existence of an adequate remedy at law.

Moreover, Rodgers served as legal counsel for One World. In preparing the One World Operating Agreement, Rodgers listed himself as Chief Legal Counsel. See Countercl. ¶ 29-31, ECF 81. In his response in opposition to the present motion to dismiss, Rodgers again asserts his role as "the Chief Legal Officer and Secretary of One World, LLC[.]" See Resp. in Opp'n ¶ 7, ECF No. 87. Therefore, Rodgers owed a fiduciary relationship to One World. Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d

1277, 1283 (Pa. 1992) ("At common law, an attorney owes a fiduciary duty to his client . . . .").

Although it is clear Rodgers owed a fiduciary duty to One World acting as Chief Legal Counsel, One World did not owe a fiduciary duty to Rodgers.  The duty flows from the attorney to the client, not the reverse. Accordingly, the Counterclaim fails to state a claim for equitable accounting. Count III will be dismissed with leave to amend as to a legal accounting claim, but not equitable accounting.

### D. Count IV: Malicious Prosecution

Rodgers alleges malicious prosecution resulting from Plaintiffs' complaints filed against Rodgers in the Southern District of New York ("SDNY") and Eastern District of Pennsylvania. Neither the Counterclaim nor the Motion to Dismiss the Counterclaim clarify whether Count IV is brought under the elements for malicious prosecution--generally reserved for criminal proceedings--or under Pennsylvania statute for wrongful use of civil proceedings. The Counterclaim broadly alludes to some elements of malicious prosecution, but neither definitively states any standard of malicious prosecution nor names any appropriate statute under which the Counterclaim is brought. Plaintiffs' Motion to Dismiss cites to Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249, which provides elements of

malicious prosecution in the criminal context. 544 A.2d 940 (Pa. 1988).

In 1980, Pennsylvania codified civil malicious prosecution--the wrongful use of civil proceedings--under the Dragonetti Act. See 42 PA. CONS. STAT. § 8351. "The wrongful use of civil proceedings is a tort arising when a person institutes civil proceedings with a malicious motive and lacking probable cause."[7] Keystone Freight Corp. v. Stricker, 31 A.3d 967, 971 (Pa. Super. Ct. 2011) (citation omitted). To prevail on a Dragonetti Act claim, a claimant must demonstrate "(1) that the underlying proceedings were terminated in plaintiff's favor; (2) that the defendant caused those proceedings to be instituted without probable cause; and (3) that the proceedings were instituted for an improper purpose." Larry Pitt & Assoc. v. Lundy Law, 294 F. Supp. 3d 329, 344 (E.D. Pa. 2018); see 42 PA. CONS. STAT. § 8351. Dragonetti Act requirements impose a heavy burden on the claimant seeking redress.  U.S. Express Lines Ltd., 281 F.3d at 394.

Given that Rodgers' claim of malicious prosecution relies on underlying civil suits in this district and the SDNY, the

---

[7] In U.S. Express Lines Ltd. v. Higgins, the Third Circuit held that both wrongful use of civil proceedings and abuse of process were "subsumed within the general scope of the [Dragonetti] Act." 281 F.3d 383, 394 (3d. Cir. 2002). The Court is careful to separate wrongful use of civil proceeding claims from abuse of process claims.

Court will proceed under the Dragonetti standard. Under the
Dragonetti Act, Rodgers has not pleaded sufficient facts to
plausibly state a claim for relief for malicious prosecution.
Because the instant matter has not terminated in the Rodgers
Defendants' favor, the Court is only able to analyze the
Dragonetti claims with respect to the previous lawsuit filed in
the SDNY. However, the Counterclaim has not alleged sufficient
facts to demonstrate that the SDNY action terminated in favor of
the Rodgers Defendants. One World, LLC, et al., v. Onoufriadis,
et al., 20-cv-5820 (S.D.N.Y.). In that action, Plaintiffs
alleged the same causes of action against Rodgers and his co-
conspirators as here, including conversion, fraud, unjust
enrichment, breach of fiduciary duty and other state law claims.
Additionally, Plaintiffs brought a federal RICO claim that was
not brought before the Court here.

The Rodgers Defendants did not move to dismiss, however,
the other defendants to the SDNY action did. Considering the
motion to dismiss filed by other defendants, the SDNY Court
dismissed only Plaintiffs' RICO claims and declined to extend
supplemental jurisdiction over the state law claims, which
resulted in dismissal of Plaintiffs' state law claims without
prejudice to be filed in another court of competent
jurisdiction. Because the SDNY action was dismissed on
jurisdictional grounds with directive to re-file in an

17

appropriate jurisdiction, and Plaintiffs did so by bringing the
present action, the SDNY action did not terminate in the Rodgers
Defendants' favor. Therefore, because neither this action nor
any related action has terminated in the Rodger Defendants'
favor on the merits, the malicious prosecution claim will be
dismissed without leave to amend.

### E. Count V: Negligent Infliction of Emotional Distress & Count VI: Intentional Infliction of Emotional Distress

The Rodgers Defendants bring claims for negligent
infliction of emotional distress and intentional infliction of
emotional distress. To bring a claim for negligent infliction of
emotional distress, a claimant "must prove one of four elements"
to succeed on the claim:

> (1) that the Defendant had a contractual or fiduciary
> duty toward him; (2) that Plaintiff suffered a physical
> impact; (3) that Plaintiff was in a "zone of danger" and
> at risk of an immediate physical injury; or (4) that
> Plaintiff had a contemporaneous perception of tortious
> injury to a close relative.

Doe v. Cmty. Health Alts. AIDS Task Force, 745 A.2d 25, 27 (Pa.
Super. Ct. 2000), aff'd 767 A.2d 548 (Pa. 2001) (mem). A claim
for intentional infliction of emotional distress "requires a
[claimant] to show that (1) the conduct is extreme; (2) the
conduct is intentional or reckless; (3) the conduct caused
emotional distress; and (4) the distress is severe." Korneggy v.
City of Phila., 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). A
claimant must demonstrate that the offender's conduct was "so

outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Id. (quoting McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005)).

Additionally, "both intentional and negligent infliction of emotional distress require[] a manifestation of physical impairment resulting from the distress." Fulton v. United States, 198 F. App'x 210, 215 (3d Cir. 2006) (nonprecedential) (citing Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004) (intentional) and Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force, 745 A.2d 25, 27-29 (Pa. Super. Ct. 2000) (negligent)).

Rodgers has asserted no set of facts that demonstrate a manifestation of physical impairment resulting from the distress. Rodgers claims emotional distress from "immeasurable damages." Countercl. ¶ 148, ECF No. 81. These immeasurable damages are ostensibly tied to reputational damages and his ability to earn a living as a lawyer. Id. at ¶¶ 68, 122, 134, 143. But Rodgers asserts no set of facts demonstrating a manifestation of physical impairment. Therefore, the claims for negligent infliction of emotional distress (Count V) and intentional infliction of emotional distress (Count VI) will be dismissed with leave to amend.

### F. **Leave to Amend**

Leave to amend should be freely granted unless there is an apparent reason why it should not be, such as futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). The Rodgers Defendants will be granted leave to amend Counts I, III (as to legal accounting), V and VI.

**V. PLAINTIFFS' MOTION TO STRIKE COUNTERCLAIM PURSUANT TO 12(F)**

Plaintiffs argue the Rodgers Defendants' Counterclaim contains scandalous and inflammatory allegations irrelevant to the claims at issue. Mot. to Dismiss and Strike Countercl. 24; see Chan v. Barbour, Inc., 263 F. Supp. 3d 521, 524 (E.D. Pa. 2017) (citing Dann v. Lincoln Nat'l Corp., 274 F.R.D. 139, 142-43 (E.D. Pa. 2011) (stating that a motion to strike may be granted when "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues")). As a result, Plaintiffs seek to strike the entirety of the Counterclaim. This remedy is overbroad. However, the Court agrees that certain paragraphs of Rodgers' Counterclaim should be stricken. Plaintiffs identify a range of paragraphs they wish the Court to strike--paragraphs 10-95 and 107-111 of the Rodgers Counterclaim. Although the Court recognizes several of the Rodgers Defendants' claims assert scandalous material without a factual basis, a number of the paragraphs Plaintiffs suggest the Court strike assert

nothing more than information of third-parties identified in the Counterclaim. See, e.g. Countercl. ¶¶ 108-110; ECF No. 81.

Paragraphs 21, 25, and 26 assert, inter alia, that Plaintiff Chaleplis remains involved with Golden Dawn, a recognized neo-Nazi criminal organization located in Greece. These paragraphs further assert, without proof, that Chaleplis engages in money-laundering operations for Golden Dawn. Id. ¶¶ 21, 25-26.

Paragraphs 35, 36, and 37 assert, inter alia, that Plaintiff Chaleplis was under indictment by Greek authorities for money laundering and tax evasion. These paragraphs further assert that Plaintiff Chaleplis engaged with multiple criminal organizations to conduct an illegal gambling ring. Id. ¶¶ 35-37.

Paragraphs 39-48 assert, inter alia, that Plaintiff Chaleplis operated an international gambling racket supporting Golden Dawn. Further, the claims assert that, with the onset of the COVID-19 pandemic, Plaintiff Chaleplis required cash to "protect his own life" from money owed to Golden Dawn due to a shortfall from his illegal gambling operations. Id. ¶¶ 39-48.

Paragraphs 50, 51, and 52 assert, inter alia, that Plaintiff Chaleplis used One World accounts to launder funds through the United States while facing increased legal pressure in Greece.

Paragraph 54 asserts that Plaintiff Chaleplis used Defendant Rodgers to launder funds to a Greek Mafia. Id. ¶¶ 50-52.

Paragraph 60 asserts that claimed invoices constituted wire fraud and bank fraud in furtherance of a money laundering scheme perpetrated in the United States by Plaintiff Chaleplis. Id. ¶ 60.

Paragraph 65 asserts that Plaintiff Chaleplis used Plaintiff Rodgers to unknowingly launder proceeds to organized crime syndicates. Id. ¶ 65.

Paragraph 68 accuses Plaintiff Chaleplis of committing fraud by filing the SDNY complaint. Id. ¶ 68.

Paragraph 69 asserts, inter alia, that Plaintiff Chaleplis constructed a "Medical Cannabis Scam" to advance an "international RICO [c]onspiracy." Id. ¶ 69.

Paragraph 73 asserts, inter alia, that Plaintiff Chaleplis operated a money laundering scheme. Id. ¶ 73.

Paragraphs 101, 106, 107, and 111 assert, inter alia, the Plaintiff Chaleplis engaged in international money laundering efforts. Id. ¶¶ 101, 106-07, 111.

The Court agrees that Defendant Rodgers' repeated assertions that Plaintiff Chaleplis engages in international money laundering schemes constitutes scandalous and inflammatory material. Additionally, the Counterclaim's several assertions

linking Plaintiff Chaleplis to organized criminal groups--named and unnamed--constitute scandalous and inflammatory material. The Rodgers Defendants advance these assertions based entirely on conclusory allegations, and the allegations are immaterial to the claims at issue. Accordingly, the following paragraphs will be stricken from the record--21, 25, 26, 39-48, 50-52, 54, 60, 65, 68, 69, 73, 101, 106, 107, and 111.

## VI.   CONCLUSION

For the reasons stated herein, Plaintiffs' Motion to Dismiss and Motion to Strike the Rodgers Defendants' Counterclaim will be granted in part and denied in part. All counts in the Counterclaim will be dismissed, but Counts I, III, V, and VI will be dismissed with leave to amend. Additionally, paragraphs 21, 25, 26, 39-48, 50-52, 54, 60, 65, 68, 69, 73, 101, 106, 107, and 111 will be stricken. The allegations contained in these paragraphs may be reasserted provided they are supported by relevant, properly sourced facts that make the allegations plausible.

An appropriate order follows.